IN THE UNITED STATES BANKRUPTCY COURT **RECEIVED**
FOR THE MIDDLE DISTRICT OF ALABAMA

In re:

Case. No. 03-32063-WRS
Chapter 7

2007 JUN 26  A II: 34

Terry Manufacturing Company, Inc. ,
Debtor.

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

J. Lester Alexander, III,
Trustee,
Plaintiff,

2:07CV585-MEF

v.

Adv. Pro. No. 04-03135-WRS

Delong, Caldwell, Novotny & Bridgers, L.L.C ;
Earnest H. DeLong, Jr; DeLong & Caldwell, LLC;
DeLongCaldwell Logue and Wisebram
Defendants.

## TRANSMITTAL OF
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

I do hereby certify that the documents herein comprise the Proposed Findings Of Fact And Conclusions Of Law submitted by Bankruptcy Judge William R. Sawyer to the District Court in the above referenced case.

**Transmittal Submitted On:**          **June 26, 2007**

**Contents of Record:**

**Proposed Findings of Fact and Conclusions of Law - Submitted  by Judge William R. Sawyer.   (Docket #203 filed 05/29/2007.)**

**Order Directing Parties to File Any Objections to Proposed Findings of Fact and Conclusions of Law On or Before June 8, 2007.  (Docket #204 filed 05/29/2007.)**

**Proposed Findings of Fact and Conclusions of Law - Submitted  by Judge William R. Sawyer.  (Docket #205 filed 05/29/2007.)**

**Trustee's Objection to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Pursuant to 28 USC Sec. 157(C)(1) and Bankruptcy Rule 9033 Filed by Brent B. Barriere on behalf of J. Lester Alexander III.  (Docket # 207 filed 06/08/2007.)**

Request for Oral Argument on Trustee's Objection to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Filed by Brent B. Barriere on behalf of J. Lester Alexander III . (Docket #208 filed 06/08/2007.)

Response to Trustee's Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Pursuant to 28 USC 157(C)(1) and Bankruptcy Rule 9033 Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C. (Docket #219 filed 06/18/2007.)


Remark:
PLEASE NOTE: REQUEST FOR TRANSCRIPT HAS NOT BEEN SUBMITTED.

PLEASE RETURN A "RECEIVED" STAMPED
COPY OF THIS SUBMISSION SHEET

FROM:  /s/ Richard S. Oda, Clerk
        United States Bankruptcy Court

        /s/Dianne M. Segrest
        Deputy Clerk

JUDGMT, APPEAL

**U.S. Bankruptcy Court** 2:07 cv 585 -MEF
**MIDDLE DISTRICT OF ALABAMA (Montgomery)**
**Adversary Proceeding #: 04-03135**
Internal Use Only

*Assigned to:* William R. Sawyer                    *Date Filed:* 12/08/04
*Related BK Case:* 03-32063 (Associated Cases)
*Related BK Title:* Terry Manufacturing Company, Inc.
*Related BK Chapter:* 7
*Demand:* $353000
  *Nature[s] of Suit:* 454 Recover Money/Property

**Plaintiff**
-----------------------

**J. Lester Alexander, III**                 represented by **Brent B. Barriere**
Trustee for Terry Manufacturing Co.,                      Phelps Dunbar, LP
and Terry Uniform Co., LLC                                365 Canal Street, Ste 2000
                                                          One Canal Place
                                                          New Orleans, LA 70130
                                                          504-584-9210
                                                          Fax : 504-568-9130
                                                          Email: barrierb@phelps.com

                                             **Catherine E. Lasky**
                                                          Phelps Dunbar, LLP
                                                          365 Canal Street, Ste 2000
                                                          One Canal Place
                                                          New Orleans, LA 70130
                                                          504-584-9344
                                                          Fax : 504-568-9130
                                                          Email: laskyk@phelps.com

                                             **David L. Patron**
                                                          Phelps Dunbar LLP
                                                          365 Canal Street
                                                          Suite 2000
                                                          New Orleans, LA 70130
                                                          504-566-1311
                                                          Fax : 504-584-9130
                                                          Email: patrond@phelps.com

                                             **Katherine M. Determan**
                                                          Phelps Dunbar
                                                          365 Canal Street
                                                          Suite 2000
                                                          New Orleans, LA 70130
                                                          504-566-1311
                                                          Fax : 504-568-9130

V.

**Defendant**
-----------------------

**Delong, Caldwell, Novotny & Bridgers, L.L.C**
DeLong Caldwell Novotny & Bridges LLC
Centennial Tower Suite 3100
101 Marietta Street N.W.
Atlanta, GA 30303

represented by **Charles D. Butler**
Shapiro Fussell
One Midtown Plaza
Ste 1200
1360 Peachtree St
Atlanta, GA 30309
404-870-2212
Fax : 404-870-2222
Email: dbutler@shapirofussell.com
*TERMINATED: 12/23/2005*

**Earnest H. DeLong**
DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
(404)979-3150
Fax : (404)979-3170
Email: woodydelong@dcnblaw.com
*LEAD ATTORNEY*

**J. Flynn Mozingo**
Melton Espy & Williams PC
301 Adams Ave
Montgomery, AL 36104
334-263-6621
Fax : 334-263-7252
*TERMINATED: 04/11/2006*

**James F. Mozingo**
Melton,Espy & Williams, PC
301 Adams Avenue
Montgomery, AL 36104
334-263-6621
Fax : 334-263-7252
Email: fmozingo@mewlegal.com
*TERMINATED: 04/11/2006*

**Joseph C. Espy , III**
Melton Espy & Williams PC
301 Admas Avenue
Montgomery, AL 36104
334-263-6621
Fax : 334-263-7252
*TERMINATED: 04/11/2006*

**Robert F. Northcutt**
Capell & Howard PC
150 S. Perry Street

Montgomery, AL 36104
334-241-8000
Fax : 334-241-8282
Email: rfn@chlaw.com
*TERMINATED: 12/23/2005*

**Earnest H. DeLong, Jr**                    represented by  **Earnest H. DeLong**
                                                             (See above for address)

                                                             **J. Flynn Mozingo**
                                                             (See above for address)
                                                             *TERMINATED: 04/11/2006*

                                                             **James F. Mozingo**
                                                             (See above for address)
                                                             *TERMINATED: 04/11/2006*

                                                             **Joseph C. Espy , III**
                                                             (See above for address)
                                                             *TERMINATED: 04/11/2006*

                                                             **Robert F. Northcutt**
                                                             (See above for address)
                                                             *TERMINATED: 12/23/2005*

**DeLong & Caldwell, LLC**                   represented by  **Earnest H. DeLong**
                                                             (See above for address)

**DeLongCaldwell Logue and Wisebram**        represented by  **Earnest H. DeLong**
                                                             (See above for address)

| Filing Date | # | Docket Text |
|---|---|---|
| 12/08/2004 | ❶1 | 454 (Recover Money/Property): Complaint against Delong, Caldwell, Novotny & Bridgers, L.L.c.. Fee Amount $150. Filed by David L. Patron, Brent B. Barriere, Catherine E. Lasky, Katherine M. Determan, J. Lester Alexander III on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit A through D# 2 Summons# 3 Adversary Cover Sheet) (Barriere, Brent) (Entered: 12/08/2004) |
| 12/08/2004 | 2 | Receipt of Complaint(04-03135) [cmp,cmp] ( 150.00) filing fee. Receipt number 1203653, amount $ 150.00. (U.S. Treasury) (Entered: 12/08/2004) |
| 12/09/2004 | ❶3 | Summons Issued to Brent B. Barriere to serve on defendants Delong, Caldwell, Novotny & Bridgers, L.L.c. Date Issued 12/9/2004, Answer Due 1/10/2005. Execution of Summons to be done by 12/20/2004. (YP, ) (Entered: 12/09/2004) |
| 12/09/2004 |  | Flags Set-Reset (removed AwCAact21 flag), New Case Received and Reviewed for Accuracy. (YP, ) (Entered: 12/09/2004) |
| 12/10/2004 | ❶4 | Summons Service Executed on Delong, Caldwell, Novotny & Bridgers, L.L.c. 12/10/2004. (RE: related document(s)3 Summons Issued). (Barriere, Brent) (Entered: 12/10/2004) |

| 01/10/2005 | 5 | Motion to Appear pro hac vice *(With Certificate of Good Standing/Charles David Butler)* Filed by Robert F. Northcutt on behalf of Charles David Butler. (DS, ) (Entered: 01/11/2005) |
|---|---|---|
| 01/10/2005 | 6 | Motion of Respondent To Transfer Venue Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c.. (DS, ) Modified text on 1/11/2005 (DS, ). (Entered: 01/11/2005) |
| 01/10/2005 | 7 | Memorandum of Law in Support of Motion of Respondent To Transfer Venue., Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)6 Motion to Transfer Case (Out of AL,M District) filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c.). (DS, ) (Entered: 01/11/2005) |
| 01/10/2005 | 8 | Answer to Complaint Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c.. (DS, ) (Entered: 01/11/2005) |
| 01/11/2005 | 9 | Clerk's Notice on the following Deficiency(s): (RE: related document(s)6 Motion to Transfer Case (Out of AL,M District) filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c.). Incomplete Filings due by 1/26/2005. THE CERTIFICATE OF SERVICE WAS NOT SIGNED. PLEASE RESUBMIT CERTIFICATE OF SERVICE WITH PROPER SIGNATURE(S). SUBMIT USING:BANKRUPTCY>FILINGS>MISCELLANEOUS/OTHER>CERTIFICATE OF SERVICE. (DS, ) Modified - MAILED COPY TO ROBERT F. NORTHSUTT -on 1/11/2005 (DS, ). (Entered: 01/11/2005) |
| 01/13/2005 | 10 | Certificate of Service Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)6 Motion to Transfer Case (Out of AL,M District) filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c.). (DS, ) (Entered: 01/13/2005) |
| 01/13/2005 | | Flags Set-Reset, Deadlines terminated.Removed deficient flag and termed deadline re: doc#9 - satisfied. (DS, ) (Entered: 01/13/2005) |
| 01/25/2005 | 11 | Response to *(Opposition to Defendants' Motion to Transfer Venue)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III (RE: related document(s)6 Motion to Transfer Case (Out of AL,M District) filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c.). (Determan, Katherine) (Entered: 01/25/2005) |
| 02/02/2005 | 12 | Certificate of Service *of Trustee's First Set of Interrogatories and First Set of Request for Production of Documents* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 02/02/2005) |
| 02/08/2005 | 13 | Memorandum Decision Entered On 2/8/2005. (DS, ) (Entered: 02/08/2005) |

Case 2:07-cv-00585-WKW    Document 1-2    Filed 06/26/2007    Page 5 of 28
https://ecf.almb.circ11.dcn/cgi-bin/DktRpt.pl?1002569685...

| 02/08/2005 | 14 | Order On Motion To Transfer Venue (DENIED) (Related Doc # 6) Entered On 2/8/2005. (DS, ) (Entered: 02/08/2005) |
|---|---|---|
| 02/08/2005 | | Flags Set-Reset. Removed TRANSOUT and AwCAact18 - RE: rel doc#6 DENIED (re: rel doc#14.) (DS, ) (Entered: 02/08/2005) |
| 02/08/2005 | 15 | Notice of Appearance and Request for Notice Filed by Charles D. Butler on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Butler, Charles) (Entered: 02/08/2005) |
| 02/10/2005 | 16 | BNC Certificate of Service - See Image Attached - (RE: related document(s)14 Order on Motion To Transfer Bankruptcy Case Out of District). No. of Notices: 5. Service Date 02/10/2005. (Admin.) (Entered: 02/11/2005) |
| 02/10/2005 | 17 | BNC Certificate of Service - See Image Attached - (RE: related document(s)13 Opinion). No. of Notices: 5. Service Date 02/10/2005. (Admin.) (Entered: 02/11/2005) |
| 02/11/2005 | 18 | Order Granting Motion To Appear pro hac vice (Butler) (Related Doc # 5) Entered On 2/11/2005. (Sawyer, William) (Entered: 02/11/2005) |
| 02/13/2005 | 19 | BNC Certificate of Service - See Image Attached - (RE: related document(s)18 Order on Motion to Appear pro hac vice). No. of Notices: 1. Service Date 02/13/2005. (Admin.) (Entered: 02/14/2005) |
| 02/13/2005 | 20 | BNC Certificate of Service - See Image Attached - (RE: related document(s)18 Order on Motion to Appear pro hac vice). No. of Notices: 7. Service Date 02/13/2005. (Admin.) (Entered: 02/14/2005) |
| 02/14/2005 | 21 | Order Setting Scheduling Conference., Entered On 2/14/2005. Scheduling Conference set for 3/8/2005 at 09:00 AM at Telephone Hearing. (DS, ) (Entered: 02/14/2005) |
| 02/16/2005 | 22 | BNC Certificate of Service - See Image Attached - (RE: related document(s)21 Scheduling Order). No. of Notices: 2. Service Date 02/16/2005. (Admin.) (Entered: 02/17/2005) |
| 03/07/2005 | 23 | Motion for Leave to File Amended Complaint Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit A- Amended Complaint) (Lasky, Catherine) (Entered: 03/07/2005) |
| 03/08/2005 | | Matter Under Advisement Re: (RE: related document(s)23 Motion). Matter Under Advisement Due by 4/15/2005. (Sawyer, William) (Entered: 03/08/2005) |
| 03/14/2005 | 24 | Order Granting Motion To Amend Complaint (Related Doc # 23) Entered On 3/14/2005. (DS, ) (Entered: 03/14/2005) |

| | | |
|---|---|---|
| 03/14/2005 | 25 | Order Setting Trial Date/Scheduling Order Entered On 3/14/2005. Dispositive Pretrial Motions due by 7/29/2005. Responses due by 8/31/2005. Pretrial Disclosures due by 9/23/2005. List Disclosing Objections To The Use of Depositions or Admissibility of Exhibits due by 9/30/2005. Joint Pre-Trial Statement due by 9/30/2005. Discovery due by 6/30/2005. Pre-Trial Conference set for 10/4/2005 at 01:30 PM at Telephone Hearing. The trial is "deep set" with several other adversaries beginning Tuesday, October 17, 2005. (DS, ) (Entered: 03/14/2005) |
| 03/16/2005 | 26 | BNC Certificate of Service - See Image Attached - (RE: related document(s)24 Order). No. of Notices: 2. Service Date 03/16/2005. (Admin.) (Entered: 03/17/2005) |
| 03/16/2005 | 27 | BNC Certificate of Service - See Image Attached - (RE: related document(s)25 Scheduling Order, , ). No. of Notices: 6. Service Date 03/16/2005. (Admin.) (Entered: 03/17/2005) |
| 03/18/2005 | 28 | Amended Order On Plaintiff's Motion to Amend Complaint Entered On 3/18/2005 (RE: related document(s)23 Motion filed by Plaintiff J. Lester Alexander, 24 Order). (YP, ) (Entered: 03/18/2005) |
| 03/20/2005 | 29 | BNC Certificate of Service - See Image Attached - (RE: related document(s)28 Amended Order). No. of Notices: 2. Service Date 03/20/2005. (Admin.) (Entered: 03/21/2005) |
| 03/25/2005 | 30 | Objection to *Motion For Leave To File First Amended and Restated Complaint* Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)23 Motion filed by Plaintiff J. Lester Alexander). (DS, ) (Entered: 03/28/2005) |
| 03/25/2005 | 31 | Brief Filed by Robert F. Northcutt on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)30 Objection, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c.). (DS, ) (Entered: 03/28/2005) |
| 04/11/2005 | 32 | Reply to *DeLong, Caldwell, Novotny & Bridgers Objection to Trustee's Motion for Leave to File First Amended and Supplemental Complaint* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)30 Objection . Modified text on 4/14/2005 (DS, ). (Entered: 04/11/2005) |
| 04/14/2005 | 33 | Memorandum Decision Entered On 4/14/2005 (DS, ) Modified text on 4/14/2005 (DS, ). (Entered: 04/14/2005) |
| 04/14/2005 | 34 | Order On Motion For Leave To File First Amended and Supplemental Complaint (Related Doc # 23) Entered On 4/14/2005. (DS, ) (Entered: 04/14/2005) |
| 04/15/2005 | 35 | Summons Issued to Brent B. Barriere to be served on: Earnest H. DeLong Jr Date Issued 4/15/2005, Answer Due 5/16/2005; Delong, Caldwell, Novotny & Bridgers, L.L.c. Date Issued 4/15/2005, Answer Due 5/16/2005. Execution of Summons to be done by 4/25/2005. (Related document(s) 23, 33, 34.) (DS, ) (Entered: 04/15/2005) |

| 04/15/2005 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 04/15/2005) |
|---|---|---|
| 04/16/2005 | 36 | BNC Certificate of Service - See Image Attached - (RE: related document(s)33 Opinion). No. of Notices: 2. Service Date 04/16/2005. (Admin.) (Entered: 04/17/2005) |
| 04/16/2005 | 37 | BNC Certificate of Service - See Image Attached - (RE: related document(s)34 Order). No. of Notices: 2. Service Date 04/16/2005. (Admin.) (Entered: 04/17/2005) |
| 04/17/2005 | 38 | BNC Certificate of Service - See Image Attached - (RE: related document(s)35 Summons Issued, ). No. of Notices: 4. Service Date 04/17/2005. (Admin.) (Entered: 04/18/2005) |
| 04/19/2005 | 39 | Notice of Appearance as Co-Counsel and Request for Notice Filed by J. Flynn Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (DS, ) Modified on 4/19/2005 (DS, ). (Entered: 04/19/2005) |
| 04/19/2005 | 40 | Summons Service Executed on J. Flynn Mozingo/Earnest H. DeLong Jr. 4/19/2005. (RE: related document(s)35 Summons Issued, ). (Barriere, Brent) Modified text on 4/20/2005 (DS, ). (Entered: 04/19/2005) |
| 05/04/2005 | 41 | Certificate of Service *of First Set of Request for Production of Documents Propounded to Earnest H. DeLong, Jr.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 05/04/2005) |
| 05/16/2005 | 42 | Motion to Dismiss Case *or in the Alternative Transfer Venue or Abstain on State Law Claims* Filed by Von G. Memory on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Memory, Von) (Entered: 05/16/2005) |
| 05/16/2005 | 43 | Supporting Brief *and Memorandum of Law of Joint Motion to Dismiss* Filed by Von G. Memory on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)42 Motion to Dismiss Case filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Memory, Von) (Entered: 05/16/2005) |
| 05/17/2005 | | Matter Under Advisement Re: (RE: related document(s)42 Motion to Dismiss Case). Matter Under Advisement Due by 6/30/2005. (Sawyer, William) (Entered: 05/17/2005) |
| 05/18/2005 | 44 | Order (Plaintiff response not later than June 15, 2005; defendants rely not later than June 30, 2005. RE: related document(s) 42 43) Entered On 5/18/2005. (DS, ) (Entered: 05/18/2005) |
| 05/20/2005 | 45 | BNC Certificate of Service - See Image Attached - (RE: related document(s)44 Scheduling Order). No. of Notices: 2. Service Date 05/20/2005. (Admin.) (Entered: 05/21/2005) |

| 05/26/2005 | 🔗 46 | Trustee's Motion *for Leave to File Second Amended and Restated Complaint and to Extend Discovery Deadline* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit A) (Barriere, Brent) (Entered: 05/26/2005) |
| --- | --- | --- |
| 05/27/2005 | 🔗 47 | Notice of Submission Error requiring refiling. Please refile using the correct ECF docket event or corrected document within 7 days or your pleading may be dismissed. (RE: related document(s)46 Motion). Incomplete Filings due by 6/3/2005. RESUBMIT USING THE FOLLOWING EVENTS:ADVERSARY>FILINGS>MOTIONS>AMEND. (DS, ) (Entered: 05/27/2005) |
| 05/27/2005 | 🔗 48 | Motion to Amend *Unopposed Motion for Leave to File Second Amended and Restated Complaint and to Extend Discovery Deadline* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit A) (Barriere, Brent) (Entered: 05/27/2005) |
| 05/27/2005 | 🔗 161 | Amended Complaint by Brent B. Barriere Plaintiff J. Lester Alexander III, Defendants Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C against Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C. (RE: related document(s)1 Complaint, filed by Plaintiff J. Lester Alexander). (DAW, ) (Entered: 10/30/2006) |
| 06/03/2005 | 🔗 49 | Discovery Response Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr. (Mozingo, James) (Entered: 06/03/2005) |
| 06/06/2005 | | Deadlines terminated - rel doc#47. Satisfied. (DS, ) (Entered: 06/06/2005) |
| 06/13/2005 | 🔗 50 | Affidavit Re: *Supplement Earnest H. DeLong, Jr.* Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)42 Motion to Dismiss Case filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Attachments: # 1 Exhibit) (Mozingo, James) (Entered: 06/13/2005) |
| 06/15/2005 | 🔗 51 | First Discovery Request for Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Mozingo, James) (Entered: 06/15/2005) |
| 06/15/2005 | 🔗 52 | Trustee's Objection to *Motion to Dismiss* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)42 Motion to Dismiss Case filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I) (Barriere, Brent) (Entered: 06/15/2005) |
| 06/16/2005 | 🔗 53 | Exhibit *E related to document 52* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)42 Motion to Dismiss Case filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. |

Case 2:07-cv-00585-WKW    Document 1-2    Filed 06/26/2007    Page 9 of 28

| | | |
|---|---|---|
| | | DeLong). (Barriere, Brent) (Entered: 06/16/2005) |
| 06/23/2005 | 54 | Submission of Documents: *(Trial Conflicts)* Filed by J. Flynn Mozingo. (DS, ) (Entered: 06/23/2005) |
| 06/29/2005 | 55 | Trustee's Motion *to Strike Affidavits of Earnest H. DeLong, Jr. and Michael Caldwell* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)50 Affidavit, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong, 43 Brief, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F) (Barriere, Brent) (Entered: 06/29/2005) |
| 06/30/2005 | 56 | Submission of Documents: *Letter* Filed by J. Flynn Mozingo. (DS, ) (Entered: 06/30/2005) |
| 06/30/2005 | 57 | Response to *Trustee's Opposition to Motion to Dismiss, Transfer Venue or Abstain on State Law Claims* Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)42 Motion to Dismiss Case filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (Mozingo, James) (Entered: 06/30/2005) |
| 07/01/2005 | 58 | Order Denying Plaintiff's Motion To Strike (Related Doc # 55) Entered On 7/1/2005. (RK, ) (Entered: 07/01/2005) |
| 07/03/2005 | 59 | BNC Certificate of Service - See Image Attached - (RE: related document(s)58 Order). No. of Notices: 3. Service Date 07/03/2005. (Admin.) (Entered: 07/04/2005) |
| 07/06/2005 | 60 | Notice of Deposition *of Arkansas Economic Development District* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 07/06/2005) |
| 07/06/2005 | 61 | Notice of Deposition *of ASHERS* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 07/06/2005) |
| 07/07/2005 | 62 | Notice of Deposition *(HLC Industries)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/07/2005) |
| 07/07/2005 | 63 | Notice of Deposition *(American Express Travel Related Services Co., Inc.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/07/2005) |
| 07/07/2005 | 64 | Notice of Deposition *(Carlcraft Knit Sales, Inc.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/07/2005) |
| 07/07/2005 | 65 | Notice *of Issuance of Subpoena (CIT Group/Commercial Services, Inc.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine |

| | | (Entered: 07/07/2005) |
|---|---|---|
| 07/08/2005 | 66 | Certificate of Service *of Trustee's Second Set of Requests for Production of Documents Propounded to DeLong, Caldwell, Novotny & Bridgers, LLC and Earnest H. DeLong, Jr.* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 07/08/2005) |
| 07/08/2005 | 67 | Notice *of Issuance of Subpoena (Milliken & Company)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 68 | Notice *of Issuance of Subpoena (American & Efird)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 69 | Notice *of Issuance of Subpoena (Darwood Manufacturing Company)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 70 | Notice *of Issuance of Subpoena (Milberg Factors, Inc.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 71 | Notice *of Issuance of Subpoena (Atlantic Thread & Supply Co.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 72 | Notice *of Issuance of Subpoena (Mark A. Cabral, Alamac Knit Fabrics, Inc.)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/08/2005 | 73 | Notice *of Issuance of Subpoena (United Parcel Service)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/08/2005) |
| 07/11/2005 | 74 | Notice of Deposition *(Carlcraft Knit Sales, Inc.)(Renotice)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/11/2005) |
| 07/19/2005 | 75 | Notice of Deposition *(Darwood Manufacturing Co.)(Renotice)* Filed by Katherine M. Determan on behalf of J. Lester Alexander III. (Determan, Katherine) (Entered: 07/19/2005) |
| 07/25/2005 | 76 | Memorandum Decision Entered On 7/25/2005. (DS, ) (Entered: 07/25/2005) |
| 07/25/2005 | 77 | Order Denying Motion to Transfer (Related Doc # 42) Entered On 7/25/2005. (DS, ) (Entered: 07/25/2005) |

Case 2:07-cv-00585-WKW          Document 1-2        Filed 06/26/2007      Page 11 of 28

| 07/25/2005 | 78 | Order Granting Motion To Amend Complaint Entered On 7/25/2005. (Related documnet(s) # 48). (Further ORDERED: Pre-Trial Conference set for 8/9/2005 at 01:30 PM at Telephone Hearing.) (DS, ) (Entered: 07/25/2005) |
|---|---|---|
| 07/25/2005 |  | Motion terminated. (RE: related document(s)46 Motion, 48 Motion to Amend). Rel doc# 78 terms #46 & #48. (DS, ) (Entered: 07/25/2005) |
| 07/25/2005 |  | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 07/25/2005) |
| 07/27/2005 | 79 | BNC Certificate of Service - See Image Attached - (RE: related document(s)76 Opinion). No. of Notices: 3. Service Date 07/27/2005. (Admin.) (Entered: 07/28/2005) |
| 07/27/2005 | 80 | BNC Certificate of Service - See Image Attached - (RE: related document(s)77 Order on Motion to Dismiss Case). No. of Notices: 3. Service Date 07/27/2005. (Admin.) (Entered: 07/28/2005) |
| 07/27/2005 | 81 | BNC Certificate of Service - See Image Attached - (RE: related document(s)78 Scheduling Order). No. of Notices: 3. Service Date 07/27/2005. (Admin.) (Entered: 07/28/2005) |
| 08/04/2005 | 82 | Response to *Defendants' Answer to the Second Amended and Restated Complaint of J. Lester Alexander, III, Trustee* Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c. (RE: related document(s)46 Motion filed by Plaintiff J. Lester Alexander, 48 Motion to Amend filed by Plaintiff J. Lester Alexander). (Mozingo, James) (Entered: 08/04/2005) |
| 08/04/2005 | 83 | Motion/Request for Jury Trial Filed by Charles D. Butler, Robert F. Northcutt, James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Mozingo, James) Modified text on 8/5/2005 (DS, ). (Entered: 08/04/2005) |
| 08/08/2005 | 84 | Discovery Response *to Plaintiff's Second Request for Production* Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Mozingo, James) (Entered: 08/08/2005) |
| 08/15/2005 | 85 | Scheduling Order Entered On 8/15/2005. Dispositive Motions due by 1/31/2006. Responses due by 2/28/2006. Discovery due by 12/30/2005. (DS, ) (Entered: 08/15/2005) |
| 08/16/2005 | 86 | Order On Consolidation For Purposes Of Discovery and Scheduling Order (Consolidation of AP# 05-3033 and Ap#04-3135 FOR DISCOVERY PURPOSES ONLY.) Entered On 8/16/2005. (DS, ) (Entered: 08/16/2005) |
| 08/17/2005 | 87 | BNC Certificate of Service - See Image Attached - (RE: related document(s)85 Scheduling Order). No. of Notices: 4. Service Date 08/17/2005. (Admin.) (Entered: |

| | | |
|---|---|---|
| | | 08/18/2005) |
| 08/18/2005 | 88 | BNC Certificate of Service - See Image Attached - (RE: related document(s)86 Scheduling Order). No. of Notices: 3. Service Date 08/18/2005. (Admin.) (Entered: 08/19/2005) |
| 08/23/2005 | 89 | Trustee's Motion to Compel *Production of Documents Improperly Withheld as Privileged and Incorporated Memorandum in Support* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit A through D) (Barriere, Brent) (Entered: 08/23/2005) |
| 08/26/2005 | 90 | Notice of Hearing Set (RE: related document(s)89 Plaintiff's Motion to Compel, ). Hearing scheduled for 9/20/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (JPC, ) (Entered: 08/26/2005) |
| 08/28/2005 | 91 | BNC Certificate of Service - Hearing - (RE: related document(s)90 Hearing (Bk)). No. of Notices: 4. Service Date 08/28/2005. (Admin.) (Entered: 08/29/2005) |
| 09/16/2005 | 92 | Order On September 20 Hearing Entered On 9/16/2005 (RE: related document(s)89 Motion to Compel, filed by Plaintiff J. Lester Alexander, 90 Hearing (Bk)). Hearing scheduled for 9/20/2005 at 09:00 AM at TELEPHONE Hearing. (DS, ) (Entered: 09/16/2005) |
| 09/18/2005 | 93 | BNC Certificate of Service - See Image Attached - (RE: related document(s)92 Order on Motion To Set Hearing). No. of Notices: 5. Service Date 09/18/2005. (Admin.) (Entered: 09/19/2005) |
| 09/20/2005 | | Matter Under Advisement Re: (RE: related document(s)85 Scheduling Order). Matter Under Advisement Due by 3/17/2006. (Sawyer, William) (Entered: 09/20/2005) |
| 09/20/2005 | | Matter Under Advisement Re: (RE: related document(s)89 Motion to Compel, ). Matter Under Advisement Due by 9/20/2005. (Sawyer, William) (Entered: 09/20/2005) |
| 10/03/2005 | 94 | Memorandum Decision Entered On 10/3/2005 (RE: related document(s)89 Motion to Compel, filed by Plaintiff J. Lester Alexander). (DS, ) (Entered: 10/03/2005) |
| 10/03/2005 | 95 | Order On Motion To Compel Production Of Documents (Related Doc # 89) Entered On 10/3/2005. (DS, ) (Entered: 10/03/2005) |
| 10/05/2005 | 96 | BNC Certificate of Service - See Image Attached - (RE: related document(s)94 Opinion). No. of Notices: 3. Service Date 10/05/2005. (Admin.) (Entered: 10/06/2005) |

| 10/05/2005 | 97 | BNC Certificate of Service - See Image Attached - (RE: related document(s)95 Order on Motion to Compel). No. of Notices: 3. Service Date 10/05/2005. (Admin.) (Entered: 10/06/2005) |
| 10/11/2005 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 10/11/2005) |
| 10/18/2005 | 98 | Notice *of Complaince (RE: related doc # 95)* Filed by J. Flynn Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (DS, ) (Entered: 10/18/2005) |
| 11/09/2005 | 99 | Notice of Deposition *of Earnest H. DeLong, Jr.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 11/09/2005) |
| 11/09/2005 | 100 | Notice of Deposition *of DeLong & Caldwell, L.L.C.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 11/09/2005) |
| 11/09/2005 | 101 | Notice of Deposition *of DeLong, Caldwell, Novotny & Bridgers, L.L.C.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 11/09/2005) |
| 11/09/2005 | 102 | Notice of Deposition *of DeLong, Caldwell, Logue & Wisebram* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 11/09/2005) |
| 12/01/2005 | 103 | NOTED SUBMISSION ERROR - INCORRECT PDF - SEE REL DOC# 105 FOR CORRECT ENTRY Motion to Withdraw as Attorney *for Ernest DeLong, Jr. and DeLong Caldwell Novotny & Bridgers, LLC* Filed by Charles D. Butler on behalf of Charles David Butler. (Butler, Charles) Modified on 12/1/2005 (DS, ). (Entered: 12/01/2005) |
| 12/01/2005 | 104 | Notice of Electronic Submission Error (Non-Image Entry) (RE: related document(s)103 Motion to Withdraw as Attorney). Entered in (PDF error) per attorney will resubmit correct entry. (DS, ) (Entered: 12/01/2005) |
| 12/01/2005 | | Motion terminated. (RE: related document(s)103 Motion to Withdraw as Attorney). Attorney will resubmit. (DS, ) (Entered: 12/01/2005) |
| 12/01/2005 | 105 | Motion to Withdraw as Attorney *for Ernest DeLong, Jr. and DeLong Caldwell Novotny & Bridgers, LLC* Filed by Charles D. Butler on behalf of Charles David Butler. (Butler, Charles) (Entered: 12/01/2005) |
| 12/01/2005 | 106 | Motion to Withdraw as Attorney Filed by Robert F. Northcutt on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Northcutt, Robert) (Entered: 12/01/2005) |

| 12/23/2005 | 107 | Order Granting Motions To Withdraw (Related Doc # 105), (Related Doc # 106) Entered On 12/23/2005. (DS, ) (Entered: 12/23/2005) |
| 12/29/2005 | 108 | Motion to Extend Time *for Deadline for Completion of Discovery and for Filing of Dispositive Motions* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)85 Scheduling Order, 86 Scheduling Order). (Lasky, Catherine) (Entered: 12/29/2005) |
| 12/30/2005 | 109 | Notice *of Issuance of Subpoena to Jerry Thomas, Jr.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit "A" Copy of Subpoena) (Lasky, Catherine) (Entered: 12/30/2005) |
| 01/03/2006 | 110 | Motion to Withdraw as Attorney Filed by James F. Mozingo on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.c.. (Mozingo, James) (Entered: 01/03/2006) |
| 01/09/2006 | 111 | Order For Hearing Entered On 1/9/2006 (RE: related document(s)110 Motion to Withdraw as Attorney filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). Hearing scheduled for 2/7/2006 at 09:00 AM, (Central Standard Time) at Telephone Hearing. (JC, ) (Entered: 01/09/2006) |
| 01/11/2006 | 112 | BNC Certificate of Service - See Image Attached - (RE: related document(s)111 Order on Motion To Set Hearing, ). No. of Notices: 2. Service Date 01/11/2006. (Admin.) (Entered: 01/12/2006) |
| 02/02/2006 | 113 | Trustee's Objection to *Defendants' Counsel's Motion to Withdraw* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)110 Motion to Withdraw as Attorney filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (Lasky, Catherine) (Entered: 02/02/2006) |
| 02/07/2006 | | Matter Under Advisement Re:. Matter Under Advisement Due by 2/7/2006. (Sawyer, William) (Entered: 02/07/2006) |
| 02/13/2006 | 114 | ORDER (re: briefs)(RE: related document(s)111) Entered On 2/13/2006. (DS, ) (Entered: 02/13/2006) |
| 02/15/2006 | 115 | BNC Certificate of Service - See Image Attached - (RE: related document(s)114 Scheduling Order). No. of Notices: 1. Service Date 02/15/2006. (Admin.) (Entered: 02/16/2006) |
| 02/16/2006 | | Matter Under Advisement Re: (RE: related document(s) Set Matter Under Advisement Deadline, Set Matter Under Advisement Deadline). Matter Under Advisement Due by 3/23/2006. (Sawyer, William) (Entered: 02/16/2006) |

Case 2:07-cv-00585-WKW    Document 1-2    Filed 06/26/2007    Page 15 of 28
https://ecf.almb.circ11.dcn/cgi-bin/DktRpt.pl?1002569685...

| 04/10/2006 | 116 | Notice of Telephone Hearing Set (RE: related document(s)1 Complaint, Scheduling Conference). Hearing scheduled for 4/25/2006 at 01:30 PM at Telephone Hearing. (RS, ) (Entered: 04/10/2006) |
|---|---|---|
| 04/11/2006 | 117 | Order Granting Motion To Withdraw (Related Doc # 110) Entered On 4/11/2006. (DS, ) (Entered: 04/11/2006) |
| 04/11/2006 | 118 | Order Granting Motion Of Melton Espy To Withdraw Entered On 4/11/2006 (RE: related document(s)113 Objection, filed by Plaintiff J. Lester Alexander, 114 Scheduling Order, 110 Motion to Withdraw as Attorney filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong). (DS, ) (Entered: 04/11/2006) |
| 04/12/2006 | 119 | BNC Certificate of Service - Telephone Hearing - (RE: related document(s)116 Telephone Hearing). No. of Notices: 5. Service Date 04/12/2006. (Admin.) (Entered: 04/13/2006) |
| 04/13/2006 | 120 | BNC Certificate of Service - See Image Attached - (RE: related document(s)118 Order, ). No. of Notices: 1. Service Date 04/13/2006. (Admin.) (Entered: 04/14/2006) |
| 04/14/2006 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 04/14/2006) |
| 06/22/2006 | 121 | Trustee's Brief *Regarding Waiver of Defendants' Request for Trial by Jury* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 06/22/2006) |
| 06/23/2006 | 122 | Order Regarding Defendants' Request For Trial By Jury Entered On 6/23/2006 (RE: related document(s)83 Motion for Jury Trial filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.c., Defendant Earnest H. DeLong, 121 Brief filed by Plaintiff J. Lester Alexander), Defendants Shall file their response not later than July 10, 2006 and Plaintiff may file a reply not later than July 20, 2006. (DW, ) (Entered: 06/23/2006) |
| 06/25/2006 | 123 | BNC Certificate of Service - See Image Attached - (RE: related document(s)122 Order, ). No. of Notices: 8. Service Date 06/25/2006. (Admin.) (Entered: 06/26/2006) |
| 06/27/2006 | | Matter Under Advisement Re: (RE: related document(s)122 Order, ). Matter Under Advisement Due by 7/20/2006. (Sawyer, William) (Entered: 06/27/2006) |
| 06/30/2006 | 124 | Motion For Extension Of Time To File Defendants' Summary Judgment Motion and Memorandum Of Law In Support Thereof Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.C.. (DS, ) Modified text on 6/30/2006 (DS, ). (Entered: 06/30/2006) |

| 07/06/2006 | 125 | Defendants'Motion For Summary Judgment Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C. (CBM, ) Modified text on 7/6/2006 (CBM, ). Modified on 11/7/2006 to terminate motion (Young, Douglas). (Entered: 07/06/2006) |
|---|---|---|
| 07/06/2006 | 126 | *Defendants' Memorandum In Support Of Their Motion For Summary Judgement* Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C). (CBM, ) Modified text on 7/6/2006 (CBM, ). (Entered: 07/06/2006) |
| 07/06/2006 | 127 | *Defendants' Statement Of Undisputed Facts* Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C). (CBM, ) Modified text on 7/6/2006 (CBM, ). (Entered: 07/06/2006) |
| 07/06/2006 | 128 | Declaration Of Earnest H. DeLong, Jr. Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (CBM, ) (Entered: 07/06/2006) |
| 07/06/2006 | 129 | Declaration Of Roy Terry Filed by Roy Terry. (CBM, ) Modified on 7/6/2006 (CBM, ). (Entered: 07/06/2006) |
| 07/06/2006 | 130 | Declaration Of Rudolph Terry Filed by Rudolph Terry. (CBM, ) (Entered: 07/06/2006) |
| 07/06/2006 | 131 | Affidavit Of William G. Ross Filed by William G. Ross. (CBM, ) Modified text on 7/6/2006 (CBM, ). (Entered: 07/06/2006) |
| 07/06/2006 | 132 | Certificate of Service Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 126 Brief, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 127 Brief, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 128 Declaration filed by Defendant Earnest H. DeLong, 129 Declaration, 130 Declaration, 131 Affidavit). (CBM, ) (Entered: 07/06/2006) |
| 07/06/2006 | 133 | Certificate of Service Dated AUGUST 1ST, 2006 Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C. (CBM, ) (Entered: 07/06/2006) |
| 07/11/2006 | 134 | Response to *Trustee's Memorandum Of Law Regarding Defendant's Alleged Waiver Of Jury Demand* Filed by Earnest H. DeLong on behalf of Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)121 Brief filed by Plaintiff J. Lester Alexander). (CBM, ) (Entered: 07/11/2006) |

Case 2:07-cv-00585-WKW      Document 1-2      Filed 06/26/2007      Page 17 of 28

| 07/17/2006 | | Matter Under Advisement Re: (RE: related document(s)125 Motion for Summary Judgment, Set Matter Under Advisement Deadline). Matter Under Advisement Due by 8/25/2006. (Sawyer, William) (Entered: 07/17/2006) |
|---|---|---|
| 07/18/2006 | ◉135 | ORDER on Entered On 7/18/2006 (RE: related document(s)133 Certificate of Service filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 130 Declaration, 131 Affidavit, 132 Certificate of Service,, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 126 Brief, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 127 Brief, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, 128 Declaration filed by Defendant Earnest H. DeLong, 129 Declaration). (CBM, ) (Entered: 07/18/2006) |
| 07/20/2006 | ◉136 | Response to *Defendants' Response to Trustee's Brief Regarding Waiver of Defendants' Request for Trial by Jury* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)134 Response, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C.). (Attachments: # 1 Exhibit A) (Lasky, Catherine) (Entered: 07/20/2006) |
| 07/20/2006 | ◉137 | BNC Certificate of Service - See Image Attached - (RE: related document(s)135 Order, , ). No. of Notices: 1. Service Date 07/20/2006. (Admin.) (Entered: 07/21/2006) |
| 07/27/2006 | ◉138 | Notice of Deposition *of Roy Terry* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 07/27/2006) |
| 07/27/2006 | ◉139 | Notice *of Issuance of Subpoena to Roy Terry* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Attachments: # 1 Exhibit 1) (Lasky, Catherine) (Entered: 07/27/2006) |
| 07/27/2006 | ◉140 | Notice of Deposition *of William G. Ross* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 07/27/2006) |
| 08/02/2006 | ◉141 | Notice *of Re-Notice of Deposition of Williams G. Ross* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 08/02/2006) |
| 08/02/2006 | ◉142 | Notice *of Re-Notice of Deposition of Roy Terry* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 08/02/2006) |
| 08/07/2006 | ◉143 | Trustee's Motion to Extend Time *for Filing of Trustee's Opposition and Defendants' Reply to Opposition to Defendants' Motion for Summary Judgment* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C.). (Lasky, Catherine) (Entered: 08/07/2006) |

| 08/08/2006 | 144 | Trustee's Motion *for Order Directing Parties to Participate in Mediation* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 08/08/2006) |
| --- | --- | --- |
| 08/11/2006 | 145 | Order Granting Motion to Extend Time to respond to Defendants' Motion for Summary Judgment to September 15, 2006. (Related Doc # 143) Entered On 8/11/2006. (Sawyer, William) (Entered: 08/11/2006) |
| 08/11/2006 | 146 | Notice of Deposition *Re-Notice of Roy Terry Deposition* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 08/11/2006) |
| 08/14/2006 | 147 | NOTED SUBMISSION ERROR - NO PDF ATTACHED; REPLACED WITH DE #149 - REMOVED FROM THE GENERATE BNC NOTICES QUE - Notice of Telephone Hearing Set (RE: related document(s)144 Trustee's Motion for Order Directing Parties to Participate in Mediation ). Hearing scheduled for 9/12/2006 at 09:00 AM at Telephone Hearing. (JPC, ) Modified on 8/15/2006 (YP, ). (Entered: 08/14/2006) |
| 08/14/2006 | 148 | NOTED SUBMISSION ERROR - NO PDF ATTACHED; REPLACED WITH DE #149 - REMOVED FROM THE GENERATE BNC NOTICES QUE - Notice of Telephone Hearing Set (RE: related document(s)144 Trustee's Motion for Order Directing Parties to Participate in Mediation). Hearing scheduled for 9/12/2006 at 09:00 AM at Telephone Hearing. (JPC, ) Modified on 8/15/2006 (YP, ). (Entered: 08/14/2006) |
| 08/14/2006 | 149 | Notice of Telephone Hearing Set (RE: related document(s)144 Trustee's Motion for Order Directing Parties to Participate in Mediation). Hearing scheduled for 9/12/2006 at 09:00 AM at Telephone Hearing. (JPC, ) (Entered: 08/14/2006) |
| 08/15/2006 | 150 | Administrative Error (Non-Image Entry) **(NO PDF IMAGE ATTACHED; REPLACED WITH DE #149)** (RE: related document(s)[148] Telephone Hearing, [147] Telephone Hearing). (YP, ) (Entered: 08/15/2006) |
| 08/16/2006 | 151 | BNC Certificate of Service - Hearing - (RE: related document(s)149 Telephone Hearing). No. of Notices: 2. Service Date 08/16/2006. (Admin.) (Entered: 08/17/2006) |
| 08/21/2006 | 152 | Georgia Lawyers Insurance Company's Objection to *Trustee's Motion For Order Directing Parties To Participate In Mediation* Filed by Jerry A. Buchanan (RE: related document(s)144 Motion filed by Plaintiff J. Lester Alexander). (CBM, ) Modified on 8/22/2006 (CBM, ). (Entered: 08/22/2006) |
| 08/29/2006 | 153 | Trustee's Certificate of Service *of Third Set of Requests for Production of Documents Propounded to Delong, Caldwell, Novotny & Bridges, LLC; Delong, Caldwell, Logue & Wisebram; Delong & Caldwell, LLC and* |

|            |            | *Earnest H. Delong, Jr.* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 08/29/2006) |
|------------|------------|---|
| 08/29/2006 | 🌐154 | Response to *Trustee's Motion For Order Directing Parties To Participate In Mediation* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)144 Motion filed by Plaintiff J. Lester Alexander). (CBM, ) Modified (to correct filing date) on 8/30/2006 (CBM, ). (Entered: 08/30/2006) |
| 09/11/2006 | 🌐155 | Trustee's Motion *to Strike the Affidavit of William G. Ross and to Bar His Testimony at Trial* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C). (Attachments: # 1 Exhibit A) (Barriere, Brent) (Entered: 09/11/2006) |
| 09/15/2006 | 🌐156 | Submission of Documents: *Trustee's Opposition to Defendants' Motion for Summary Judgment* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C). (Attachments: # 1 Supplement Statement of Undisputed Material Facts) (Barriere, Brent) (Entered: 09/15/2006) |
| 09/18/2006 | 🌐157 | Exhibit *Exhibits 1 through 10 attached to Trustee's Opposition to Defendants' Motion for Summary Judgment* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)156 Submission of Documents, filed by Plaintiff J. Lester Alexander). (Attachments: # 1 Exhibit # 2 Exhibit # 3 Declaration re: Electronic Filing of Petitions and Schedules # 4 Exhibit # 5 Exhibit) (Barriere, Brent) (Entered: 09/18/2006) |
| 09/18/2006 |            | Matter Under Advisement Re: (RE: related document(s) Set Matter Under Advisement Deadline). Matter Under Advisement Due by 10/2/2006. (Sawyer, William) (Entered: 09/18/2006) |
| 09/20/2006 | 🌐158 | Order For Joint Mediation (Related Doc # 144) Entered On 9/20/2006. (CBM, ) (Entered: 09/20/2006) |
| 09/22/2006 | 🌐159 | BNC Certificate of Service - See Image Attached - (RE: related document(s)158 Order). No. of Notices: 2. Service Date 09/22/2006. (Admin.) (Entered: 09/23/2006) |
| 10/25/2006 | 🌐160 | Trustee's Motion *for Status Conference Setting Trial Dates and Related Deadlines* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 10/25/2006) |
| 11/02/2006 | 🌐162 | Order Denying Motion for Summary Judgment (RE: related document(s) number 125 Motion For Summary Judgment). Entered On 11/2/2006. (RHP) Modified to add related doc #125 on 11/2/2006 (DS, ). (Entered: 11/02/2006) |

| 11/02/2006 | | Matter Under Advisement Re: (RE: related document(s) Set Matter Under Advisement Deadline). Matter Under Advisement Due by 11/2/2006. (Sawyer, William) (Entered: 11/02/2006) |
|---|---|---|
| 11/02/2006 | 🔗163 | MEMORANDUM DECISION/OPINION - Authored by Judge William Sawyer. Entered On 11/2/2006 (RE: related document(s)162 Summary Judgment, 125 Motion for Summary Judgment filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C.). (Young, Douglas) (Entered: 11/07/2006) |
| 11/03/2006 | 🔗164 | Order Setting Status Conference Entered On 11/3/2006 (RE: related document(s)1 Complaint, filed by Plaintiff J. Lester Alexander). Status hearing to be held on 11/14/2006 at 01:30 PM at Telephone Hearing. **(EACH PARTY DESIRING TO BE HEARD MUST CALL TOLL FREE AT 1-800-347-3350 AT LEAST 5 MINUTES PRIOR TO COMMENCEMENT OF COURT - THE CHAIRPERSON IS WILLIAM LIVINGSTON)** (CBM, ) Modified (to add relations) on 11/3/2006 (CBM, ). Modified to correct rel docs on 11/6/2006 (DS, ). (Entered: 11/03/2006) |
| 11/03/2006 | | Motion terminated(rel doc #160). Status Hearing set (rel doc #164). (CBM, ) (Entered: 11/03/2006) |
| 11/04/2006 | 🔗165 | BNC Certificate of Service - See Image Attached - (RE: related document(s)162 Summary Judgment). No. of Notices: 3. Service Date 11/04/2006. (Admin.) (Entered: 11/04/2006) |
| 11/04/2006 | 🔗166 | BNC Certificate of Service - See Image Attached - (RE: related document(s)163 Order on Motion For Summary Judgment). No. of Notices: 3. Service Date 11/04/2006. (Admin.) (Entered: 11/04/2006) |
| 11/05/2006 | 🔗167 | BNC Certificate of Service - See Image Attached - (RE: related document(s)164 Order on Motion To Set Hearing, , ). No. of Notices: 1. Service Date 11/05/2006. (Admin.) (Entered: 11/05/2006) |
| 11/15/2006 | | Matter Under Advisement Re: (RE: related document(s)155 Motion,, Set Matter Under Advisement Deadline). Matter Under Advisement Due by 11/28/2006. (Sawyer, William) (Entered: 11/15/2006) |
| 11/21/2006 | 🔗168 | Order Setting Trial Date/Scheduling Order Entered On 11/21/2006 (RE: related document(s)1 Complaint, filed by Plaintiff J. Lester Alexander). Pretrial Disclosures due by 12/1/2006. Pre-Trial Conference set for 1/9/2007 at 01:30 PM at Telephone Hearing. EACH PARTY DESIRING TO BE HEARD MUST CALL TOLL FREE AT 1-800-347-3350 AT LEAST FIVE MINUTES PRIOR TO THE COMMENCEMENT OF COURT. THE CHAIRPERSON IS WILLIAM LIVINGSTON. Trial date set for 1/30/2007 at 09:30 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (DS, ) (Entered: 11/21/2006) |

Case 2:07-cv-00585-WKW     Document 1-2     Filed 06/26/2007     Page 21 of 28

| 11/23/2006 | 169 | BNC Certificate of Service - See Image Attached - (RE: related document(s)168 Scheduling Order, , ). No. of Notices: 9. Service Date 11/23/2006. (Admin.) (Entered: 11/24/2006) |
| 12/01/2006 | 170 | Submission of Pretrial Documents *Trustee's Pretrial Disclosures Pursuant to Rule 7026(a)(3)* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)25 Scheduling Order,,, 1 Complaint, filed by Plaintiff J. Lester Alexander). (Lasky, Catherine) (Entered: 12/01/2006) |
| 12/01/2006 | 171 | Discovery Response *Defendants' Supplemental Disclosures* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E) (DeLong, Earnest) (Entered: 12/01/2006) |
| 12/01/2006 | 172 | Discovery Response *Defendants' Amended Supplemental Disclosures* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F) (DeLong, Earnest) (Entered: 12/01/2006) |
| 12/01/2006 | 173 | Submission of Pretrial Documents *Defendants' Pretrial Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 12/01/2006) |
| 12/01/2006 | 174 | Motion to Strike *Defendants' Response to Motion to strike the Affidavit of William G. Ross and to Bar His Testimony at Trial* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 12/01/2006) |
| 12/04/2006 | 175 | Discovery Request for *Defendants' Request for Filing of Original Discovery* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 12/04/2006) |
| 12/14/2006 | 176 | Order (Related Doc # 83, # 155, # 174) Entered On 12/14/2006. (Pugh, Rebekah) (Entered: 12/14/2006) |
| 12/14/2006 | 177 | MEMORANDUM DECISION/OPINION - Authored by Judge William Sawyer. Entered On 12/14/2006. (Pugh, Rebekah) (Entered: 12/14/2006) |
| 12/14/2006 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 12/14/2006) |
| 12/16/2006 | 178 | BNC Certificate of Service - See Image Attached - (RE: related document(s)176 Order on Motion for Jury Trial, , Order on Motion to Strike). No. of Notices: 1. Service Date 12/16/2006. (Admin.) (Entered: 12/17/2006) |

| 12/16/2006 | 🌐179 | BNC Certificate of Service - See Image Attached - (RE: related document(s)177 Opinion). No. of Notices: 1. Service Date 12/16/2006. (Admin.) (Entered: 12/17/2006) |
| 12/19/2006 | 🌐180 | Motion *in Limine and Memorandum of Law in Support Thereof* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 12/19/2006) |
| 01/03/2007 | 🌐181 | Trustee's Objection to *Defendants' Motion in Limine* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)180 Motion filed by Defendant Earnest H. DeLong). (Barriere, Brent) (Entered: 01/03/2007) |
| 01/11/2007 | 🌐182 | Motion *to Produce Certain Witnesses* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 01/11/2007) |
| 01/12/2007 | 🌐183 | Submission of Pretrial Documents *Amended Pretrial Disclosures* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 01/12/2007) |
| 01/12/2007 | 🌐184 | Submission of Pretrial Documents *Addition to Trustee's Amended Pretrial Disclosures* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 01/12/2007) |
| 01/16/2007 | 🌐185 | Submission of Documents: *Summary of Trustee's Contentions Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 01/16/2007) |
| 01/17/2007 | 🌐186 | Pre-Trial Scheduling Order and Order Denying Motion In Limine (rel doc #180) Entered On 1/17/2007 (RE: related document(s)1 Complaint, filed by Plaintiff J. Lester Alexander). Trial date set for 1/30/2007 at 09:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (CBM, ) (Entered: 01/17/2007) |
| 01/17/2007 | | Motion terminated (RE: related document(s)180 Motion). Order entered Denying Motion (rel doc #186) (CBM, ) (Entered: 01/17/2007) |
| 01/17/2007 | 🌐187 | Notice of Telephone Hearing Set (RE: related document(s)182 Defendants' Motion to Produce Certain Witnesses). Hearing scheduled for 1/18/2007 at 11:30 AM at Telephone Hearing. (JPC, ) (Entered: 01/17/2007) |
| 01/18/2007 | 🌐188 | Writ of Habeas Corpus Ad Prosequendum (Roy Terry) on Entered On 1/18/2007 (RE: related document(s)182 Motion filed by Defendant Earnest H. DeLong). (RK, ) (Entered: 01/18/2007) |
| 01/18/2007 | 🌐189 | Writ of Habeas Corpus Ad Prosequendum (Rudolph Terry) on Entered On |

| | | 1/18/2007 (RE: related document(s)182 Motion filed by Defendant Earnest H. DeLong). (RK, ) (Entered: 01/18/2007) |
|---|---|---|
| 01/23/2007 | ⊜190 | Submission of Documents: *Second Addition to Trustee's Amended Pretrial Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)183 Submission of Pretrial Documents filed by Plaintiff J. Lester Alexander, 184 Submission of Pretrial Documents filed by Plaintiff J. Lester Alexander). (Barriere, Brent) (Entered: 01/23/2007) |
| 01/23/2007 | ⊜191 | Submission of Documents: *Trustee's Amended Contentions Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)185 Submission of Documents filed by Plaintiff J. Lester Alexander). (Barriere, Brent) (Entered: 01/23/2007) |
| 01/24/2007 | ⊜192 | Submission of Documents: *Summary of Defendants' Contentions Disclosures Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr (RE: related document(s)191 Submission of Documents, filed by Plaintiff J. Lester Alexander). (Attachments: # 1 Exhibit 1) (DeLong, Earnest) (Entered: 01/24/2007) |
| 01/26/2007 | ⊜193 | Submission of Documents: *Joint Stipulations* Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 01/26/2007) |
| 02/02/2007 | ⊜194 | Order Setting Scheduling Conference Entered On 2/2/2007. Conference scheduled for 2/8/2007 at 10:00 AM at Telephone Hearing. (JPC, ) (Entered: 02/02/2007) |
| 02/04/2007 | ⊜195 | BNC Certificate of Service - See Image Attached - (RE: related document(s)194 Order on Motion To Set Hearing). No. of Notices: 1. Service Date 02/04/2007. (Admin.) (Entered: 02/04/2007) |
| 02/12/2007 | | Matter Under Advisement Re:. Matter Under Advisement Due by 3/15/2007. (Sawyer, William) (Entered: 02/12/2007) |
| 02/14/2007 | ⊜196 | Scheduling Order Entered On 2/14/2007 (RE: related document(s)1 Complaint, filed by Plaintiff J. Lester Alexander). The Parties shall file their respective findings of facts and conclusions of law no later than March 15, 2007. (CBM, ) (Entered: 02/14/2007) |
| 02/27/2007 | ⊜197 | Motion to Extend Time *for Filing of Proposed Findings of Fact and Proposed Conclusions of Law* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) (Entered: 02/27/2007) |
| 03/06/2007 | ⊜198 | Order Granting Motion to Extend Time to File Proposed Findings of Fact and Conclusions of Law to April 2, 2007. (Related Doc # 197) Entered On |

| | | |
|---|---|---|
| | | 3/6/2007. (Sawyer, William) (Entered: 03/06/2007) |
| 03/09/2007 | | Matter Under Advisement Re: (RE: related document(s) Set Matter Under Advisement Deadline). Matter Under Advisement Due by 4/2/2007. (Sawyer, William) (Entered: 03/09/2007) |
| 04/02/2007 | 199 | Trustee's Proposed Findings of Fact and Conclusions of Law Filed by Brent B. Barriere on behalf of J. Lester Alexander III. (Barriere, Brent) (Entered: 04/02/2007) |
| 04/02/2007 | 200 | Proposed Findings of Fact and Conclusions of Law Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) (Entered: 04/02/2007) |
| 05/29/2007 | 201 | MEMORANDUM DECISION/OPINION - Authored by Judge William Sawyer. Entered On 5/29/2007. (Pugh, Rebekah) (Entered: 05/29/2007) |
| 05/29/2007 | 202 | Judgment Entered On 5/29/2007. (Pugh, Rebekah) (Entered: 05/29/2007) |
| 05/29/2007 | | Matter Under Advisement Re: (RE: related document(s) Set Matter Under Advisement Deadline). Matter Under Advisement Due by 6/11/2007. (Sawyer, William) (Entered: 05/29/2007) |
| 05/29/2007 | 203 | Proposed Findings of Fact and Conclusions of Law Submitted by Bankruptcy Judge William R. Sawyer to the District Court. (YP, ) (Entered: 05/29/2007) |
| 05/29/2007 | 204 | Order Directing Parties to File Any Objections to Proposed Findings of Fact and Conclusions of Law On or Before June 8, 2007. Entered On 5/29/2007 (RE: related document(s)203 Findings of Fact and Conclusions of Law)(YP, ). Modified on 5/30/2007 to add deadline to docket text (Young, Douglas). (Entered: 05/29/2007) |
| 05/29/2007 | 205 | Proposed Findings of Fact and Conclusions of Law - Authored by Judge William Sawyer. (YP, ) (Entered: 05/29/2007) |
| 05/31/2007 | 206 | BNC Certificate of Service - See Image Attached - (RE: related document(s)204 Order, ). No. of Notices: 9. Service Date 05/31/2007. (Admin.) (Entered: 06/01/2007) |
| 06/08/2007 | 207 | *Trustee's Objection to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Pursuant to 28 USC Sec. 157(C)(1) and Bankruptcy Rule 9033* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)203 Findings of Fact and Conclusions of Law). (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Barriere, Brent) (Entered: 06/08/2007) |

| 06/08/2007 | 208 | *Request for Oral Argument on Trustee's Objection to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)207 Objection, filed by Plaintiff J. Lester Alexander). (Barriere, Brent) . (Entered: 06/08/2007) |
| --- | --- | --- |
| 06/08/2007 | 209 | NOTED SUBMISSION ERROR - INCORRECT DOCKET EVENT - RESUBMITTED IN DE #210 - Submission of Documents: *NOTICE OF APPEAL* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr. (DeLong, Earnest) Modified on 6/12/2007 (YP, ). (Entered: 06/08/2007) |
| 06/08/2007 | 210 | Notice of Appeal . Receipt Number NOT PAID, Fee Amount $255. **RECEIPT OF FILING FEE ON 6/19/2007, RECEIPT NUMBER 6003860, FEE AMOUNT $255.00.** Filed by Charles R Bridgers on behalf of Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)201 Opinion, 202 Judgment). Appellant Designation due by 6/18/2007. Transmission of Designation Due by 6/28/2007. (YP, ). Modified TEXT TO REFLECT PAYMENT OF FILING FEE on 6/20/2007 (LB, ). (Entered: 06/12/2007) |
| 06/12/2007 | 211 | Notice of Electronic Submission Error (Non-Image Entry) (RE: related document(s)209 Submission of Documents). (YP, ) (Entered: 06/12/2007) |
| 06/12/2007 | 212 | Notice */Clerk's Notice of Deficiency and Deadline to File Designation of Record* Filed by (RE: related document(s)210 Notice of Appeal, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, Defendant Earnest H. DeLong, Defendant DeLong & Caldwell, LLC, Defendant DeLongCaldwell Logue and Wisebram). (YP, ) . Additional attachment(s) added on 6/12/2007 (YP, ). (Entered: 06/12/2007) |
| 06/12/2007 | 213 | Notice Service of Notice of Appeal. Civil Action Number: Filed by (RE: related document(s)210 Notice of Appeal, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C, Defendant Earnest H. DeLong, Defendant DeLong & Caldwell, LLC, Defendant DeLongCaldwell Logue and Wisebram). (Attachments: # 1 Instructions for appellant)(DS, ) (Entered: 06/12/2007) |
| 06/14/2007 | 214 | BNC Certificate of Service - See Image Attached - (RE: related document(s)210 Notice of Appeal, ). No. of Notices: 9. Service Date 06/14/2007. (Admin.) (Entered: 06/15/2007) |
| 06/14/2007 | 215 | BNC Certificate of Service - See Image Attached - (RE: related document(s)212 Notice, ). No. of Notices: 2. Service Date 06/14/2007. (Admin.) (Entered: 06/15/2007) |
| 06/14/2007 | 216 | BNC Certificate of Service - See Image Attached - (RE: related document(s)213 Notice Service of Notice of Appeal, ). No. of Notices: 1. |

| | | Service Date 06/14/2007. (Admin.) (Entered: 06/15/2007) |
|---|---|---|
| 06/15/2007 | 217 | NOTED SUBMISSION ERROR - INCORRECT DOCKET EVENT USED - REPLACED WITH DE #218 - Submission of Documents: *Notice of Cross-Appeal* Filed by Catherine E. Lasky on behalf of J. Lester Alexander III. (Lasky, Catherine) Modified on 6/19/2007 (YP, ). (Entered: 06/15/2007) |
| 06/15/2007 | 218 | Cross Appeal . Receipt Number NOT PAID, Fee Amount $255. **FEE PAID 6/20/2007, RECEIPT #B2323215, FEE AMOUNT 255.00**. Filed by Catherine E. Lasky on behalf of J. Lester Alexander III (RE: related document(s)201 Opinion, 202 Judgment, 210 Notice of Appeal, filed by Defendant Delong, Caldwell, Novotny & Bridgers, L.L.C., Defendant Earnest H. DeLong, Defendant DeLong & Caldwell, LLC, Defendant DeLongCaldwell Logue and Wisebram). Cross-Appellant Designation due 6/25/2007. Transmission of Designation Due 7/5/2007. (YP, ) . Modified TO REFLECT FEE PAID ON 6/20/2007 (LB, ). (Entered: 06/18/2007) |
| 06/16/2007 | | Matter Under Advisement Complete (RE: related document(s) Set Matter Under Advisement Deadline). (Sawyer, William) (Entered: 06/16/2007) |
| 06/18/2007 | | Flags: FeeDueOTH flag(s) set (Filing Fees for 210 Notice of Appeal; 218 Cross Appeal). (YP, ) (Entered: 06/18/2007) |
| 06/18/2007 | 219 | Response to *Trustee's Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Pursuant to 28 USC 157(C)(1) and Bankruptcy Rule 9033* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)207 Submission of Documents, filed by Plaintiff J. Lester Alexander). (DeLong, Earnest) (Entered: 06/18/2007) |
| 06/19/2007 | 220 | Notice of Electronic Submission Error (Non-Image Entry) (RE: related document(s)217 Submission of Documents). (YP, ) (Entered: 06/19/2007) |
| 06/19/2007 | | Deadlines terminated - Appellant Designation Due 06/18/2007 (rel doc #210). Appellant Designation not filed. (DS, ) (Entered: 06/19/2007) |
| 06/19/2007 | 221 | Notice */Clerk's Notice of Deficiency and Deadline to File Designation of Record* Filed by (RE: related document(s)218 Cross Appeal, filed by Plaintiff J. Lester Alexander). (YP, ) (Entered: 06/19/2007) |
| 06/19/2007 | 222 | Clerk's Notice of Filing Fees Due in the Amount of $ 255 for Cross Appeal (RE: related document(s)218 Cross Appeal,221 Notice /Clerk's Notice of Deficiency and Deadline to File Designation of Record ). Filing Fee on Cross Appeal due by 6/25/2007. (YP, ) . Additional attachment(s) added on 6/19/2007 (YP, ). (Entered: 06/19/2007) |

| 06/19/2007 | 223 | Clerk's Notice of Filing Fees Due in the Amount of $ 255 for Notice of Appeal (RE: related document(s)210 Notice of Appeal,, 212 Notice/Clerk's Notice of Deficiency and Deadline to File Designation of Record ). Filing Fee on Notice of Appeal due by 6/25/2007. (YP, ) Additional attachment(s) added on 6/19/2007 (YP, ). (Entered: 06/19/2007) |
|---|---|---|
| 06/19/2007 | 224 | Receipt of Appeal Filing Fee - $255.00 by JI. **Paid by Delong, Caldwell, Receipt Number 06003860, Amount $255.00. (admin) Modified text to reflect payment on 6/20/2007 (LB, ). (Entered: 06/20/2007)** |
| 06/20/2007 | | Deadlines terminated. **In Re: Docket Entry #210 - Notice of Appeal filing fee has been paid. Receipt Number 6003860, Amount $255.00. (LB, ) (Entered: 06/20/2007)** |
| 06/20/2007 | 225 | Payment of fee amount $255 for Clerk's Notice of Fees Due for Notice of Appeal and/or Cross Appeal Filed by Brent B. Barriere on behalf of J. Lester Alexander III (RE: related document(s)217 Submission of Documents filed by Plaintiff J. Lester Alexander). (Barriere, Brent) (Entered: 06/20/2007) |
| 06/20/2007 | 226 | Receipt of Payment on Clerk's Notice of Fees Due for Notice of Appeal and/or Cross Appeal(04-03135) [misc,mfeedue] ( 255.00) filing fee. Receipt number 2323215, amount $ 255.00. (U.S. Treasury) (Entered: 06/20/2007) |
| 06/20/2007 | | Deadlines terminated. **In Re: Docket Entries #218 & #222 - Filing Fee on Cross Appeal Paid. Receipt Number B2323215, Fee Amount $255.00, Receipt Date 6/20/2007. (LB, ) (Entered: 06/20/2007)** |
| 06/20/2007 | | Flags: FeeDueOTH; FEEDUE flag(s) removed (Filing Fees for both the Notice of Appeal and Cross Appeal have been paid). (YP, ) (Entered: 06/20/2007) |
| 06/22/2007 | 227 | Defendants' Designation of Contents for Inclusion in Record and Statement of Issues on Appeal Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C (RE: related document(s)210 Notice of Appeal filed by Defendant Earnest H. DeLong). ( Modified to correct designation of records on 6/25/2007 (YP, ). (Entered: 06/22/2007) |
| 06/22/2007 | 228 | Submission of Documents: *Transcript Order Form* Filed by Earnest H. DeLong on behalf of Earnest H. DeLong Jr, DeLong & Caldwell, LLC, DeLongCaldwell Logue and Wisebram, Delong, Caldwell, Novotny & Bridgers, L.L.C. (DeLong, Earnest) (Entered: 06/22/2007) |
| 06/25/2007 | 229 | Transcript Of January 30th, 2007 Proceedings Filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 06/25/2007) |

| 06/25/2007 | 230 | Transcript of January 31, 2007 Proceedings Filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 06/25/2007) |
|---|---|---|
| 06/25/2007 | 231 | Transcript of February 1, 2007 Proceedings Filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 06/25/2007) |
| 06/25/2007 | 232 | Transcript of February 2, 2007 Proceedings Filed - will be held from public until Redaction Deadlines have passed. (LB, ) (Entered: 06/25/2007) |
| 06/25/2007 | 233 | A transcript has been filed for the hearing held on January 30, 31, 2007, February 1, 2, 2007. Pursuant to the Judicial Conference Policy on Privacy, access to this transcript is restricted for five business days from the date of filing. All parties have five business days to file a Request for Redaction of any social security numbers, financial account data, names of minor-age children, dates of birth, and home addresses. If redaction is requested, the filing party has 21 calendar days from the date the transcript was filed to file a list of items to be redacted indicating the location of the identifiers within the transcript with the court and to provide the list to the transcriber. If no request is filed, the transcript will be made electronically available to the general public. You may view a copy of the transcript by visiting the Office of the Clerk of Court at One Church Street, Montgomery, AL or you may purchase a copy by calling the Clerk of Court at 334-954-3800.. Request for Redaction must be filed by 7/2/2007. List of Items to be Redacted must be filed by 7/16/2007. (LB, ) (Entered: 06/25/2007) |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

2:07cV585 MEF

In re

Case No. 03-32063-WRS
Chapter 7

TERRY MANUFACTURING
COMPANY, INC.,

       Debtor.


J. LESTER ALEXANDER, III,
TRUSTEE,

       Plaintiff,

Adv. Pro. No. 04-3135-WRS

    v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC;  DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

       Defendants.


**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
SUBMITTED BY BANKRUPTCY JUDGE WILLIAM R. SAWYER
TO THE DISTRICT COURT**

    Pursuant to 28 U.S.C. § 157(c), the undersigned submits these proposed findings of fact

and conclusions of law.

**I.  INTRODUCTION**

    This Adversary Proceeding was tried in Bankruptcy Court over a four day period

beginning on January 30, 2007.  The issues were set out in the Second Amended and Restated

Complaint of J. Lester Alexander, III,  (Doc. 161), in a four count complaint.  Count I of the

1

complaint is for attorney malpractice. As this is not a core proceeding, and as the Defendants

have not consented to entry of a final judgment by the undersigned, proposed findings of fact and

conclusions of law are submitted to the District Court. Count II of the complaint was to set aside

fraudulent transfers pursuant to 11 U.S.C. § 544(b), and State law. For the reasons set forth in

the Bankruptcy Court's Memorandum Decision, judgment is entered in favor of the Trustee. As

that is a core proceeding, the Bankruptcy Court may enter final judgment. Counts III and IV are

for fraudulent conveyances under 11 U.S.C. § 548 and voidable preferences under 11 U.S.C. §

547 respectively, and for the reason set forth in the Memorandum Decision, those claims are

dismissed with prejudice.

## II. FINDINGS OF FACT

The undersigned incorporates by reference the Memorandum Decision entered this date

in this Adversary Proceeding.

As was clearly established in the Memorandum Decision, DeLong is a Georgia lawyer

who represented Terry Manufacturing in the Commercial Factors litigation in Gwinnett County,

Georgia. DeLong was retained initially to represent Terry Manufacturing in the Commercial

Factors case. When Commercial Factors amended its complaint to add Rudolph Terry as an

additional named Defendant, DeLong represented him as well. The Trustee contends that the

interests of Rudolph Terry and Terry Manufacturing conflict and that by representing both

Defendants, DeLong committed malpractice.

The interests of Terry Manufacturing and Rudolph Terry do in fact conflict. DeLong

contends that Terry Manufacturing waived any conflict, offering his own testimony as well as

the testimony of both Rudolph and Roy Terry. The testimony of all three was consistent in that

the conflict of interest was discussed and expressly waived. The Terry brothers together owned

100% of the common stock of Terry Manufacturing, and they were President and Vice President

of the corporation. It is undisputed that there was not a written waiver of the conflict of interest.

The testimony here was not without difficulty. DeLong is a Defendant and for that reason, he is

biased. In addition, both of the Terry brothers are convicted felons whose testimony is not to be

accepted at face value. Acknowledging all of the problems with the proof here, the undesigned

nevertheless finds that the conflict of interest was waived.

### III. CONCLUSIONS OF LAW

As set forth in the Memorandum Decision of this date, Georgia law applies. "In a legal

malpractice action, the plaintiff must established three elements: '(1) employment of the

defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and

(3) that such negligence was the proximate cause of damage to the plaintiff.'" Allen v. Lefkoff,

Duncan, Grimes & Dermer, P.C., 453 S.E.2d 719, 720 (Ga. 1995). The Georgia Code of

Professional Responsibility "do[es] not play a role in shaping the 'care and skill' ordinarily

exercised by attorneys practicing law in Georgia." Id. at 721.

As set forth in Part II above, the undersigned found that the conflict of interest was

waived. Thus, there was no violation of the pertinent ethical rules by DeLong here. As the

Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical

duty, his failure to establish such a breach is fatal to the malpractice claim. For this reason, the

undersigned concludes that DeLong did not commit malpractice. The Court has read the

decisions cited by the parties and undertaken its own research independently. The Court is

unable to find any reported decisions where a malpractice action was predicated on an

3

unwaivable conflict of interest where a lawyer represented a corporation and its principals.

Therefore, Count I of the complaint should be dismissed with prejudice.

Done this the 29th day of May, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO.  04-03135 |
| VERSUS | ) | |
| | ) | |
| DELONG, CALDWELL, NOVOTNY, | ) | |
| & BRIDGERS, L.L.C. , DELONG | ) | |
| CALDWELL LOGUE & WISEBRAM, | ) | |
| DELONG & CALDWELL, L.L.C. | ) | |
| AND EARNEST H. DELONG, JR. | ) | |

TRUSTEE'S OBJECTION TO BANKRUPTCY COURT'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
<u>PURSUANT TO 28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033</u>

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the

duly appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company,

Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC, ("Terry Uniform"), who

respectfully submits the following objections to the Proposed Findings of Fact and Conclusions of Law Submitted by Bankruptcy Judge William R. Sawyer to the District Court ("Proposed Findings") in the above-captioned adversary proceeding.

## Introduction

1.    The Trustee does not object to any of the findings of fact made by the Bankruptcy Court in its Proposed Findings.[1]  The Trustee does object to the Bankruptcy Court's proposed conclusions of law as they are contrary to the settled law of legal malpractice and obligations of attorneys in the state of Georgia.  The essential question presented by this case is whether an attorney can avoid the consequences of his failure to exercise ordinary care, skill and diligence, and specifically breach of his duties of care and loyalty, by simply obtaining a verbal waiver from interested parties.  The Trustee submits that the duties imposed upon attorneys as officers of the court and the attorneys' legal duties to their clients mandate that immunity for such breaches must be denied.

## Procedural History

2.    The Trustee filed an adversary proceeding in the Bankruptcy Court seeking to recover the sum of $476,233.67 paid to Earnest H. DeLong, Jr. and DeLong & Caldwell, LLC (collectively "Defendants") by Terry Manufacturing.  That sum represents the total of payments by Terry Manufacturing in satisfaction of statements for legal services purportedly rendered to Terry Manufacturing and Rudolph Terry in litigation styled *Commercial Factors of Atlanta, Inc.*

---

1    As discussed in paragraph 34 below, the Trustee specifically objects to the Bankruptcy Court's conclusion limiting liability to Mr. DeLong.  The Trustee understands the Bankruptcy Court's decision on the issue to be a conclusion of law rather than a factual finding.  The Trustee does object to the extent that conclusion is deemed to be a factual finding.

*v. Terry Manufacturing Company, Inc., Floodgates, Ltd. and John L. Pouncey*, 99-A-10650-5 in

the Superior Court of Gwinnett County, State of Georgia (the "Commercial Factors Litigation").

      3.    The Trustee sought recovery based upon two theories.  The first was an avoidance

action under the Bankruptcy Code and Alabama and Georgia fraudulent transfer statutes.  The

Bankruptcy Court entered a final judgment on that claim in favor of the Trustee and against Mr.

DeLong and awarded as damages all amounts paid by Terry Manufacturing.  The second theory

was that the Defendants committed legal malpractice as defined under Georgia law and breached

the legal duties of care and loyalty owed to Terry Manufacturing by (i) simultaneous

representation of Terry Manufacturing and Rudolph Terry when their interests were in direct

conflict; and (ii) sacrificing the interests of Terry Manufacturing to those of Rudolph Terry.  On

the legal malpractice claim, the Trustee sought damages in the amount equal to that paid to the

Defendants by Terry Manufacturing.  Because the legal malpractice claim was not a core

proceeding and consent of the parties was not obtained for entry of a final judgment, the

Bankruptcy Court could only submit proposed findings of fact and conclusions of law subject to

review by the District Court pursuant to 28 U.S.C. § 157(c)(1).

## **Standard of Review**

      4.    Section 157(c)(1) provides that in a non-core proceeding, the bankruptcy court

"shall submit proposed findings of fact and conclusions of law to the district court, and any final

order or judgment shall be entered by the district judge after considering the bankruptcy judge's

proposed findings and conclusions and after reviewing de novo those matters to which any party

has timely and specifically objected."  28 U.S.C. § 157(c)(1).

NO.99788088.1

5.    Rule 9033 of the Bankruptcy Rules further provides that the "district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  The Eleventh Circuit has held that de novo review requires a district court to take a "fresh, independent analysis" of the proposed findings and conclusions submitted by the bankruptcy court.  *In re Toledo*, 170 F.3d 1340, 1350 n.12 (11th Cir. 1999).  As such, there is no deference given to the bankruptcy court to matters to which a party "has timely and specifically objected."  *Id*. at 1350.

6.    The Trustee does not object to the findings of fact submitted by the Bankruptcy Court in its Proposed Findings.[2]  Instead, the Trustee files these objections to the Bankruptcy Court's Conclusions of Law.  The Trustee objects to the Bankruptcy Court's misinterpretation of the language and rule of *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 453 S.E.2d 719, 720 (Ga. 1995) that "[t]he Georgia Code of Professional Responsibility 'do[es] not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law in Georgia."  Proposed Findings at 3.  The Trustee further objects to the Bankruptcy Court's proposed conclusion that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" and that the Trustee's "failure to establish such a breach is fatal to the malpractice claim."  *Id*.  Finally, the Trustee objects to the conclusion that the Defendants were

---

2        As noted, in its Memorandum Decision, the Bankruptcy Court concluded that only Mr. DeLong is liable for repayment of the fees under a fraudulent transfer theory.  As the Trustee understands that this was a legal, rather than a factual conclusion, and has not been incorporated in the Proposed Findings of Fact and Conclusions of Law. The Trustee does object to the extent the conclusion may be deemed a factual finding.

-4-

insulated from their breaches of their duty of care and duty of loyalty because they received an oral waiver from interested officers and shareholders. The District Court must examine those conclusions de novo.

## **Georgia Law on Legal Malpractice**

7.     As stated in the Proposed Findings, in order to prevail on a legal malpractice claim asserted under Georgia law, a "plaintiff must establish three elements: '(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff.'" *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 453 S.E.2d 719, 720 (Ga. 1995).

8.     Applying a "fresh, independent analysis" to the factual findings made by the Bankruptcy Court in its Proposed Findings as well as the incorporated Memorandum Opinion, clearly supports a finding of legal malpractice in favor of the Trustee and against the Defendants. The Trustee specifically objects to the Bankruptcy Court's misinterpretation of the language and rule of *Allen* by holding that "[t]he Georgia Code of Professional Responsibility 'do[es] not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law in Georgia." Proposed Findings at 3. In fact, the *Allen* court held the contrary. The Trustee further objects to the Bankruptcy Court's proposed conclusion that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" and that the Trustee's "failure to establish such a breach is fatal to the malpractice claim." *Id*. Finally, the Trustee objects to the Bankruptcy Court's proposed conclusion that an attorney who breaches his duty of care and loyalty to one client and sacrifices that client's interests to those of another client, may escape liability if he has received an oral waiver from interested parties.

## The *Allen* Standard:  Element One

9.      The first element required by the Georgia Supreme Court in *Allen* is satisfied as the Bankruptcy Court found that Terry Manufacturing employed the Defendants as attorneys. *See* Memorandum Decision at 5 ("Rudolph Terry retained Defendant Earnest DeLong, an Atlanta lawyer, to represent Terry Manufacturing…"); Memorandum Decision at 8 ("It is undisputed that the bills were sent under the letter head of 'DeLong & Caldwell, LLC.'"); Memorandum Decision at 9 ("All of the billing and correspondence for DeLong's services for Rudolph Terry was done under the name 'DeLong & Caldwell, LLC,' on bills issued to Terry Manufacturing.").

## The *Allen* Standard:  Element Two
## Failure to Exercise "Ordinary Care, Skill and Diligence"

10.      The Bankruptcy Court erred in concluding that the Trustee did not establish the Defendants' failure to exercise "ordinary care, skill and diligence." The Memorandum Decision entered by the Bankruptcy Court is replete with findings related to the failure of the Defendants to "exercise ordinary care, skill and diligence" in their representation of Terry Manufacturing. Those findings include:

-        The Defendants filed an Answer and Counterclaim on behalf of Terry Manufacturing that admitted that Terry Manufacturing owed $2.1 million to Commercial Factors "when in fact it [Terry Manufacturing] had never received the first tee shirt, and for that reason owed nothing."  (Memorandum Opinion at 5).

-        The Defendants' fees were grossly excessive in light of the fact that "Terry Manufacturing never received the first tee shirt" which "could have been easily established with

a modest amount of effort….there is no valid reason for the defense to have taken such a massive effort." (Memorandum Opinion at 14).

-    The Defendants' efforts "to thwart Commercial Factors' discovery" were designed "to conceal the criminal activities of Rudolph and Roy Terry and not to defend Terry Manufacturing." (Memorandum Opinion at 14-15).

-    The Defendants failed to maintain their duty of loyalty to Terry Manufacturing in the Commercial Factors litigation raising "inconsistent defenses…on behalf of Terry Manufacturing and Rudolph Terry…Terry Manufacturing paid DeLong nearly half a million dollars to effectively eviscerate its litigation position." (Memorandum Opinion at 18).

11.    Defendants extracted "astonishing" fees from Terry Manufacturing in order to defend Rudolph Terry and knew or should have known that they sacrificed Terry Manufacturing's interests in order to protect Rudolph:

> The sheer magnitude of the attorney's fees here is astonishing. Terry Manufacturing never received the first tee shirt. This fact could have been easily established with a modest amount of effort. However, this fact could not be proven without also establishing that Rudolph Terry had lied to Commercial Factors about the Floodgates invoices. Thus, the thrust of DeLong's efforts was not to defend Terry Manufacturing in the Commercial Factors civil action. Rather, it was to shield Rudolph Terry from criminal liability, using Terry Manufacturing to fund the effort and refusing to produce Terry Manufacturing documents which would have gotten it off the hook…. (Memorandum Opinion at 14).

12.    The Bankruptcy Court also specifically rejected the Defendants' assertions that they used a "high degree of skill" in their representation of Terry Manufacturing. In rejecting that argument the Court held that "[t]he problem is that virtually all of DeLong's efforts were

directed at protecting Rudolph Terry from criminal prosecution, often to the detriment of Terry Manufacturing." Memorandum Opinion at 15.

13.    None of the massive effort expended by the Defendants was done "to benefit Terry Manufacturing….**Indeed, these efforts were highly prejudicial to Terry Manufacturing**." Memorandum Opinion at 16 (emphasis added). Clearly, the factual findings made by the Bankruptcy Court establish actions and inactions by Defendants in their representation of Terry Manufacturing that were far below the level of "ordinary care, skill and diligence" required for lawyers practicing in the State of Georgia.

14.    Defendants knew or should have know that they sacrificed the interests of Terry Manufacturing to Rudolph Terry, and in so doing breached their duties of care and loyalty owed to Terry Manufacturing:

> …DeLong ignores the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic. Terry Manufacturing's defense- no tee shirts- necessarily implies Rudolph Terry's fraud, as he had falsely certified the existence of the nonexistent tee shirts. Rather than defending Terry Manufacturing, DeLong placed Terry Manufacturing squarely between Commercial Factors and Rudolph Terry. That is, DeLong was defending Rudoph Terry at the expense of Terry Manufacturing. (Memorandum Opinion at 16).

15.    The Georgia Court of Appeals refused to grant summary judgment on a malpractice claim based upon a conflict of interest and held that a jury issue existed as to whether the defendant attorney was liable for malpractice in light of an affidavit submitted by the plaintiff's expert. *Traub*, 591 S.E.2d at 386. In the *Traub* case, the attorney claimed that he was entitled to summary judgment on the legal malpractice claim against him because the malpractice claim was "based solely on a breach of ethical duties, not on any act of negligence."

*Id*. at 385.  The appellate court rejected this argument because the plaintiff had engaged an expert who "did not merely opine that Washington [the attorney] violated a professional ethical standard.  To the contrary, the affidavit shows that the expert set forth the conduct on Washington's part that allegedly constituted professional malpractice- including continuing to represent Connor after conflicts arose and taking action adverse to Traub to gain an advantage for Connor."  *Id*.

16.     Similarly, Frank J. Beltran was tendered by the Trustee and accepted by the Bankruptcy Court as an expert as to the ethical obligations applied to attorneys practicing in the state of Georgia; the standard of care applicable to attorneys practicing in the state of Georgia and what conduct by the Defendants constituted a breach thereof.   Mr. Beltran is admitted to practice law in the State of Georgia and has testified as an expert in both state and federal courts in Georgia.  Mr. Beltran testified that the standard of care for an attorney practicing in the State of Georgia is to "use such skill, prudence and diligence as lawyers of ordinary skill [and] capacity commonly possess and exercise in the performance of the tasks which they undertake."  Trial Transcript at 309:25-310:4, relevant portions are attached hereto as Exhibit "A."

17.     Mr. Beltran also testified as to his opinions with respect to the conduct of the Defendants in this case.  Based upon his review of the pleadings in this case; the deposition testimony of Mr. DeLong and the exhibits thereto; the trial testimony of Mr. DeLong; the Georgia ethical rules, both prior to January 1, 2001, and after January 1, 2001; the formal advisory opinions of the Georgia Supreme Court; and relevant case law, his opinion was that at the time of the initial engagement, there was an actual conflict between Rudolph Terry and Terry Manufacturing and that the interests of Terry Manufacturing and Rudolph Terry were so

fundamentally at odds that the conflict of interest between them could not be waived by the clients. Trial Transcript at 324:14-325:12, 335:13-25, relevant portions are attached hereto as Exhibit "B." The lawyer, as an officer of the Court, has a duty to pursue zealously the best interests of all of his clients and to adhere to his ethical and professional duties- sometimes even in spite of his clients' wishes. Therefore, even if an alleged oral waiver by Roy and Rudolph Terry of the conflict between Terry Manufacturing and Rudolph Terry did in fact occur, the Defendants could not proceed with the joint representation. Trial Transcript at 326:15-329:6, relevant portions are attached hereto as Exhibit "C." Just as in the *Traub* case, the Trustee and his expert did not solely rely on ethical standards to establish the standard of care of the breach thereof.

### Duty of Loyalty

18.     An attorney's duty of loyalty is of the utmost importance and cannot be waived. Georgia courts mandate that a lawyer must "always act in a manner consistent with the best interests of his client. It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client- undiluted by conflicting or contrarian obligations, and undiminished by interests to himself or of others." *Paul v. Smith, Gambrell & Russell*, 267 Ga.App. 107, 110; 599 S.E.2d 206, 209 (Ga. App. 2004)(internal citations omitted). Furthermore, a "lawyer cannot pursue any interest or take any act adverse to his client's interests or incompatible with applying his best skill, zeal, and diligence in representing that client." Rhone v. Bolden, 270 Ga.App. 712, 717, 608 S.E.2d 22, 29 (Ga. App. 2004) (citing *Tunsil v. Jackson*, 248 Ga.App. 496, 499(2), 546 S.E.2d 875 (2001); *Nelson & Hill, P.A. v. Wood*, 245 Ga.App. 60, 67(3), 537 S.E.2d 670 (2000)).

-10-

19.     The findings of fact in the Bankruptcy Court's Memorandum Opinion clearly establish the Defendants' breach of their duty of loyalty to Terry Manufacturing.  The Court found that the Defendants ignored "the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic….One cannot sit down and stand up at the same time.  So it was with the inconsistent defenses raised by DeLong on behalf of Terry Manufacturing and Rudolph Terry in the Commercial Factors litigation.  Terry Manufacturing paid DeLong nearly half a million dollars to effectively eviscerate its litigation position."  Memorandum Opinion at 16, 18.  The Defendants violated their duty of care to Terry Manufacturing and were negligent in proceeding with the simultaneous representation of Terry Manufacturing and Rudolph Terry because they could not simultaneously comply with their duty of loyalty to both clients even with a purported waiver from Roy and Rudolph Terry.

20.     The Georgia Canons of Ethics and the related ethical considerations and Directory Rules that were in effect at the time the Defendants began their representation of Terry Manufacturing and at the time the conflict between Terry Manufacturing and Rudolph Terry became apparent, further confirm the Bankruptcy Court's factual findings regarding the Defendants' breach of their duty of loyalty and support the Trustee's claim of legal malpractice.[3] Ethical Consideration 5-14 provides that "[m]aintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client.  This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse or otherwise discordant."  As

---

3       The Georgia Canon of Ethics, related ethical considerations and Directory Rules were in effect until January 1, 2001.  The Defendants were engaged to represent Terry Manufacturing in January, 2000.

-11-

discussed herein and in the Memorandum Opinion, the interests of Terry Manufacturing and Rudolph Terry were conflicting, inconsistent, diverse and discordant. And, Defendants greatly compounded the breach of their duties by sacrificing the interests of Terry Manufacturing to those of Rudolph Terry.

21.    Ethical Consideration 5-15 instructs attorneys that a lawyer "requested to undertake or to continue representation of multiple clients having potentially differing interests…must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. **He should resolve all doubts against the propriety of the representation.**" (emphasis added). The Defendants clearly failed to follow this mandate.

22.    Primary among the Bankruptcy Court's findings in the Memorandum Opinion is the Defendants' failure to comply with their duty of loyalty to Terry Manufacturing. The Defendants were negligent in proceeding with the simultaneous representation of Terry Manufacturing and Rudolph Terry because they could not simultaneously comply with their duty of loyalty to both clients even with a purported waiver from Roy and Rudolph Terry.

**Verbal Waiver of Conflict Does Not Absolve Defendants of their
Duties to Terry Manufacturing**

23.    Even if Roy and Rudolph Terry waived the conflict of interest between Terry Manufacturing and Rudolph Terry, Defendants are not absolved of their obligation to exercise "ordinary care, skill and diligence" in their representation of Terry Manufacturing. "The relationship between a lawyer and client is a special one of trust that entitles the client to the attorney's fidelity. This 'unique' relationship is 'founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the

-12-

attorney.'"  *Aflac, Inc. v. Williams*, 264 Ga. 351, 353, 444 S.E.2d 314, 316 (Ga. 1994).  As a result of this special relationship, a verbal waiver, such as the one purportedly given by the Terrys, cannot serve to eliminate the Defendants' continuing duties to Terry Manufacturing.

24.    Georgia courts have recognized that even the potential for conflicting interests between an attorney's clients mandates withdrawal by that attorney from the representation "even though he [the attorney] may have acted in good faith and with the consent of both clients."  *First Nat'l Bank of Chattooga County v. Rapides Bank & Trust Co.*, 145 Ga.App. 514, 244 S.E.2d 51, 54 (Ga. Ct. App. 1978), *overruled on other grounds*.  "Where the fact that an attorney represents conflicting interests comes to the attention of the court before which a cause is pending, the court is required to prevent the attorney from continuing so to act.  The test in such cases is not the actuality of conflict, but the possibility that conflict may arise."  *Id*. (quoting *Young v. Champion*, 142 Ga.App. 687, 689-90, 236 S.E.2d 783, 785 (Ga. App. 1977)(internal quotations omitted).

25.    This concern is particularly acute when, as in the instant case, the alleged conflict waiver is given on behalf of a corporation by the shareholders or directors involved in the misconduct sought to be concealed through the Defendants' representation.  Memorandum Opinion at 3 at 15, n.5.  A waiver of a conflict on behalf of a corporation by shareholders in cases where "the only shareholders of the corporation are also the directors involved in the controversy…would render rule 3-600 [California Rule of Professional Conduct requiring informed consent for waiver of conflicts of interest] meaningless."  *Forrest v. Baeza*, 58 Cal.App.4th 65, 76; 67 Cal.Rptr.2d 857, 864 (Cal.App. 1 Dist. 1997).

NO.99788088.1

26.    The facts of the *Forrest* case are remarkably similar to the instant case.  In that case, the attorney was representing two of a corporation's three shareholders as well as the corporation those shareholders were accused of embezzling from.  *Id*. at 74.  The shareholder defendants argued that any conflict was waived on behalf of the corporation by a majority of the corporation's shareholders, namely the two shareholder defendants.  *Id*. at 76.  The Court rejected this argument and focused on the separate existence of the corporate entity and held that "'an inanimate corporate entity, which is run by directors who are themselves defendants in the derivative litigation, cannot effectively waive a conflict of interest as might an individual.'"  *Id*. at 77 (quoting *In re Oracle Securities Litigation*, 829 F.Supp. 1176, 1189 (N.D.Cal. 1993)). Although the Commercial Factors litigation was not a shareholders derivative suit as in *Forrest*, the interests of Rudolph Terry and Terry Manufacturing were clearly antagonistic and the same concerns apply as the "'primary value at stake in cases of simultaneous or dual representation is the attorney's duty- and the client's legitimate expectation- of *loyalty*, rather than confidentiality."  *Id*. at 74 (quoting *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (Cal.App. 4 Dist. 1994)(italics in original)).

27.    The Georgia ethical rules support the ineffectiveness of the Terrys' verbal waiver. The Defendants, once retained by Terry Manufacturing, owed "allegiance to the entity and not to the stockholder, director, officer, employee, representative, or other person connected with the entity.  In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization." Ethical Consideration 5-18.   This ethical consideration recognizes that the interests of a corporation and its constituents or control persons are not always the same.  It required the

-14-

Defendants to put the interests of Terry Manufacturing over those of Rudolph Terry, which they failed to do.

28.     Each of the Georgia decisions concerned attorneys who were of the good faith belief they could adequately represent the interests of both clients.  That is not the case here.  The Bankruptcy Court has repeatedly noted that Defendants knowingly favored Rudolph at the expense of Terry Manufacturing.  Indeed, "...DeLong was defending Rudolph Terry at the expense of Terry Manufacturing."  Memorandum Opinion at 16.

**The Bankruptcy Court's Erroneous Interpretation of**
***Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.***,

29.     The Bankruptcy Court did not err in concluding that the Georgia Code of Professional Responsibility **alone** does not define the "'care and skill' ordinarily exercised by attorneys practicing law in Georgia."   *Allen*, 453 S.E.2d at 721.   However, the Trustee respectfully submits that the language drawn from *Allen* by the Bankruptcy Court on page 3 of the Proposed Findings was misquoted and inconsistent with the Georgia Supreme Court holding. Further, the Trustee submits that the Bankruptcy Court erred by holding that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" such that the Court's finding that a waiver was obtained is fatal to the malpractice claim.  Proposed Findings at 3.  As shown in the evidence submitted by the Trustee at trial and the factual findings in the Bankruptcy Court's Memorandum Opinion, the Trustee definitively established actions by the Defendants sufficient to establish their failure to exercise ordinary care, skill and diligence required for attorneys in Georgia.

30.     The Bankruptcy Court selected a portion of a quote from the *Allen* decision to address the role of Bar Rules and the Georgia Code of Professional Conduct in legal malpractice

-15-

cases. The Court, however, erred in failing to include the entire quote from *Allen*, which in fact underscores the importance of Bar Rules and the Code of Professional Responsibility to a legal malpractice claim. The sentence in its entirety reads:

> Given the potential consequences of their [Code of Professional Responsibility and Bar Rules] violation and the fundamental nature of their purpose, it would not be logical or reasonable to say that the Bar Rules, in general, do not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law in Georgia.

*Allen*, 453 S.E.2d at 721.

31. Instead of holding, as the Bankruptcy Court found, that such Rules are not applicable, *Allen* instead holds that "while a Bar Rule is not determinative of the standard of care applicable in a legal malpractice action, it may be 'a circumstance that can be considered, along with other facts and circumstances.'" *Id.* at 722 (quoting *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 567 N.E.2d 1291 (Ohio 1991)). The Supreme Court then remanded the *Allen* case to the Court of Appeals to determine if the "standard of care" was in fact violated by the defendant attorney. *See also*, *Traub v. Washington*, 264 Ga.App. 541, 591 S.E.2d 382 (Ga. Ct. App. 2003)(holding that "[a]lthough the violation of a professional ethical standard, standing alone, cannot serve as a basis for a legal malpractice action, state bar rules are relevant to the standard of care in a legal malpractice action."). Similarly, the Trustee offered the Georgia ethical standards as relevant to, but not dispositive of, the standard of care violated by the Defendants. In addition to the Georgia ethical standards, the standard of care was established by the Trustee through the testimony of its expert witness, Frank Beltran, as well as relevant case law. Finally, the actions and inactions of the Defendants as proved by the Trustee at trial, and recognized by

the Bankruptcy Court in its Memorandum Opinion, clearly establish that the Defendants failed to meet the standard of care.

32.    Applying the applicable Ethical Considerations, Directory Rules, caselaw and expert testimony to the factual findings made by the Bankruptcy Court in its Memorandum Opinion, it is clear that the Defendants breached the standard of care by representing both Terry Manufacturing and Rudolph Terry despite any waiver of the conflict of interest between the two parties.  With or without a waiver, a client who engages counsel has a reasonable expectation that the attorney will advocate for and act in that client's best interest.  Even though the Bankruptcy Court found that the conflict of interest between Terry Manufacturing and Rudolph Terry was waived, such a waiver does not permit counsel to act to the **detriment** of one of his clients.  Terry Manufacturing was a corporation, a juridical entity, with an existence separate and apart from Rudolph or Roy Terry.  As such, it was a separate client with interests that were in fact divergent from those of Rudolph and Roy Terry.  The Defendants' failure to treat Terry Manufacturing as a separate client and their resulting failure to represent Terry Manufacturing with "ordinary care, skill and diligence" merits a finding of legal malpractice in favor of the Trustee and against the Defendants.

### The *Allen* Standard:  Element Three

33.    The Bankruptcy Court's Memorandum Opinion clearly establishes that the Defendants' negligent conduct was the proximate cause of the damage to Terry Manufacturing. Specifically, because the Defendants breached their duties of loyalty and care to Terry Manufacturing, Terry Manufacturing incurred nearly half a million dollars of needless litigation costs; remained embroiled in litigation in which it had a complete and straightforward defense;

and was harmed by the successful efforts of the Defendants to conceal the massive fraud perpetrated by the Terry brothers.  *See* Memorandum Opinion at 5-6, 14, at 15, n. 5.

## Proper Defendants

34.    It would also be error to find only Earnest DeLong individually liable for the legal malpractice as was the case with respect to the Trustee's fraudulent conveyance claim.  All of the statements paid by Terry Manufacturing were issued by DeLong & Caldwell, and the pleadings in the Commercial Factors litigation were filed under the name of DeLong & Caldwell.  *See e.g.*, Plaintiff's Trial Exhibits 13, 32, 35, 41, 42, 64, 68, 69, 94-97 and Memorandum Opinion at 8. Michael Caldwell, the other member of DeLong & Caldwell LLC, is equally liable for the legal malpractice claims because DeLong & Caldwell was not a properly formed limited liability company during the time at issue in this litigation.  As the Bankruptcy Court recognized, "at no time relevant to these proceeding was such an entity in existence."  Memorandum Opinion at 9. A limited liability company is properly formed "when the articles of organization become effective pursuant to Code Section 14-11-206" which is when they are filed by the Georgia Secretary of State.  Ga. Code Ann. § 14-11-203(c).  Furthermore, "the Secretary of State's filing of the articles of organization is conclusive proof that the organizers satisfied all conditions precedent to formation, except in a proceeding by the state to cancel or revoke the formation…." Ga. Code Ann. § 14-11-203(d).  The Defendants' failure to file the Articles of Organization of DeLong & Caldwell or a proper name change forms means that DeLong & Caldwell LLC was not properly formed so its principals are not entitled to the protections of a limited liability company.  Instead, Messrs. DeLong & Caldwell should be jointly and severally liable for the judgment to the Trustee.  Ga. Code Ann. § 14-2-204 ("All persons purporting to act as or on

-18-

behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting.").  That Mr. DeLong and Mr. Caldwell each thought that the other had properly formed DeLong & Caldwell as a limited liability company rather than a general partnership is not a defense to their joint and several liability.  *See Don Swann Sales Corp. v. Echols*, 160 Ga.App. 539, 287 S.E.2d 577 (Ga. App. 1981)(holding that principals of corporation that was not properly formed and registered with Secretary of State were individually liable even though "the parties *thought* the corporation had been registered with the Secretary of State.…This is not a case where the corporation purportedly existed under "color of law," but rather where no corporation existed at all.")(emphasis in original).  *See also Bonner v. Brunson*, 262 Ga.App. 521, 585 S.E.2d 917 (Ga. Ct. App. 2003)(holding that limited liability company form must be maintained and respected in order to benefit from the protections of that corporate form).  Consequently, the Bankruptcy Court erred in failing to find Earnest H. DeLong, Jr. and Michael Caldwell, the principals of DeLong & Caldwell LLC, liable for legal malpractice.

## **Damages**

35.    Finally, the Bankruptcy Court erred in failing to award the Trustee compensatory and direct damages for his legal malpractice claim in the amount of $476,233.67, the amount paid to Defendants by Terry Manufacturing for their legal services.  "A legal malpractice action may sound either in tort or in contract, depending on the circumstances." *Plumlee v. Davis*, 221 Ga.App. 848, 851, 473 S.E.2d 510, 513 (Ga. App. 1996).  However, when as in this case, the legal malpractice claim is based upon a breach of the duties imposed upon attorneys " to act with a certain degree of skill in performing their contractual duties to their clients," the action is one

based in tort. *Id.* at 852 (citing *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga.App. 411, 414, 306 S.E.2d 340 (1983), *aff'd*. 252 Ga. 149, 311 S.E.2d 818 (1984)).

36.    Compensatory and direct damages are the proper measure of damages in a tort action, such as legal malpractice.  "Direct damages are those which follow immediately upon the doing of a tortious act."  Ga. Code Ann. § 51-12-3(a).  According to Section 51-12-4 of the Georgia Code, "[d]amages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money."  Ga. Code Ann. § 51-12-4.  In the instant case, the measure of damages for the injury caused Terry Manufacturing by the Defendants' doing of the tortious act of malpractice is the amount of the fees paid to them for their negligent and unnecessary legal services.

37.    Furthermore, Georgia courts have held that an "attorney may lose his right to fees for unprofessional conduct or abandonment of his client's cause."  *W.W. Odom v. L.H. Hilton*, 124 S.E.2d 415 (Ga. App. 1962).  *See e.g.*, *Blecher & Collins, P.C. v. Northwest Airlines, Inc.*, 858 F.Supp. 1442 (C.D. Cal. 1994); *Avianca, Inc. v. Corriea*, 705 F.Supp. 666 (D.D.C. 1989) (both recognizing that appropriate measure of damages for a conflict of interest that prejudices a client is reimbursement of the fees paid by that client after the conflict arose).  As a result of Defendants' legal malpractice and unprofessional conduct, Terry Manufacturing and its creditors sustained damages in the amount equal to the amounts paid to the Defendants and the Trustee respectfully submits that he be awarded damages in the amount of $476,233.67.

38.    Because the Trustee established all elements of his legal malpractice claim against Earnest H. DeLong, Jr. and DeLong & Caldwell, L.L.C., the Trustee respectfully submits that the District Court reject the legal conclusions submitted by the Bankruptcy Court in its Report and

Recommendation and enter a final judgment in favor of the Trustee and against Earnest H.

DeLong, Jr. and DeLong & Caldwell, L.L.C.

Respectfully submitted this 8th day of June, 2007.

Respectfully submitted,

By:    /s/    Brent B. Barriere
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       Catherine E. Lasky (La. Bar No. 28652)
       **PHELPS DUNBAR LLP**
       Canal Place
       365 Canal Street • Suite 2000
       New Orleans, Louisiana  70130-6534
       Telephone:  (504) 566-1311
       Facsimile:  (504) 568-9130

       **ATTORNEYS FOR  J. LESTER ALEXANDER,
       III, TRUSTEE OF TERRY
       MANUFACTURING COMPANY, INC. AND
       TERRY UNIFORM COMPANY, LLC**

-21-

NO.99788088.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 8th day of June, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Earnest H. DeLong, Jr. and Charles Bridgers.  I further certify that I sent a copy of the foregoing by U.S. Mail, postage prepaid to:

Jerry A. Buchanan
Post Office Box 2848
Columbus, GA 31902

      /s/ Catherine E. Lasky

NO.99788088.1

Beltran - Direct                           309

1    able to represent one client with absolute, undivided loyalty.

2    So if you are trying to represent two people and one has a

3    defense and one doesn't, you can't provide independent,

4    professional judgment to the one with that defense.

5    Q.       Ethical consideration 5-14:

6             "Maintaining the independence of professional judgment

7             required of a lawyer precludes his acceptance or

8             continuation of employment that will adversely affect

9             his judgment on behalf of or dilute his loyalty to a

10            client. This problem arises whenever a lawyer is asked

11            to represent two or more clients who may have

12            differing interests, whether such interests be

13            conflicting, inconsistent, diverse, or otherwise

14            discordant."

15            Obviously this EC directly addresses the conflict

16   situation; does it not?

17   A.       It does and it further identifies a division of

18   loyalty if you have differing interests, and it goes further

19   and tells you what those differing interests mean, and it is a

20   very low threshold – conflicting, inconsistent, diverse or

21   otherwise discordant – but the very low threshold that's been

22   addressed by the Georgia Supreme Court in these type cases.

23   Q.       As a general proposition, sir, what is the standard of

24   care for an attorney practicing in the state of Georgia?

25   A.       The standard of care, and I set forth this in my



EXHIBIT

A

Beltran - Direct                                        310

1    expert report, a lawyer's duty is to use such skill, prudence

2    and diligence as lawyers of ordinary skill capacity commonly

3    possess and exercise in the performance of the tasks which they

4    undertake.

5         Then our Supreme Court went further and said the

6    standard of care in general is that level of competency of the

7    legal profession in Georgia and the related standards of the

8    state bar of Georgia, and it is that care, practiced on a

9    day-to-day basis, in general, throughout the state of Georgia.

10   Q.    All right.    What implications do the ethical

11   considerations have with respect to the standard of care of an

12   attorney insofar as his ethical obligations are concerned and

13   insofar as his duties to his client with respect to loyalties

14   and the other issues you have mentioned?

15   A.    Well, a lawyer must abide by the ethical

16   considerations in representing a client.

17   Q.    In your judgment, is a breach of the ethical

18   considerations likewise a breach of the standard of care

19   applicable to attorneys in the state of Georgia?

20   A.    It is and, in fact, in the *Lefkoff v. Duncan* case, the

21   court said standing alone by itself, if you just cite the

22   ethical rule, that won't provide the deviation, but that, along

23   with expert testimony, is the standard of care and can be

24   brought into evidence for the trier of fact to determine what

25   the standard was, if that ethical consideration addresses the

Beltran - Direct                          324

1    entity to represent him in an individual capacity.  In

2    such case, the lawyer may serve the individual only if

3    the lawyer is convinced that differing interests are

4    not present."

5        Can the lawyer's judgment be overridden by the

6    corporation and the officer?  If the corporation or the

7    officers say, in effect -- or if the officer says, "We don't

8    want to pay multiple lawyers, so we want you to represent us

9    both," can the lawyer accept that judgment notwithstanding

10   concerns that there may be differing interests?

11   A.     If there are differing interests, the lawyer cannot

12   accept the multiple representation of the entity and the

13   individual.

14   Q.     The Georgia Rules of Professional Conduct, after

15   January 1, 2001, we will get to those in a moment.  I want to

16   focus now, if I may, on your methodology in reaching your

17   opinions in this case.  What did you review in order to form

18   your opinions?

19   A.     I received from you pleadings and deposition testimony

20   and deposition exhibits, which I have reviewed, and I have also

21   reviewed the Georgia rules, both prior to January 1, 2001, and

22   after January 1, 2001; the formal advisory opinions of our

23   Supreme Court; and case law that touches upon these issues.

24   Q.     All right.  Have you reached an opinion as to whether

25   there was a conflict between the interests of Rudolph Terry and

EXHIBIT
B

Beltran - Direct                          325

1    Terry Manufacturing at the time of the initial engagement?

2    A.      At the time of the initial engagement, there was an

3    actual conflict between Mr. Rudolph Terry and Terry

4    Manufacturing.

5    Q.      And why is that?

6    A.      Well, because of the testimony yesterday where Mr.

7    Rudolph had obtained -- he had these fraudulent invoices where

8    he had received no product, was paying for certain product or

9    paying for product not received, and people refer to them as

10   fake invoices or invoices of interest, or whatever they were.

11   But he was doing things that the corporation received no

12   benefit or had no knowledge of.

13   Q.      All right.  Now, Mr. DeLong, of course, has testified

14   that he wasn't aware of that.  Just a garden-variety collection

15   suit.

16   A.      Yeah, he said when he was first hired, he was not

17   aware of it.  I don't know if he was aware of it or not, but

18   the issue is was he aware of it and should he have been aware

19   of it, and I think the court can decide that after it hears all

20   of the evidence.

21   Q.      Are you aware, based upon your review of the record

22   prior to coming to court, or what you heard yesterday, whether

23   there were differing interests, objectively ascertainable

24   differing interests at the time of the initial engagement?

25   A.      Based upon what I've heard, I am not sure, but a

Beltran - Direct                                335

1    law, to your knowledge?

2    A.       First of all, he would have to use his own letterhead;

3    but if he is in the same office, says "of counsel," as soon as

4    a client comes in, anyone in that office, whether they are a

5    group of sole practitioners practicing under the umbrella of a

6    firm, they must do a conflicts check because the court has

7    said, as far as the lay person is concerned, when a lay person

8    walks into a firm or sees the firm name, they can assume the

9    firm is representing them; and even "of counsel" is the same

10   issue.  You can be "of counsel" to a firm and the firm can be

11   liable.  They must do the same conflicts check as if it was a

12   true firm of all partners.

13   Q.       Mr. Beltran, have you reached a conclusion as to

14   whether Earnest W. DeLong breached the duty of care applicable

15   to attorneys in Georgia in his handling of the Commercial

16   Factors litigation?

17   A.       Yes, sir, I have.

18   Q.       And what is that opinion?

19   A.       My opinion is that he breached and deviated from the

20   standard of care in Georgia at the time.

21   Q.       And could you be specific in what manner he did so?

22   A.       In the manner of – in accepting the multiple

23   representation of Terry Manufacturing and Rudolph Terry at a

24   time when there were differing interests and his continuation

25   of this representation, this multiple representation.

Beltran - Direct                                326

1    lawyer, again, must probe.  When someone comes to him, the

2    lawyer must probe and find the basis for the allegations and

3    say where is the documentation, this sort of thing.  And then

4    if the client can't answer the questions or gives answers that

5    troubles the lawyer, or can't produce certain documentation,

6    then the lawyer might be on notice.

7         But based upon Mr. Terry just coming to that initial

8    meeting, I can't say whether Mr. DeLong knew there were

9    differing interests at that exact time, but the record is clear

10   that there was shortly thereafter.

11   Q.      Now, in your judgment at the time of the initial

12   engagement, could there be an effective waiver between Rudolph

13   Terry, on the one hand, and the company, on the other, of

14   multiple representation?

15   A.      At that time, there could have been but, again, the

16   lawyer is under a continuing duty and, once these differing

17   interests come into existence, then the lawyer has a duty to,

18   you know, go and talk to the different clients, provide them

19   the disclosures we have already talked about and then make a

20   decision as to whether he, with their consent, he can continue

21   to represent them or, even if they consented, he can no longer

22   represent them, or whether he can only represent one, or

23   whether he has to withdraw from representation of either.

24   Q.      We will hear from him tomorrow but my appreciation,

25   hearing Dr. Ross' testimony in his deposition, was that,



EXHIBIT
C

Beltran - Direct                                    327

1    provided they have got adequate information, two clients can

2    waive any conflict.   Is that consistent with the law of the

3    state of Georgia?

4    A.      That's absolutely incorrect.   The Supreme Court in

5    formal   advisory   opinions   and   in   cases   have   said,

6    notwithstanding that the clients consented, we are not going to

7    allow this representation to go forward.   So, you know, there

8    are many times -- and the rules themselves provides when

9    conduct -- where representation can be consented to and where

10   it can't be consented to.   So there are many times where

11   individuals want to consent, and do consent, and under Georgia

12   they can't consent as a matter of law.

13   Q.      Now based upon the depositions you read, the testimony

14   you heard yesterday, do you believe there came a time when it

15   was   objectively   ascertainable   that   there   were   differing

16   interests between the company, Terry Manufacturing, and Rudolph

17   Terry?

18   A.      I have, yes.

19   Q.      And what is your opinion in that regard?

20   A.      The opinion would be that sometime between March of

21   2000, the end of March of 2000, the middle to the end of March

22   of 2000 and early summer of 2000, there is no question that the

23   lawyer knew or should have known that there were severe

24   differing interests between Mr. Rudolph Terry and Terry

25   Manufacturing.

Beltran - Direct                                     328

Q.      And what did you, based upon your analysis, perceive
to be those differing interests?

A.      Well, the first was there was the testimony in March
by Mr. Rudolph Terry where he had trouble identifying records
and documents.  And then there is a letter – then Mr. DeLong
testified there was conversation with the Smith-Gambrell
lawyers where they were suggesting that something wasn't right,
and he said in his mind spikes went up and I had a question
right there.  Then they sent a letter to him and they said we
are going to add a claim against Mr. Rudolph Terry, and then
you had testimony of Mr. Pouncey.  I think he testified in May
and he testified in June, and during that time it was clear
that the lawyer knew, or should have known, that there were no
invoices for this claim for three point whatever thousand
dollars, or the two point one they wanted to settle for.

Q.      Do you have an opinion as to whether Mr. DeLong,
DeLong and Caldwell, were compelled to withdraw from the
representation of one or both, Rudolph Terry and the company,
at that time?

A.      Well, at that time they were representing -- they
initially, according to their testimony, they initially
represented the company and they continued to represent the
company.  When Mr. Rudolph Terry sought advice from them, legal
advice, at that time they had to tell him we cannot represent
you, we cannot represent you.   We can only represent the

Beltran - Direct                              329

1    entity.  You need to go and get another lawyer.  Even if you

2    consent, even if it is cheaper, we cannot represent you.

3          And, of course, he had two choices.  He could go and

4    get another lawyer or he can try to get another lawyer for the

5    corporation, but Mr. DeLong could not represent both of them at

6    that time.

7    Q.      All right.  Mr. Beltran, let me ask you, I have heard

8    it said if a lawyer had a conflict in a malpractice context, it

9    is not the end of the inquiry, there has to be some injury,

10   some resulting damage.  Is that true?

11   A.      Yes.  What the Georgia cases have said in the *Peters*

12   *v. Hyatt Legal Services* case and Read *v. Benedict*, that if

13   there is a conflict of interest between the lawyer and a

14   client, then the law is going to presume nominal damages, let

15   the trier of fact determine whether punitive damages are

16   applicable because there is harm -- the court imputes harm

17   because the relationship is thereafter tainted, and also allows

18   for disgorgement of the fees that were earned by the lawyer if

19   the conflict begins and continues.

20   Q.      Do you believe there came a time when there was an

21   actual and direct conflict of interest between the interests of

22   the company and Rudolph Terry; do you have an opinion?

23   A.      I believe an actual conflict of interest developed in

24   the summer to the fall of 2000, yes, sir.

25   Q.      Did that continue through the balance of the

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | *2:07 cv585 - F* |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO.  04-03135 |
| VERSUS | ) | |
| | ) | |
| DELONG, CALDWELL, NOVOTNY, | ) | |
| & BRIDGERS, L.L.C. , DELONG | ) | |
| CALDWELL LOGUE & WISEBRAM, | ) | |
| DELONG & CALDWELL, L.L.C. | ) | |
| AND EARNEST H. DELONG, JR. | ) | |

REQUEST FOR ORAL ARGUMENT ON TRUSTEE'S OBJECTION TO
BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW
PURSUANT TO 28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033

   NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the

duly appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company,

NO.99789299.1

Inc. and Terry Uniform Company, LLC, who respectfully requests that the District Court conduct an oral argument on the Trustee's Objection to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033 ("Objection") in the above-captioned proceeding. The Trustee submits that oral argument will better enable the Trustee to address the issues contained in his Objection, and the Trustee respectfully submits that oral argument will assist the District Court in deciding the issues raised by his Objection.

Respectfully submitted this 8th day of June, 2007.

Respectfully submitted,

By:    /s/    Brent B. Barriere
Brent B. Barriere, T.A.  (La. Bar No. 2818)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR  J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

-2-

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 8th day of June, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Earnest H. DeLong, Jr. and Charles Bridgers.  I further certify that I sent a copy of the foregoing by U.S. Mail, postage prepaid to:

Jerry A. Buchanan
Post Office Box 2848
Columbus, GA 31902

                                             ___/s/ Catherine E. Lasky_____

NO.99789299.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| AND TERRY UNIFORM | ) | |
| COMPANY, LLC | ) | ADVERSARY PROCEEDING |
| | ) | NO.  04-03135 |
| VERSUS | ) | |
| | ) | |
| DELONG, CALDWELL, NOVOTNY, | ) | |
| & BRIDGERS, L.L.C. , DELONG | ) | |
| CALDWELL LOGUE & WISEBRAM, | ) | |
| DELONG & CALDWELL, L.L.C. | ) | |
| AND EARNEST H. DELONG, JR. | ) | |

TRUSTEE'S OBJECTION TO BANKRUPTCY COURT'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
PURSUANT TO 28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the

duly appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company,

Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC, ("Terry Uniform"), who

NO.99788088.1

respectfully submits the following objections to the Proposed Findings of Fact and Conclusions

of Law Submitted by Bankruptcy Judge William R. Sawyer to the District Court ("Proposed

Findings") in the above-captioned adversary proceeding.

### Introduction

1.      The Trustee does not object to any of the findings of fact made by the Bankruptcy

Court in its Proposed Findings.[1]  The Trustee does object to the Bankruptcy Court's proposed

conclusions of law as they are contrary to the settled law of legal malpractice and obligations of

attorneys in the state of Georgia.  The essential question presented by this case is whether an

attorney can avoid the consequences of his failure to exercise ordinary care, skill and diligence,

and specifically breach of his duties of care and loyalty, by simply obtaining a verbal waiver

from interested parties.  The Trustee submits that the duties imposed upon attorneys as officers

of the court and the attorneys' legal duties to their clients mandate that immunity for such

breaches must be denied.

### Procedural History

2.      The Trustee filed an adversary proceeding in the Bankruptcy Court seeking to

recover the sum of $476,233.67 paid to Earnest H. DeLong, Jr. and DeLong & Caldwell, LLC

(collectively "Defendants") by Terry Manufacturing.  That sum represents the total of payments

by Terry Manufacturing in satisfaction of statements for legal services purportedly rendered to

Terry Manufacturing and Rudolph Terry in litigation styled *Commercial Factors of Atlanta, Inc.*

---

1       As discussed in paragraph 34 below, the Trustee specifically objects to the Bankruptcy Court's conclusion
limiting liability to Mr. DeLong.  The Trustee understands the Bankruptcy Court's decision on the issue to be a
conclusion of law rather than a factual finding.  The Trustee does object to the extent that conclusion is deemed to
be a factual finding.

*v. Terry Manufacturing Company, Inc., Floodgates, Ltd. and John L. Pouncey*, 99-A-10650-5 in

the Superior Court of Gwinnett County, State of Georgia (the "Commercial Factors Litigation").

       3.     The Trustee sought recovery based upon two theories. The first was an avoidance

action under the Bankruptcy Code and Alabama and Georgia fraudulent transfer statutes. The

Bankruptcy Court entered a final judgment on that claim in favor of the Trustee and against Mr.

DeLong and awarded as damages all amounts paid by Terry Manufacturing. The second theory

was that the Defendants committed legal malpractice as defined under Georgia law and breached

the legal duties of care and loyalty owed to Terry Manufacturing by (i) simultaneous

representation of Terry Manufacturing and Rudolph Terry when their interests were in direct

conflict; and (ii) sacrificing the interests of Terry Manufacturing to those of Rudolph Terry. On

the legal malpractice claim, the Trustee sought damages in the amount equal to that paid to the

Defendants by Terry Manufacturing. Because the legal malpractice claim was not a core

proceeding and consent of the parties was not obtained for entry of a final judgment, the

Bankruptcy Court could only submit proposed findings of fact and conclusions of law subject to

review by the District Court pursuant to 28 U.S.C. § 157(c)(1).

### Standard of Review

       4.     Section 157(c)(1) provides that in a non-core proceeding, the bankruptcy court

"shall submit proposed findings of fact and conclusions of law to the district court, and any final

order or judgment shall be entered by the district judge after considering the bankruptcy judge's

proposed findings and conclusions and after reviewing de novo those matters to which any party

has timely and specifically objected." 28 U.S.C. § 157(c)(1).

-3-

NO.99788088.1

5.      Rule 9033 of the Bankruptcy Rules further provides that the "district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  The Eleventh Circuit has held that de novo review requires a district court to take a "fresh, independent analysis" of the proposed findings and conclusions submitted by the bankruptcy court.  *In re Toledo*, 170 F.3d 1340, 1350 n.12 (11th Cir. 1999).  As such, there is no deference given to the bankruptcy court to matters to which a party "has timely and specifically objected."  *Id*. at 1350.

6.      The Trustee does not object to the findings of fact submitted by the Bankruptcy Court in its Proposed Findings.[2]  Instead, the Trustee files these objections to the Bankruptcy Court's Conclusions of Law.  The Trustee objects to the Bankruptcy Court's misinterpretation of the language and rule of *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 453 S.E.2d 719, 720 (Ga. 1995) that "[t]he Georgia Code of Professional Responsibility 'do[es] not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law in Georgia."  Proposed Findings at 3.  The Trustee further objects to the Bankruptcy Court's proposed conclusion that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" and that the Trustee's "failure to establish such a breach is fatal to the malpractice claim."  *Id*.  Finally, the Trustee objects to the conclusion that the Defendants were

---

[2]      As noted, in its Memorandum Decision, the Bankruptcy Court concluded that only Mr. DeLong is liable for repayment of the fees under a fraudulent transfer theory.  As the Trustee understands that this was a legal, rather than a factual conclusion, and has not been incorporated in the Proposed Findings of Fact and Conclusions of Law. The Trustee does object to the extent the conclusion may be deemed a factual finding.

-4-

insulated from their breaches of their duty of care and duty of loyalty because they received an oral waiver from interested officers and shareholders. The District Court must examine those conclusions de novo.

### Georgia Law on Legal Malpractice

7.    As stated in the Proposed Findings, in order to prevail on a legal malpractice claim asserted under Georgia law, a "plaintiff must establish three elements: '(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff.'" *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 453 S.E.2d 719, 720 (Ga. 1995).

8.    Applying a "fresh, independent analysis" to the factual findings made by the Bankruptcy Court in its Proposed Findings as well as the incorporated Memorandum Opinion, clearly supports a finding of legal malpractice in favor of the Trustee and against the Defendants. The Trustee specifically objects to the Bankruptcy Court's misinterpretation of the language and rule of *Allen* by holding that "[t]he Georgia Code of Professional Responsibility 'do[es] not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law in Georgia." Proposed Findings at 3. In fact, the *Allen* court held the contrary. The Trustee further objects to the Bankruptcy Court's proposed conclusion that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" and that the Trustee's "failure to establish such a breach is fatal to the malpractice claim." *Id*. Finally, the Trustee objects to the Bankruptcy Court's proposed conclusion that an attorney who breaches his duty of care and loyalty to one client and sacrifices that client's interests to those of another client, may escape liability if he has received an oral waiver from interested parties.

-5-

NO.99788088.1

### The *Allen* Standard:  Element One

9.      The first element required by the Georgia Supreme Court in *Allen* is satisfied as

the Bankruptcy Court found that Terry Manufacturing employed the Defendants as attorneys.

*See* Memorandum Decision at 5 ("Rudolph Terry retained Defendant Earnest DeLong, an

Atlanta lawyer, to represent Terry Manufacturing..."); Memorandum Decision at 8 ("It is

undisputed that the bills were sent under the letter head of 'DeLong & Caldwell, LLC.'");

Memorandum Decision at 9 ("All of the billing and correspondence for DeLong's services for

Rudolph Terry was done under the name 'DeLong & Caldwell, LLC,' on bills issued to Terry

Manufacturing.").

### The *Allen* Standard:  Element Two
### Failure to Exercise "Ordinary Care, Skill and Diligence"

10.      The Bankruptcy Court erred in concluding that the Trustee did not establish the

Defendants' failure to exercise "ordinary care, skill and diligence." The Memorandum Decision

entered by the Bankruptcy Court is replete with findings related to the failure of the Defendants

to "exercise ordinary care, skill and diligence" in their representation of Terry Manufacturing.

Those findings include:

-       The Defendants filed an Answer and Counterclaim on behalf of Terry

Manufacturing that admitted that Terry Manufacturing owed $2.1 million to Commercial Factors

"when in fact it [Terry Manufacturing] had never received the first tee shirt, and for that reason

owed nothing." (Memorandum Opinion at 5).

-       The Defendants' fees were grossly excessive in light of the fact that "Terry

Manufacturing never received the first tee shirt" which "could have been easily established with

NO.99788088.1

a modest amount of effort....there is no valid reason for the defense to have taken such a massive effort." (Memorandum Opinion at 14).

-    The Defendants' efforts "to thwart Commercial Factors' discovery" were designed "to conceal the criminal activities of Rudolph and Roy Terry and not to defend Terry Manufacturing." (Memorandum Opinion at 14-15).

-    The Defendants failed to maintain their duty of loyalty to Terry Manufacturing in the Commercial Factors litigation raising "inconsistent defenses...on behalf of Terry Manufacturing and Rudolph Terry...Terry Manufacturing paid DeLong nearly half a million dollars to effectively eviscerate its litigation position." (Memorandum Opinion at 18).

11.    Defendants extracted "astonishing" fees from Terry Manufacturing in order to defend Rudolph Terry and knew or should have known that they sacrificed Terry Manufacturing's interests in order to protect Rudolph:

> The sheer magnitude of the attorney's fees here is astonishing. Terry Manufacturing never received the first tee shirt. This fact could have been easily established with a modest amount of effort. However, this fact could not be proven without also establishing that Rudolph Terry had lied to Commercial Factors about the Floodgates invoices. Thus, the thrust of DeLong's efforts was not to defend Terry Manufacturing in the Commercial Factors civil action. Rather, it was to shield Rudolph Terry from criminal liability, using Terry Manufacturing to fund the effort and refusing to produce Terry Manufacturing documents which would have gotten it off the hook.... (Memorandum Opinion at 14).

12.    The Bankruptcy Court also specifically rejected the Defendants' assertions that they used a "high degree of skill" in their representation of Terry Manufacturing.  In rejecting that argument the Court held that "[t]he problem is that virtually all of DeLong's efforts were

NO.99788088.1

directed at protecting Rudolph Terry from criminal prosecution, often to the detriment of Terry Manufacturing." Memorandum Opinion at 15.

13.     None of the massive effort expended by the Defendants was done "to benefit Terry Manufacturing....**Indeed, these efforts were highly prejudicial to Terry Manufacturing**." Memorandum Opinion at 16 (emphasis added). Clearly, the factual findings made by the Bankruptcy Court establish actions and inactions by Defendants in their representation of Terry Manufacturing that were far below the level of "ordinary care, skill and diligence" required for lawyers practicing in the State of Georgia.

14.     Defendants knew or should have know that they sacrificed the interests of Terry Manufacturing to Rudolph Terry, and in so doing breached their duties of care and loyalty owed to Terry Manufacturing:

> ...DeLong ignores the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic. Terry Manufacturing's defense- no tee shirts- necessarily implies Rudolph Terry's fraud, as he had falsely certified the existence of the nonexistent tee shirts. Rather than defending Terry Manufacturing, DeLong placed Terry Manufacturing squarely between Commercial Factors and Rudolph Terry. That is, DeLong was defending Rudoph Terry at the expense of Terry Manufacturing. (Memorandum Opinion at 16).

15.     The Georgia Court of Appeals refused to grant summary judgment on a malpractice claim based upon a conflict of interest and held that a jury issue existed as to whether the defendant attorney was liable for malpractice in light of an affidavit submitted by the plaintiff's expert. *Traub*, 591 S.E.2d at 386. In the *Traub* case, the attorney claimed that he was entitled to summary judgment on the legal malpractice claim against him because the malpractice claim was "based solely on a breach of ethical duties, not on any act of negligence."

-8-

*Id.* at 385.  The appellate court rejected this argument because the plaintiff had engaged an expert who "did not merely opine that Washington [the attorney] violated a professional ethical standard.  To the contrary, the affidavit shows that the expert set forth the conduct on Washington's part that allegedly constituted professional malpractice- including continuing to represent Connor after conflicts arose and taking action adverse to Traub to gain an advantage for Connor." *Id.*

16.    Similarly, Frank J. Beltran was tendered by the Trustee and accepted by the Bankruptcy Court as an expert as to the ethical obligations applied to attorneys practicing in the state of Georgia; the standard of care applicable to attorneys practicing in the state of Georgia and what conduct by the Defendants constituted a breach thereof.    Mr. Beltran is admitted to practice law in the State of Georgia and has testified as an expert in both state and federal courts in Georgia.  Mr. Beltran testified that the standard of care for an attorney practicing in the State of Georgia is to "use such skill, prudence and diligence as lawyers of ordinary skill [and] capacity commonly possess and exercise in the performance of the tasks which they undertake." Trial Transcript at 309:25-310:4, relevant portions are attached hereto as Exhibit "A."

17.    Mr. Beltran also testified as to his opinions with respect to the conduct of the Defendants in this case.  Based upon his review of the pleadings in this case; the deposition testimony of Mr. DeLong and the exhibits thereto; the trial testimony of Mr. DeLong; the Georgia ethical rules, both prior to January 1, 2001, and after January 1, 2001; the formal advisory opinions of the Georgia Supreme Court; and relevant case law, his opinion was that at the time of the initial engagement, there was an actual conflict between Rudolph Terry and Terry Manufacturing and that the interests of Terry Manufacturing and Rudolph Terry were so

-9-

fundamentally at odds that the conflict of interest between them could not be waived by the clients. Trial Transcript at 324:14-325:12, 335:13-25, relevant portions are attached hereto as Exhibit "B." The lawyer, as an officer of the Court, has a duty to pursue zealously the best interests of all of his clients and to adhere to his ethical and professional duties- sometimes even in spite of his clients' wishes. Therefore, even if an alleged oral waiver by Roy and Rudolph Terry of the conflict between Terry Manufacturing and Rudolph Terry did in fact occur, the Defendants could not proceed with the joint representation. Trial Transcript at 326:15-329:6, relevant portions are attached hereto as Exhibit "C." Just as in the *Traub* case, the Trustee and his expert did not solely rely on ethical standards to establish the standard of care of the breach thereof.

### Duty of Loyalty

18.    An attorney's duty of loyalty is of the utmost importance and cannot be waived. Georgia courts mandate that a lawyer must "always act in a manner consistent with the best interests of his client. It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client- undiluted by conflicting or contrarian obligations, and undiminished by interests to himself or of others." *Paul v. Smith, Gambrell & Russell*, 267 Ga.App. 107, 110; 599 S.E.2d 206, 209 (Ga. App. 2004)(internal citations omitted). Furthermore, a "lawyer cannot pursue any interest or take any act adverse to his client's interests or incompatible with applying his best skill, zeal, and diligence in representing that client." Rhone v. Bolden, 270 Ga.App. 712, 717, 608 S.E.2d 22, 29 (Ga. App. 2004) (citing *Tunsil v. Jackson*, 248 Ga.App. 496, 499(2), 546 S.E.2d 875 (2001); *Nelson & Hill, P.A. v. Wood*, 245 Ga.App. 60, 67(3), 537 S.E.2d 670 (2000)).

-10-

NO.99788088.1

19.    The findings of fact in the Bankruptcy Court's Memorandum Opinion clearly establish the Defendants' breach of their duty of loyalty to Terry Manufacturing. The Court found that the Defendants ignored "the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic....One cannot sit down and stand up at the same time. So it was with the inconsistent defenses raised by DeLong on behalf of Terry Manufacturing and Rudolph Terry in the Commercial Factors litigation. Terry Manufacturing paid DeLong nearly half a million dollars to effectively eviscerate its litigation position." Memorandum Opinion at 16, 18. The Defendants violated their duty of care to Terry Manufacturing and were negligent in proceeding with the simultaneous representation of Terry Manufacturing and Rudolph Terry because they could not simultaneously comply with their duty of loyalty to both clients even with a purported waiver from Roy and Rudolph Terry.

20.    The Georgia Canons of Ethics and the related ethical considerations and Directory Rules that were in effect at the time the Defendants began their representation of Terry Manufacturing and at the time the conflict between Terry Manufacturing and Rudolph Terry became apparent, further confirm the Bankruptcy Court's factual findings regarding the Defendants' breach of their duty of loyalty and support the Trustee's claim of legal malpractice.[3] Ethical Consideration 5-14 provides that "[m]aintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse or otherwise discordant." As

---

[3]    The Georgia Canon of Ethics, related ethical considerations and Directory Rules were in effect until January 1, 2001. The Defendants were engaged to represent Terry Manufacturing in January, 2000.

NO.99788088.1

discussed herein and in the Memorandum Opinion, the interests of Terry Manufacturing and Rudolph Terry were conflicting, inconsistent, diverse and discordant. And, Defendants greatly compounded the breach of their duties by sacrificing the interests of Terry Manufacturing to those of Rudolph Terry.

21.    Ethical Consideration 5-15 instructs attorneys that a lawyer "requested to undertake or to continue representation of multiple clients having potentially differing interests...must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. **He should resolve all doubts against the propriety of the representation.**" (emphasis added). The Defendants clearly failed to follow this mandate.

22.    Primary among the Bankruptcy Court's findings in the Memorandum Opinion is the Defendants' failure to comply with their duty of loyalty to Terry Manufacturing. The Defendants were negligent in proceeding with the simultaneous representation of Terry Manufacturing and Rudolph Terry because they could not simultaneously comply with their duty of loyalty to both clients even with a purported waiver from Roy and Rudolph Terry.

## Verbal Waiver of Conflict Does Not Absolve Defendants of their Duties to Terry Manufacturing

23.    Even if Roy and Rudolph Terry waived the conflict of interest between Terry Manufacturing and Rudolph Terry, Defendants are not absolved of their obligation to exercise "ordinary care, skill and diligence" in their representation of Terry Manufacturing. "The relationship between a lawyer and client is a special one of trust that entitles the client to the attorney's fidelity. This 'unique' relationship is 'founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the

-12-

NO.99788088.1

attorney.'" *Aflac, Inc. v. Williams*, 264 Ga. 351, 353, 444 S.E.2d 314, 316 (Ga. 1994).  As a result of this special relationship, a verbal waiver, such as the one purportedly given by the Terrys, cannot serve to eliminate the Defendants' continuing duties to Terry Manufacturing.

24.     Georgia courts have recognized that even the potential for conflicting interests between an attorney's clients mandates withdrawal by that attorney from the representation "even though he [the attorney] may have acted in good faith and with the consent of both clients." *First Nat'l Bank of Chattooga County v. Rapides Bank & Trust Co.*, 145 Ga.App. 514, 244 S.E.2d 51, 54 (Ga. Ct. App. 1978), *overruled on other grounds*.  "Where the fact that an attorney represents conflicting interests comes to the attention of the court before which a cause is pending, the court is required to prevent the attorney from continuing so to act.  The test in such cases is not the actuality of conflict, but the possibility that conflict may arise." *Id.* (quoting *Young v. Champion*, 142 Ga.App. 687, 689-90, 236 S.E.2d 783, 785 (Ga. App. 1977)(internal quotations omitted).

25.     This concern is particularly acute when, as in the instant case, the alleged conflict waiver is given on behalf of a corporation by the shareholders or directors involved in the misconduct sought to be concealed through the Defendants' representation.  Memorandum Opinion at 3 at 15, n.5.  A waiver of a conflict on behalf of a corporation by shareholders in cases where "the only shareholders of the corporation are also the directors involved in the controversy...would render rule 3-600 [California Rule of Professional Conduct requiring informed consent for waiver of conflicts of interest] meaningless." *Forrest v. Baeza*, 58 Cal.App.4th 65, 76; 67 Cal.Rptr.2d 857, 864 (Cal.App. 1 Dist. 1997).

-13-

NO.99788088.1

26.     The facts of the *Forrest* case are remarkably similar to the instant case.  In that case, the attorney was representing two of a corporation's three shareholders as well as the corporation those shareholders were accused of embezzling from.  *Id.* at 74.  The shareholder defendants argued that any conflict was waived on behalf of the corporation by a majority of the corporation's shareholders, namely the two shareholder defendants.  *Id.* at 76.  The Court rejected this argument and focused on the separate existence of the corporate entity and held that "'an inanimate corporate entity, which is run by directors who are themselves defendants in the derivative litigation, cannot effectively waive a conflict of interest as might an individual.'"  *Id.* at 77 (quoting *In re Oracle Securities Litigation*, 829 F.Supp. 1176, 1189 (N.D.Cal. 1993)). Although the Commercial Factors litigation was not a shareholders derivative suit as in *Forrest*, the interests of Rudolph Terry and Terry Manufacturing were clearly antagonistic and the same concerns apply as the "'primary value at stake in cases of simultaneous or dual representation is the attorney's duty- and the client's legitimate expectation- of *loyalty*, rather than confidentiality."  *Id.* at 74 (quoting *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (Cal.App. 4 Dist. 1994)(italics in original)).

27.     The Georgia ethical rules support the ineffectiveness of the Terrys' verbal waiver. The Defendants, once retained by Terry Manufacturing, owed "allegiance to the entity and not to the stockholder, director, officer, employee, representative, or other person connected with the entity.  In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization." Ethical Consideration 5-18.  This ethical consideration recognizes that the interests of a corporation and its constituents or control persons are not always the same.  It required the

-14-

NO.99788088.1

Defendants to put the interests of Terry Manufacturing over those of Rudolph Terry, which they failed to do.

28.     Each of the Georgia decisions concerned attorneys who were of the good faith belief they could adequately represent the interests of both clients. That is not the case here. The Bankruptcy Court has repeatedly noted that Defendants knowingly favored Rudolph at the expense of Terry Manufacturing. Indeed, "...DeLong was defending Rudolph Terry at the expense of Terry Manufacturing." Memorandum Opinion at 16.

### The Bankruptcy Court's Erroneous Interpretation of
### *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*,

29.     The Bankruptcy Court did not err in concluding that the Georgia Code of Professional Responsibility **alone** does not define the "'care and skill' ordinarily exercised by attorneys practicing law in Georgia." *Allen*, 453 S.E.2d at 721. However, the Trustee respectfully submits that the language drawn from *Allen* by the Bankruptcy Court on page 3 of the Proposed Findings was misquoted and inconsistent with the Georgia Supreme Court holding. Further, the Trustee submits that the Bankruptcy Court erred by holding that the "Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical duty" such that the Court's finding that a waiver was obtained is fatal to the malpractice claim. Proposed Findings at 3. As shown in the evidence submitted by the Trustee at trial and the factual findings in the Bankruptcy Court's Memorandum Opinion, the Trustee definitively established actions by the Defendants sufficient to establish their failure to exercise ordinary care, skill and diligence required for attorneys in Georgia.

30.     The Bankruptcy Court selected a portion of a quote from the *Allen* decision to address the role of Bar Rules and the Georgia Code of Professional Conduct in legal malpractice

-15-

cases. The Court, however, erred in failing to include the entire quote from *Allen*, which in fact

underscores the importance of Bar Rules and the Code of Professional Responsibility to a legal

malpractice claim. The sentence in its entirety reads:

> Given the potential consequences of their [Code of Professional
> Responsibility and Bar Rules] violation and the fundamental nature
> of their purpose, it would not be logical or reasonable to say that
> the Bar Rules, in general, do not play a role in shaping the 'care
> and skill' ordinarily exercised by attorneys practicing law in
> Georgia.

*Allen*, 453 S.E.2d at 721.

31.    Instead of holding, as the Bankruptcy Court found, that such Rules are not

applicable, *Allen* instead holds that "while a Bar Rule is not determinative of the standard of care

applicable in a legal malpractice action, it may be 'a circumstance that can be considered, along

with other facts and circumstances.'" *Id*. at 722 (quoting *Krischbaum v. Dillon*, 58 Ohio St.3d

58, 567 N.E.2d 1291 (Ohio 1991)). The Supreme Court then remanded the *Allen* case to the

Court of Appeals to determine if the "standard of care" was in fact violated by the defendant

attorney. *See also*, *Traub v. Washington*, 264 Ga.App. 541, 591 S.E.2d 382 (Ga. Ct. App.

2003)(holding that "[a]lthough the violation of a professional ethical standard, standing alone,

cannot serve as a basis for a legal malpractice action, state bar rules are relevant to the standard

of care in a legal malpractice action."). Similarly, the Trustee offered the Georgia ethical

standards as relevant to, but not dispositive of, the standard of care violated by the Defendants.

In addition to the Georgia ethical standards, the standard of care was established by the Trustee

through the testimony of its expert witness, Frank Beltran, as well as relevant case law. Finally,

the actions and inactions of the Defendants as proved by the Trustee at trial, and recognized by

-16-

the Bankruptcy Court in its Memorandum Opinion, clearly establish that the Defendants failed to meet the standard of care.

32.     Applying the applicable Ethical Considerations, Directory Rules, caselaw and expert testimony to the factual findings made by the Bankruptcy Court in its Memorandum Opinion, it is clear that the Defendants breached the standard of care by representing both Terry Manufacturing and Rudolph Terry despite any waiver of the conflict of interest between the two parties.  With or without a waiver, a client who engages counsel has a reasonable expectation that the attorney will advocate for and act in that client's best interest.  Even though the Bankruptcy Court found that the conflict of interest between Terry Manufacturing and Rudolph Terry was waived, such a waiver does not permit counsel to act to the **detriment** of one of his clients.  Terry Manufacturing was a corporation, a juridical entity, with an existence separate and apart from Rudolph or Roy Terry.  As such, it was a separate client with interests that were in fact divergent from those of Rudolph and Roy Terry.  The Defendants' failure to treat Terry Manufacturing as a separate client and their resulting failure to represent Terry Manufacturing with "ordinary care, skill and diligence" merits a finding of legal malpractice in favor of the Trustee and against the Defendants.

### The *Allen* Standard:  Element Three

33.     The Bankruptcy Court's Memorandum Opinion clearly establishes that the Defendants' negligent conduct was the proximate cause of the damage to Terry Manufacturing. Specifically, because the Defendants breached their duties of loyalty and care to Terry Manufacturing, Terry Manufacturing incurred nearly half a million dollars of needless litigation costs; remained embroiled in litigation in which it had a complete and straightforward defense;

-17-

and was harmed by the successful efforts of the Defendants to conceal the massive fraud perpetrated by the Terry brothers. *See* Memorandum Opinion at 5-6, 14, at 15, n. 5.

## **Proper Defendants**

34.    It would also be error to find only Earnest DeLong individually liable for the legal malpractice as was the case with respect to the Trustee's fraudulent conveyance claim. All of the statements paid by Terry Manufacturing were issued by DeLong & Caldwell, and the pleadings in the Commercial Factors litigation were filed under the name of DeLong & Caldwell. *See e.g.*, Plaintiff's Trial Exhibits 13, 32, 35, 41, 42, 64, 68, 69, 94-97 and Memorandum Opinion at 8. Michael Caldwell, the other member of DeLong & Caldwell LLC, is equally liable for the legal malpractice claims because DeLong & Caldwell was not a properly formed limited liability company during the time at issue in this litigation. As the Bankruptcy Court recognized, "at no time relevant to these proceeding was such an entity in existence." Memorandum Opinion at 9. A limited liability company is properly formed "when the articles of organization become effective pursuant to Code Section 14-11-206" which is when they are filed by the Georgia Secretary of State. Ga. Code Ann. § 14-11-203(c). Furthermore, "the Secretary of State's filing of the articles of organization is conclusive proof that the organizers satisfied all conditions precedent to formation, except in a proceeding by the state to cancel or revoke the formation...." Ga. Code Ann. § 14-11-203(d). The Defendants' failure to file the Articles of Organization of DeLong & Caldwell or a proper name change forms means that DeLong & Caldwell LLC was not properly formed so its principals are not entitled to the protections of a limited liability company. Instead, Messrs. DeLong & Caldwell should be jointly and severally liable for the judgment to the Trustee. Ga. Code Ann. § 14-2-204 ("All persons purporting to act as or on

-18-

behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting."). That Mr. DeLong and Mr. Caldwell each thought that the other had properly formed DeLong & Caldwell as a limited liability company rather than a general partnership is not a defense to their joint and several liability. *See Don Swann Sales Corp. v. Echols*, 160 Ga.App. 539, 287 S.E.2d 577 (Ga. App. 1981)(holding that principals of corporation that was not properly formed and registered with Secretary of State were individually liable even though "the parties *thought* the corporation had been registered with the Secretary of State....This is not a case where the corporation purportedly existed under "color of law," but rather where no corporation existed at all.")(emphasis in original). *See also Bonner v. Brunson*, 262 Ga.App. 521, 585 S.E.2d 917 (Ga. Ct. App. 2003)(holding that limited liability company form must be maintained and respected in order to benefit from the protections of that corporate form). Consequently, the Bankruptcy Court erred in failing to find Earnest H. DeLong, Jr. and Michael Caldwell, the principals of DeLong & Caldwell LLC, liable for legal malpractice.

### Damages

35.     Finally, the Bankruptcy Court erred in failing to award the Trustee compensatory and direct damages for his legal malpractice claim in the amount of $476,233.67, the amount paid to Defendants by Terry Manufacturing for their legal services. "A legal malpractice action may sound either in tort or in contract, depending on the circumstances." *Plumlee v. Davis*, 221 Ga.App. 848, 851, 473 S.E.2d 510, 513 (Ga. App. 1996). However, when as in this case, the legal malpractice claim is based upon a breach of the duties imposed upon attorneys " to act with a certain degree of skill in performing their contractual duties to their clients," the action is one

-19-

NO.99788088.1

based in tort. *Id.* at 852 (citing *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga.App. 411, 414, 306 S.E.2d 340 (1983), *aff'd.* 252 Ga. 149, 311 S.E.2d 818 (1984)).

36.    Compensatory and direct damages are the proper measure of damages in a tort action, such as legal malpractice. "Direct damages are those which follow immediately upon the doing of a tortious act." Ga. Code Ann. § 51-12-3(a). According to Section 51-12-4 of the Georgia Code, "[d]amages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money." Ga. Code Ann. § 51-12-4. In the instant case, the measure of damages for the injury caused Terry Manufacturing by the Defendants' doing of the tortious act of malpractice is the amount of the fees paid to them for their negligent and unnecessary legal services.

37.    Furthermore, Georgia courts have held that an "attorney may lose his right to fees for unprofessional conduct or abandonment of his client's cause." *W.W. Odom v. L.H. Hilton*, 124 S.E.2d 415 (Ga. App. 1962). *See e.g., Blecher & Collins, P.C. v. Northwest Airlines, Inc.*, 858 F.Supp. 1442 (C.D. Cal. 1994); *Avianca, Inc. v. Corriea*, 705 F.Supp. 666 (D.D.C. 1989) (both recognizing that appropriate measure of damages for a conflict of interest that prejudices a client is reimbursement of the fees paid by that client after the conflict arose). As a result of Defendants' legal malpractice and unprofessional conduct, Terry Manufacturing and its creditors sustained damages in the amount equal to the amounts paid to the Defendants and the Trustee respectfully submits that he be awarded damages in the amount of $476,233.67.

38.    Because the Trustee established all elements of his legal malpractice claim against Earnest H. DeLong, Jr. and DeLong & Caldwell, L.L.C., the Trustee respectfully submits that the District Court reject the legal conclusions submitted by the Bankruptcy Court in its Report and

-20-

Recommendation and enter a final judgment in favor of the Trustee and against Earnest H.

DeLong, Jr. and DeLong & Caldwell, L.L.C.

Respectfully submitted this 8th day of June, 2007.

Respectfully submitted,

By:    /s/    Brent B. Barriere
Brent B. Barriere, T.A.  (La. Bar No. 2818)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR  J. LESTER ALEXANDER,
III, TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC. AND
TERRY UNIFORM COMPANY, LLC**

-21-

NO.99788088.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Earnest H. DeLong, Jr. and Charles Bridgers.  I further certify that I sent a copy of the foregoing by U.S. Mail, postage prepaid to:

Jerry A. Buchanan
Post Office Box 2848
Columbus, GA 31902

   /s/ Catherine E. Lasky

NO.99788088.1

Beltran - Direct                                    309

1    able to represent one client with absolute, undivided loyalty.

2    So if you are trying to represent two people and one has a

3    defense and one doesn't, you can't provide independent,

4    professional judgment to the one with that defense.

5    Q.        Ethical consideration 5-14:

6              "Maintaining the independence of professional judgment

7              required of a lawyer precludes his acceptance or

8              continuation of employment that will adversely affect

9              his judgment on behalf of or dilute his loyalty to a

10             client. This problem arises whenever a lawyer is asked

11             to represent two or more clients who may have

12             differing interests, whether such interests be

13             conflicting, inconsistent, diverse, or otherwise

14             discordant."

15             Obviously this EC directly addresses the conflict

16   situation; does it not?

17   A.        It does and it further identifies a division of

18   loyalty if you have differing interests, and it goes further

19   and tells you what those differing interests mean, and it is a

20   very low threshold - conflicting, inconsistent, diverse or

21   otherwise discordant - but the very low threshold that's been

22   addressed by the Georgia Supreme Court in these type cases.

23   Q.        As a general proposition, sir, what is the standard of

24   care for an attorney practicing in the state of Georgia?

25   A.        The standard of care, and I set forth this in my

EXHIBIT
A

Beltran - Direct                              310

1    expert report, a lawyer's duty is to use such skill, prudence

2    and diligence as lawyers of ordinary skill capacity commonly

3    possess and exercise in the performance of the tasks which they

4    undertake.

5              Then our Supreme Court went further and said the

6    standard of care in general is that level of competency of the

7    legal profession in Georgia and the related standards of the

8    state bar of Georgia, and it is that care, practiced on a

9    day-to-day basis, in general, throughout the state of Georgia.

10   Q.     All right.    What implications do the ethical

11   considerations have with respect to the standard of care of an

12   attorney insofar as his ethical obligations are concerned and

13   insofar as his duties to his client with respect to loyalties

14   and the other issues you have mentioned?

15   A.     Well, a lawyer must abide by the ethical

16   considerations in representing a client.

17   Q.     In your judgment, is a breach of the ethical

18   considerations likewise a breach of the standard of care

19   applicable to attorneys in the state of Georgia?

20   A.     It is and, in fact, in the *Lefkoff v. Duncan* case, the

21   court said standing alone by itself, if you just cite the

22   ethical rule, that won't provide the deviation, but that, along

23   with expert testimony, is the standard of care and can be

24   brought into evidence for the trier of fact to determine what

25   the standard was, if that ethical consideration addresses the

1          entity to represent him in an individual capacity. In

2          such case, the lawyer may serve the individual only if

3          the lawyer is convinced that differing interests are

4          not present."

5          Can the lawyer's judgment be overridden by the

6     corporation and the officer?  If the corporation or the

7     officers say, in effect -- or if the officer says, "We don't

8     want to pay multiple lawyers, so we want you to represent us

9     both," can the lawyer accept that judgment notwithstanding

10    concerns that there may be differing interests?

11    A.        If there are differing interests, the lawyer cannot

12    accept the multiple representation of the entity and the

13    individual.

14    Q.        The Georgia Rules of Professional Conduct, after

15    January 1, 2001, we will get to those in a moment.  I want to

16    focus now, if I may, on your methodology in reaching your

17    opinions in this case.  What did you review in order to form

18    your opinions?

19    A.        I received from you pleadings and deposition testimony

20    and deposition exhibits, which I have reviewed, and I have also

21    reviewed the Georgia rules, both prior to January 1, 2001, and

22    after January 1, 2001; the formal advisory opinions of our

23    Supreme Court; and case law that touches upon these issues.

24    Q.        All right.  Have you reached an opinion as to whether

25    there was a conflict between the interests of Rudolph Terry and

EXHIBIT
B

Beltran - Direct                                325

1    Terry Manufacturing at the time of the initial engagement?

2    A.        At the time of the initial engagement, there was an

3    actual   conflict   between   Mr.   Rudolph   Terry   and   Terry

4    Manufacturing.

5    Q.        And why is that?

6    A.        Well, because of the testimony yesterday where Mr.

7    Rudolph had obtained -- he had these fraudulent invoices where

8    he had received no product, was paying for certain product or

9    paying for product not received, and people refer to them as

10   fake invoices or invoices of interest, or whatever they were.

11   But he was doing things that the corporation received no

12   benefit or had no knowledge of.

13   Q.        All right.  Now, Mr. DeLong, of course, has testified

14   that he wasn't aware of that.  Just a garden-variety collection

15   suit.

16   A.        Yeah, he said when he was first hired, he was not

17   aware of it.  I don't know if he was aware of it or not, but

18   the issue is was he aware of it and should he have been aware

19   of it, and I think the court can decide that after it hears all

20   of the evidence.

21   Q.        Are you aware, based upon your review of the record

22   prior to coming to court, or what you heard yesterday, whether

23   there were differing interests, objectively ascertainable

24   differing interests at the time of the initial engagement?

25   A.        Based upon what I've heard, I am not sure, but a

Beltran - Direct                                335

1    law, to your knowledge?

2    A.       First of all, he would have to use his own letterhead;

3    but if he is in the same office, says "of counsel," as soon as

4    a client comes in, anyone in that office, whether they are a

5    group of sole practitioners practicing under the umbrella of a

6    firm, they must do a conflicts check because the court has

7    said, as far as the lay person is concerned, when a lay person

8    walks into a firm or sees the firm name, they can assume the

9    firm is representing them; and even "of counsel" is the same

10   issue.  You can be "of counsel" to a firm and the firm can be

11   liable.  They must do the same conflicts check as if it was a

12   true firm of all partners.

13   Q.       Mr. Beltran, have you reached a conclusion as to

14   whether Earnest W. DeLong breached the duty of care applicable

15   to attorneys in Georgia in his handling of the Commercial

16   Factors litigation?

17   A.       Yes, sir, I have.

18   Q.       And what is that opinion?

19   A.       My opinion is that he breached and deviated from the

20   standard of care in Georgia at the time.

21   Q.       And could you be specific in what manner he did so?

22   A.       In the manner of - in accepting the multiple

23   representation of Terry Manufacturing and Rudolph Terry at a

24   time when there were differing interests and his continuation

25   of this representation, this multiple representation.

Beltran - Direct                                    326

1   lawyer, again, must probe.  When someone comes to him, the

2   lawyer must probe and find the basis for the allegations and

3   say where is the documentation, this sort of thing.  And then

4   if the client can't answer the questions or gives answers that

5   troubles the lawyer, or can't produce certain documentation,

6   then the lawyer might be on notice.

7           But based upon Mr. Terry just coming to that initial

8   meeting, I can't say whether Mr. DeLong knew there were

9   differing interests at that exact time, but the record is clear

10  that there was shortly thereafter.

11  Q.      Now, in your judgment at the time of the initial

12  engagement, could there be an effective waiver between Rudolph

13  Terry, on the one hand, and the company, on the other, of

14  multiple representation?

15  A.      At that time, there could have been but, again, the

16  lawyer is under a continuing duty and, once these differing

17  interests come into existence, then the lawyer has a duty to,

18  you know, go and talk to the different clients, provide them

19  the disclosures we have already talked about and then make a

20  decision as to whether he, with their consent, he can continue

21  to represent them or, even if they consented, he can no longer

22  represent them, or whether he can only represent one, or

23  whether he has to withdraw from representation of either.

24  Q.      We will hear from him tomorrow but my appreciation,

25  hearing Dr. Ross' testimony in his deposition, was that,



EXHIBIT

C

Beltran - Direct                    327

1    provided they have got adequate information, two clients can

2    waive any conflict.    Is that consistent with the law of the

3    state of Georgia?

4    A.        That's absolutely incorrect.    The Supreme Court in

5    formal    advisory    opinions    and    in    cases    have    said,

6    notwithstanding that the clients consented, we are not going to

7    allow this representation to go forward.    So, you know, there

8    are    many    times    -- and the rules themselves provides when

9    conduct -- where representation can be consented to and where

10   it can't be consented to.    So there are many times where

11   individuals want to consent, and do consent, and under Georgia

12   they can't consent as a matter of law.

13   Q.        Now based upon the depositions you read, the testimony

14   you heard yesterday, do you believe there came a time when it

15   was    objectively    ascertainable    that    there    were    differing

16   interests between the company, Terry Manufacturing, and Rudolph

17   Terry?

18   A.        I have, yes.

19   Q.        And what is your opinion in that regard?

20   A.        The opinion would be that sometime between March of

21   2000, the end of March of 2000, the middle to the end of March

22   of 2000 and early summer of 2000, there is no question that the

23   lawyer    knew    or    should    have    known    that    there    were    severe

24   differing    interests    between    Mr.    Rudolph    Terry    and    Terry

25   Manufacturing.

Beltran - Direct                    328

1    Q.      And what did you, based upon your analysis, perceive

2    to be those differing interests?

3    A.      Well, the first was there was the testimony in March

4    by Mr. Rudolph Terry where he had trouble identifying records

5    and documents.  And then there is a letter - then Mr. DeLong

6    testified there was conversation with the Smith-Gambrell

7    lawyers where they were suggesting that something wasn't right,

8    and he said in his mind spikes went up and I had a question

9    right there.  Then they sent a letter to him and they said we

10   are going to add a claim against Mr. Rudolph Terry, and then

11   you had testimony of Mr. Pouncey.  I think he testified in May

12   and he testified in June, and during that time it was clear

13   that the lawyer knew, or should have known, that there were no

14   invoices for this claim for three point whatever thousand

15   dollars, or the two point one they wanted to settle for.

16   Q.      Do you have an opinion as to whether Mr. DeLong,

17   DeLong and Caldwell, were compelled to withdraw from the

18   representation of one or both, Rudolph Terry and the company,

19   at that time?

20   A.      Well, at that time they were representing -- they

21   initially, according to their testimony, they initially

22   represented the company and they continued to represent the

23   company.  When Mr. Rudolph Terry sought advice from them, legal

24   advice, at that time they had to tell him we cannot represent

25   you, we cannot represent you.  We can only represent the

Beltran - Direct                                        329

1  entity.  You need to go and get another lawyer.  Even if you

2  consent, even if it is cheaper, we cannot represent you.

3         And, of course, he had two choices.  He could go and

4  get another lawyer or he can try to get another lawyer for the

5  corporation, but Mr. DeLong could not represent both of them at

6  that time.

7  Q.      All right.  Mr. Beltran, let me ask you, I have heard

8  it said if a lawyer had a conflict in a malpractice context, it

9  is not the end of the inquiry, there has to be some injury,

10 some resulting damage.  Is that true?

11 A.      Yes.  What the Georgia cases have said in the *Peters*

12 *v. Hyatt Legal Services* case and Read *v. Benedict*, that if

13 there is a conflict of interest between the lawyer and a

14 client, then the law is going to presume nominal damages, let

15 the trier of fact determine whether punitive damages are

16 applicable because there is harm -- the court imputes harm

17 because the relationship is thereafter tainted, and also allows

18 for disgorgement of the fees that were earned by the lawyer if

19 the conflict begins and continues.

20 Q.      Do you believe there came a time when there was an

21 actual and direct conflict of interest between the interests of

22 the company and Rudolph Terry; do you have an opinion?

23 A.      I believe an actual conflict of interest developed in

24 the summer to the fall of 2000, yes, sir.

25 Q.      Did that continue through the balance of the

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

In Re

2:07cv585-F

TERRY MANUFACTURING
COMPANY, INC.,

In re Case No. 03-32063-WRS
Chapter 7

Debtor.

J. LESTER ALEXANDER, III,
TRUSTEE,

Adv. Pro. No. 04-3135-WRS

Plaintiff,

v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC; DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

Defendants.

**DEFENDANTS' RESPONSE TO TRUSTEE'S OBJECTIONS TO**

**BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT**

**AND CONCLUSIONS OF LAW PURSUANT TO**

**28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033**

# Contents

I.    INTRODUCTION ......................................................................................... 2

II.   PROCEDURAL HISTORY ........................................................................... 2

III.  FACTUAL SUMMARY ................................................................................ 2

IV.   DETAILED FACTS ..................................................................................... 4

V.    SUMMARY OF RESPONSE TO OBJECTIONS ........................................... 11

VI.   ARGUMENT ............................................................................................ 13

    A.    In Dismissing the Trustee's Malpractice Claims, the Bankruptcy Court Properly

    Applied Georgia's Standards for finding Legal Malpractice .................................... 13

    B.    The Attorney Hiring Element .......................................................................... 14

    C.    The Element of Failure to Exercise Ordinary Care, Skill and Diligence: ...................... 16

        (i) Notwithstanding the Trustee's Attempt to Artificially Separate Them, Terry

        Manufacturing's Interests and Rudolph Terry's Interests In Defense of Commercial Factors'

        Fraud Claims Were Parallel Because Terry Manufacturing was Likely to Be Found Liable

        for  Rudolph Terry's Actions, Regardless of the Whether Terry Manufacturing Received T-

        Shirts from Floodgates ................................................................................. 17

        (ii) Mr. DeLong's Specific Efforts Throughout the Commercial Factors Litigation Were

        Directed Toward and Valuable to Terry Manufacturing Company's Defenses. .................. 21

        (iii)  Mr. Delong Otherwise Exercised the Requisite Degree of Care, Skill, Diligence and

        Loyalty to Terry Manufacturing Company. ......................................................... 28

D.    No Un-waivable Conflict Existed Between Terry Manufacturing and Rudolph Terry, and Any Conflict that Arose in Mr. DeLong's Representation of Terry Manufacturing and Rudolph Terry was both waivable and waived by his clients.................................................. 33

(i)  The Commercial Factors Litigation Presented No Unwaivable Conflict ....................... 33

(ii) Terry Manufacturing Company Properly Waived Any Actual or Potential Conflict of Interests Between Itself and Rudolph Terry in the Commercial Factors Litigation............. 36

(iii)   Roy Terry Always Had Sufficient Information to Meaningfully Have Waived Any Conflict on Behalf of Terry Manufacturing Company ........................................................ 40

(iv) The Disclosures to and Waiver Which Mr. DeLong Obtained from Terry Manufacturing Were Effective  Because Standard 30 Was Inapplicable............................ 42

(v) The Disclosures to and Waivers Which Mr. DeLong Obtained from Terry Manufacturing Company Were Effective Because Standard 69 is Inapplicable to This Case .................................................................................................................................................. 44

(vi) Whether the Conflict Waiver Was in Writing Has No Relevance Because both of the Company's Sole Owners Admitted They Would Not Have Done Anything Different Had The Disclosures Been Provided and Their Waivers Been Sought in Writing. ...................... 44

E.    Even if a Breach of the Standard of Care Had Been Shown, the Bankruptcy Court's Decision Dismissing the Malpractice Claims was Correct because the Trustee Can Not Demonstrate Either Causation or Damages .......................................................................... 45

F.    The Claims against Other Entities and Michael Caldwell, Individually ........................... 50

VII.    CONCLUSION.......................................................................................................... 59

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

In Re

TERRY MANUFACTURING                          In re Case No. 03-32063-WRS
COMPANY, INC.,                               Chapter 7

Debtor.


J. LESTER ALEXANDER, III,                    Adv. Pro. No. 04-3135-WRS
TRUSTEE,

Plaintiff,

v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC; DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

Defendants.

## DEFENDANTS' RESPONSE TO TRUSTEE'S OBJECTIONS TO

## BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT

## AND CONCLUSIONS OF LAW PURSUANT TO

## 28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033


The Defendants in the above-styled adversary proceeding submit to the District Court

their response to the Trustee's Objections to the Bankruptcy Court's Proposed Findings of Facts

and Conclusion of Law issued by Bankruptcy Judge William R. Sawyer ("Trustee's

Objections").

-1-

# I.  INTRODUCTION

Irrespective of the hyperbole in the Trustee's Objections, the essential question is whether a Defendant may be held liable for legal malpractice in its defense of the Bankruptcy Petitioner (here Terry Manufacturing) in commercial litigation in which Terry Manufacturing never was found liable to for a single dime to the plaintiff and even the Trustee's own expert witness testified that he had no evidence indicating that Terry Manufacturing would have obtained a different result in the litigation with an attorney other than Mr. Delong.

# II. PROCEDURAL HISTORY

As the Trustee (sometimes referred to as "Plaintiff") notes, the Bankruptcy Court issued a Memorandum Decision on May 29, 2007 finding against Mr. Delong on the Trustee's fraudulent conveyance claims in the core proceeding, but rejecting the Trustee's efforts to inculpate a variety of other Defendant entities named in the Adversary Proceeding. The Trustee's Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law  in the non-core malpractice case ("Proposed Findings and Conclusions") reference and attempt to bootstrap his malpractice assertions on certain of the Bankruptcy Court's conclusions in the core proceeding. However, Mr. Delong has appealed these underlying findings in the core proceeding because they are unsupported by the record.

# III. FACTUAL SUMMARY

Plaintiff does not object to the facts found by the Court in his Proposed Findings. These facts include the following crucial statements: Mr. Delong was initially retained by Terry

-2-

Manufacturing to defend the Commercial Factors matter. (Order, p. 2) The sole shareholders and officers of Terry Manufacturing were Rudolph and Roy Terry (Id) Later in the litigation, Commercial Factors brought a fraud claim against Rudolph Terry in addition to the claims pending against Terry Manufacturing. The Terry brothers—who owned 100 percent of the common stock of the corporation—waived the conflict of interest. (Id. p.3)

While not included specifically in the Court's Order, the following facts are undisputed: Commercial Factors' initial complaint against Terry Manufacturing sought $3,320,710, plus attorney's fees as damages. [P-1; T. 279, ln. 6 – 13; T. 351, ln. 16-21] As the litigation progressed, Commercial Factors not only added Rudolph Terry as an individual Defendant but amended its Complaint to add tort claims resulting in an increase to the potential liability of Terry Manufacturing. [P-1; T. 351-352, ln. 12-21] Finally, Commercial Factors added a claim under the RICO statute, which potentially trebled its damages claimed against Terry Manufacturing Company ("the Company) from all of these other claims. [D-6; T. 281, ln. 24 – T. 282, ln. 1; T. 582, ln. 4-20]

As the Trustee never disputed, Terry Manufacturing was compelled to defend itself in the face of potentially crushing liability. [T. 285, ln. 4–21; T. 350, ln. 14-20] In the end, Terry Manufacturing was never found liable to Commercial Factors for any amount of money. [T. 63, ln. 20 – T. 64, ln. 5; T. 291, ln. 16 - 20 ] Indeed, despite initially seeking damages in excess of three million dollars, and, eventually, in excess of ten million dollars, Commercial Factors was only willing to file a proof of claim--under oath--in the bankruptcy court for $1,793,000.42. [D-1, D-2, D-4, T. 563-564; T. 284, ln. 4 -18] Mr. Beltran, the Trustee's expert, summed up the issue:

-3-

Q: And you really have no information, no evidence, that would lead you to believe that Terry Manufacturing would have received a different result with different lawyers; do you?
A: No.
[T. 376, ln. 18-21]

## IV.   DETAILED FACTS

The Commercial Factors lawsuit revolved around a factoring transaction between Commercial Factors, whose President was Tracy Eden; Floodgates, owned by John Pouncey; and eventually Rudolph Terry and Terry Manufacturing.  Floodgates first began factoring invoices with Commercial Factors prior to the 1996 Atlanta Olympic Games. During this time period, Floodgates factored invoices, guaranteed by Terry Manufacturing, with Commercial Factors. [T. 72-73]  Several years later,  Floodgates factored additional invoices with Commercial Factors. Floodgates filled in pre-signed, blank invoices obtained from Terry Manufacturing during the 1996 Olympics.  [T. 74, ln. 11-19; T. 143, ln. 17-20]  When the invoices were not paid, Commercial Factors contacted Terry Manufacturing and Rudolph Terry for payment. [T. 74] Rudolph Terry confirmed these fraudulent invoices to Commercial Factors and at some point advanced funds to Floodgates to pay Commercial Factors. [Id.] Eventually, false written confirmations given by Rudolph Terry to Commercials Factors led to his plea and conviction for mail fraud. [T. 72, ln. 5-6]

Long before the criminal action commended, in late December 1999, Terry Manufacturing Company ("Company") hired Defendant, Earnest H. DeLong, Esq. and Jerry Thomas, Esq. to represent the Company in the Commercial Factors litigation. [T. 497, ln. 25 – T. 498, ln. 8; T. 401, ln. 12-21]  In approximately May 2000, nearly six months after the litigation began, Commercial Factors' attorney first mentioned to Mr. DeLong a potential fraud claim,

-4-

suggesting that Rudolph Terry had been an active participant in the fraud. As soon as he heard

this claim Mr. DeLong reported it to Rudolph Terry and advised him that such a fraud claim

created a potential conflict of interests between Mr. Terry personally and Terry Manufacturing

Company.  Mr. DeLong advised Mr. Rudolph Terry that it might be necessary for both Rudolph

Terry and Terry Manufacturing Company to have separate counsel, because the Company might

need to respond differently to Commercial Factors' fraud allegations than Mr. Terry would

respond, individually. [T. 94, ln. 4-17; T. 442, ln. 5-19] Rudolph Terry testified that Mr. DeLong

informed him that if he had been involved in fraud, there would be "significant issues whether he

was acting within the scope of his authority, whether the Company would have acquiesced in the

fraud, you know, that sort of thing." [T. 93, ln. 13-21]  Mr. DeLong also advised Rudolph Terry

to discuss the matter with his brother (the only other voting shareholder, and a fellow director

and officer) and further advised him that they should obtain the advice of another lawyer on the

question of the conflict.

　　　Rudolph Terry testified that he told his brother that Commercial Factors was threatening

to add a fraud claim in the litigation.  [T. 502, ln. 24 - T. 503, ln. 4]  According to Rudolph

Terry,

> Mr. DeLong "suggested that I might want to consult other counsel in terms of separate
> from himself and Mr. Thomas, in terms of making a decision to continue with him
> representing both the company and me." [T. 409, ln. 9-18]

> "When they brought up the issue of a potential conflict of interest, I wanted to make
> sure that he [Roy] was involved in the process, as well as me, and where the decision-
> making process, they included Roy very heavily in that decision." [T. 410, ln. 3-6]

> "Mr. DeLong became a little bit more emphatic in terms of his explanation and
> insistence that we strongly consider the implications of his representing the company

-5-

and interest that might relate to me separately. [He] became more insistent for us to evaluate and continue to evaluate the greater potential of conflict and making sure that we understood the potential of that conflict." [T. 413, ln. 7-17]

"It came up at each point the nature of the case and the claims changed. The conversation related to conflict of interest was reemphasized, readdressed and at each time we came to the conclusion to maintain the same representation and ultimately the joint representation of me and the company at the point that I was in fact a separate named party." [T. 414, ln. 7-13]

"each time there was a ratcheting up of the emphasis on the fact that the potential for conflict increased. Certainly significantly at the point that I was, in fact, a separate party was the most emphatic emphasis and re-insistence on analyzing it and suggesting that we might want to seek counsel other than Mr. DeLong and Mr. Thomas to verify our decision to go forward with the two of them representing both me and the company was reemphasized more emphatically at the point that I was in fact named as a separate party. [T. 414, ln. 19 – T. 415, ln. 3]

Roy Terry testified that he was involved in all of these conversations. [T. 442, ln. 20 - T. 444, ln. 15] According to Roy Terry,

"As best I can remember . . . Mr. DeLong had said to Rudolph, had asked Rudolph to discuss with me the fact that there was the potential for a conflict of interest in terms of Mr. DeLong's representation of both Terry Manufacturing Company and Rudolph Terry. . . . In effect Mr. DeLong was saying that he would have to recommend separate counsel for Terry Manufacturing and for Rudolph Terry because of the potential for conflict of interest. [T. 506, ln. 11-25]

"Rudolph and I talked about the issues that had been raised, and our initial thoughts were that we didn't feel it was in the best interest of Terry Manufacturing to do separate counsel. . . . We decided that that was not in the best interest of Terry Manufacturing. . . we had the distinct impression that Commercial Factors was trying to force money out of Terry Manufacturing. . . we felt that we were getting good representation from the team that we had. We felt that we did not want to allow our efforts or our defense to be split, that Terry Manufacturing and Rudolph Terry ultimately had the same goal. . . . we did not intend to have this company or these persons to split us up as brothers or as business partners." [T. 507, ln. 9 – T. 508, ln. 19]

-6-

Within a few days after Mr. DeLong first advised Rudolph Terry of the need for separate representation between the Company ad himself, Roy and Rudolph Terry had a three-way conference call with Mr. DeLong. According to Roy Terry,

> "Mr. DeLong gave his thoughts, the same thoughts that had been passed on through Rudolph he repeated for purposes of that telephone conference. . . . Rudolph and I restated for him our conclusions that we did not want to move to separate counsel. . . . there was a good general discussion and I am sure it included questions and answers all the way around from all of the parties." [T. 509, ln. 2 – T. 510, ln. 7]

Roy Terry told Mr. DeLong that he waived any conflicts that might have arisen. [T. 509, ln. 21-24; T. 517, ln. 2-8]

Neither the disclosure of the potential conflict, nor the Terry brothers' consent to it and waiver was in writing. Before January 1, 2001, Georgia's Ethical Standards applicable to attorneys practicing in Georgia did not require a written notice. It is undisputed, however, that the fact that Mr. DeLong orally provided his recommendations to the Terry brothers concerning a potential conflict of interests between the parties and the need for separate representation of the Company and Rudolph Terry rather than in writing made no difference to the Terry brothers' decision [T. 416, ln. 22 – T. 417, ln. 14; T. 519, ln. 2-12]  Roy Terry emphatically testified that he never would have authorized a legal claim to be brought by the Company against his brother. [T. 519, ln. 13-24] Both Roy and Rudolph Terry emphasized in their testimony at the January 2007 trial of this matter that, knowing everything they knew "up until that very moment" (i.e. at the trial of the Adversary proceeding ) neither brother would have changed his decisions to continue retaining Mr. DeLong and Mr. Thomas to represent both Terry Manufacturing

-7-

Company and Rudolph Terry.  [T. 417, ln. 19 - T. 418, ln. 2; T. 520, ln. 2 - T. 521, ln. 9]

Rudolph Terry testified:

> "No.  The results related to that were the results that we were seeking.  Terry
> Manufacturing Company was never subjected to the three plus million dollars in
> judgments and award of dollars that were being sought by the other parties.  So the
> results that we were seeking were achieved."  [T. 417, ln. 23 – T. 418, ln. 2]

Similarly, Roy Terry testified:

> "I think they gave adequate good representation, and I don't see that someone else could
> have done any better."  [T. 521, ln. 6-9]

The Company had instructed Mr. DeLong and Mr. Thomas that Rudolph Terry was to be

the Company's primary contact with them during the Commercial Factors case.  However, Roy

Terry testified that he frequently spoke with Mr. DeLong or Mr. Thomas about the case, no less

frequently than every week or two, and at some times during periods of intense activity as often

as two to three times in the same day.  [T. 516, ln. 1 -12]  Roy Terry also read the Commercial

Factor's Complaint when it was filed.  [T. 496, ln. 4-5]  Once Commercial Factors added the

fraud claim, Roy Terry understood that Commercial Factors was seeking to add a fraud claim

against Terry Manufacturing based on Rudolph Terry's actions.  [T. 502, ln. 24 - T. 503, ln. 21]

He read the Amended Complaint and he received and reviewed other pleadings and significant

documents from the Commercial Factors matter.  [T. 511, ln. 24 – T. 512, ln. 19]  He authorized

Mr. DeLong to file an answer admitting that Terry Manufacturing was liable to Commercial

Factors for a certain amount in order to try to get the case settled.  [P-35; T. 528, ln. 4 – T. 529,

ln. 15]

-8-

It is undisputed that Mr. DeLong complied with every request from Roy Terry for information, documents and that he always answered Roy Terry's questions about the case. [T. 510, ln. 8 – 20; T. 513, ln. 6 -8] It is undisputed that Roy Terry was aware of every significant aspect of the Commercial Factors case because he spoke regularly not only with Rudolph Terry, but also with both Mr. DeLong and Mr. Thomas, and he reviewed pertinent documents and [T. 516, ln. 13-20] It is undisputed that Rudolph Terry never instructed either counsel to withhold any information from his brother [T. 416, ln. 16-21] and that they never withheld any such information from him.

Throughout the Commercial Factors litigation, Mr. DeLong, asserted every factually and legally-supportable defense available to Terry Manufacturing Company [D-7; D-8; D-9; D-10] Mr. DeLong asserted those defenses at the times when he had become aware of facts giving rise to such defenses, and as soon as he deemed the timing of raising each such defense most beneficial to the Company's overall defense against Commercial Factors' claims. He included all of these defenses bases for Terry Manufacturing Company's Motion for Summary Judgment against Commercial Factors, following the close of discovery. [T. 559, ln. 3-10]

The defenses Mr. DeLong ultimately raised against Commercial Factors' claims included: (i) That Terry Manufacturing Company was not indebted to Commercial Factors in any amount; (ii) That Terry Manufacturing Company was not a party to the creation of the invoices that Floodgates, Ltd. sold to Commercial Factors (those invoices being the invoices at issue in the litigation); (iii) That Terry Manufacturing Company did not generally purchase goods from Floodgates, Ltd. after the 1996 Olympics; (iv) That Terry Manufacturing Company did not purchase goods as reflected in the invoices at issue in the litigation; (v) That the acts alleged against Rudolph Terry, if they occurred, were not acts committed within the scope of

-9-

Rudolph Terry's employment at Terry Manufacturing Company; (vi) That the acts alleged against Rudolph Terry were *ultra vires* with regard to Terry Manufacturing Company, and that the Company was not liable to Commercial Factors. [D-25; D-26; D-27]

In viewing the facts as they emerged from testimony rendered five years after the events in the case, the Bankruptcy Court had the benefit of a vantage point affording it 20/20 hindsight. In contrast, Mr. DeLong, despite his diligent investigation of the facts and evidence in the case, had to rely upon the version of the facts that his clients, Terry Manufacturing and Roy and Rudolph Terry, presented to him. It is undisputed that neither of the Terry brothers made Mr. DeLong aware of Rudolph Terry's fraud against Commercial Factors, including about the fact that Terry Manufacturing never purchased or received the goods evidenced in the fraudulent invoices from Floodgates until shortly before Mr. DeLong raised these defenses in the litigation and the Company filed its bankruptcy petition. In fact, when Mr. DeLong filed Terry Manufacturing Company's original Answer admitting that the Company was liable for part of the sums Commercial Factors was claiming, he had to rely upon the evidence and facts which Roy and Rudolph Terry made available to him. Moreover, he was aware that Commercial Factors possessed invoices from Floodgates to Terry Manufacturing, signed by Rudolph Terry. He also had to contend with the fact that before he was engaged as its Co-Counsel in the Commercial Factors case, Terry Manufacturing actually had admitted liability for those same sums during the Terry brothers' negotiations with Commercial Factors. [T.196, ln. 12-21]. The Answer [D-32] contains a verified statement by Rudolph Terry that the defendant is "indebted to defendant Floodgates for an amount that has been incurred in the ordinary course of business dealings between itself and defendant Floodgates." [T. 71, ln. 4-14]   Roy Terry authorized Mr. DeLong to file an answer that Terry Manufacturing was liable to Commercial Factors for some

-10-

amount in order to try and get the case settled. [P-35; T. 528, ln. 4 – T. 529, ln. 15] As the case progressed, Mr. Delong amended the company's order to peel off portions of liability as additional facts surfaced. [T.564, ln. 8-9, T.565, ln 11-24] Although Rudolph Terry later would contend that he had signed the Floodgates invoices in blank several years before the dates of the claimed transactions and that Terry Manufacturing had not actually received from Floodgates any of the goods evidenced in the invoices, Mr. Delong was unaware of this fact which was directly contradictory to the sworn statements of his clients. Ultimately, the trial Court denied the Company's Summary Judgment Motion. [T. 560, ln. 4-16] However, there is no shred of evidence **other** than that Terry Manufacturing and its sole directors and voting shareholders, Roy and Rudolph Terry concealed Rudolph Terry's fraudulent factoring scheme from Mr. DeLong every bit as much as they attempted to conceal the fraud from the rest of the world.

The Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law found that Mr. DeLong had not committed malpractice. Its findings and conclusions were premised on the uncontroverted evidence revealing that Mr. DeLong had explained the potential and the actual conflicts of interest arising from Commercial Factors fraud allegations against the Company and Rudolph Terry to both of the Terry brothers, who were the Company's sole voting shareholders, and its sole officers and directors, and that Mr. DeLong had advised them on numerous occasions to obtain separate Counsel to represent the Company and Rudolph Terry, and that despite this advice the Terry brothers knowingly and intentionally had waived any such conflicts and had directed Mr. DeLong and Mr. Thomas to continue representation of both the Company and Rudolph Terry.

-11-

## V.    SUMMARY OF RESPONSE TO OBJECTIONS

The Trustee Objects to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law and Proposed Order that Defendants are not liable to the Trustee for Malpractice against Terry Manufacturing Company. The Trustee's ultimate contention that both Mr. DeLong and Mr. Caldwell should be found jointly and severally liable rests upon mischaracterizations of the Bankruptcy Court's actual findings and conclusions. The Trustee attempts to bootstrap a malpractice claim upon the Bankruptcy Court's findings and conclusions in the Trustee's fraudulent conveyance claim in the core proceedings herein.[1] In so doing the Trustee attempts to distract the Court's attention from the obvious factual inadequacies and legal flaws in its claims.

While the Trustee states in Paragraph 6 of his Objections that he does not challenge the Bankruptcy Court's Proposed Fact Findings (except insofar as they also might be conclusions of law), he summarizes those portions of Bankruptcy Court's proposed Conclusions of Law to which he objects:  (1) The Court's interpretation of the language and rule of *Allen v. Lefkoff, Duncan, Grimes & Demer, P.C.*. 453 S.E.2d 719 (Ga. 1995); (2) The Court's interpretation of the Trustee's claim as being "predicated solely on the theory that DeLong breached an ethical duty"; (3) The Court's conclusion that the Trustee's failure to establish such a breach is fatal to the malpractice claim; and (4) The Court's finding that Defendants were insulated from liability for their alleged breaches of their duty of care and loyalty because they received an oral waiver from all directors, officers and shareholders.

---

[1] Defendants are separately appealing the Bankruptcy Court's Conclusions and Order in the Core proceeding.

-12-

Rather than separately responding to the repetitious allegations contained in each of the Trustee's 38 numbered paragraphs, for purposes of clarity Defendants distill the allegations to their essentials and address them collectively herein. Defendants show that the Bankruptcy Court correctly concluded that no Defendant should be held liable for committing malpractice against Terry Manufacturing Company in the Commercial Factors litigation. The Court's proposed findings and conclusions in the non-core malpractice proceeding are correct because the Bankruptcy Court correctly interpreted and applied Georgia law to the malpractice claims which the Trustee raised. It correctly concluded that there existed no unwaivable conflict of interest between the legal interests of Terry Manufacturing and those of Rudolph Terry in the Commercial Factors litigation, which precluded Mr. DeLong from representing the Company and Rudolph Terry simultaneously. It correctly based this conclusion on the uncontroverted fact that Mr. DeLong counseled Terry Manufacturing Company's sole voting shareholders and directors about the existence of the potential conflict between the Company's interests and those of Rudolph Terry. The Bankruptcy Court's findings and conclusions are correct because, as the evidence demonstrated without contradiction, after Mr. DeLong counseled them about the conflict of interest, both Roy and Rudolph Terry, *Terry Manufacturing Company's sole shareholders and directors,* knowingly and willingly waived that conflict on behalf of Terry Manufacturing Company and directed Mr. DeLong to continue representing both the Company *and* Rudolph Terry individually in the litigation. In addition, as will be state in more detail below, the Court was also correct to dismiss the malpractice case because the Plaintiff could not demonstrate that other required elements of a malpractice claim were met.

-13-

# VI.  ARGUMENT

## A. In Dismissing the Trustee's Malpractice Claims, the Bankruptcy Court Properly Applied Georgia's Standards for finding Legal Malpractice.

The Bankruptcy Court correctly identified the essential elements for proving a claim of legal malpractice under Georgia law:

> Employment of the defendant attorney; (2) failure of the attorney to exercise ordinary care, skill and diligence; and (3) that such negligence was the proximate cause of damage to the plaintiff.

*Allen, supra, at* 720, *See also, Rogers v. Norvell*, 174 Ga.App. 453, 457, 330 S.E.2d 392 (1985); *Tante v. Herring*, 264 Ga. 694, 453 S.E.2d 686 (1994). Georgia's courts further require that until contradicted, a presumption exists that "an attorney's services are performed in an ordinarily skillful manner." *Ehlers v. Schwall & Heuett*, 177 Ga.App. 548, 340 S.E.2d 207 (1986). Hence, to succeed in a legal malpractice claim, it is the plaintiff's burden, in this case the Trustee's, to prove by a preponderance of evidence ***both*** that the defendant-attorney *did something carelessly, unskillfully, or undiligently, or that he failed to do something* which an attorney exercising ordinary care, skill and diligence would have done, **and** that as a direct consequence of such action or inaction, the plaintiff was harmed. Defendants presented evidence that the first element, employment of the Defendant attorney, was not met, as to any Defendant, except Mr. DeLong. However, even as to Mr. DeLong, Plaintiff did not demonstrate breach, causation or damages to Terry Manufacturing.

-14-

## B.    The Attorney Hiring Element

As noted, the Trustee mischaracterizes the Bankruptcy Court's findings as to the first

malpractice element, the attorney's hiring. In the Memorandum Decision on the Trustee's

fraudulent conveyance claim[2] the Court found (and Defendants never denied) that "Rudolph

Terry retained Defendant Earnest DeLong, an Atlanta lawyer to represent Terry Manufacturing

and later himself, in the Commercial Factors litigation." (Memorandum Decision pg. 5) While

the Memorandum Decision noted that there was "a great deal of confusion as to whether Earnest

DeLong, an individual was retained or whether it was the law firm." (Memorandum Decision pg.

5, fn. 3) the Court resolved that "confusion" when it found "that Earnest DeLong, an individual,

is the only Defendant who should be liable here."  While the Trustee deceptively and incorrectly

states the Bankruptcy Court as finding "that Terry Manufacturing employed **the Defendants** as

attorneys." (Trustees Objection ¶ 9 (emphasis added)), the Court specifically found that **none** of

the other named Defendants should be liable for any of the Trustee's claims.[3]

The Court's finding is supported by uncontradicted evidence demonstrating that in late

December 1999, Terry Manufacturing Company ("Company") hired Defendant, Earnest H.

DeLong, Esq. and Jerry Thomas, Esq. to represent the Company in the Commercial Factors

litigation. [T. 497, ln. 25 – T. 498, ln. 8; T. 401, ln. 12-21] Mr. Thomas, who always maintained

---

[2] The Bankruptcy Court's Memorandum Decision in the core proceedings separately issued on the same date as its Proposed Findings of Fact and Conclusions of Law with respect to the non-core proceedings on the Trustee's malpractice claim.  For purposes of clarity, the Bankruptcy Court's decision in the core proceeding will be referred to as the "Memorandum Decision" while its proposed findings of fact and conclusions of law in the non-core malpractice case is referred to hereinafter as "Proposed Findings and Conclusions."

[3] The Court did not (and had no jurisdiction to) find Mr. Caldwell individually liable for any of the Trustee's claims. The Trustee had never named nor served Mr. Caldwell as a Defendant in the Adversary proceedings, and he has not submitted to the Court's jurisdiction.

separate offices from Mr. Delong's firm, never was a member of Mr. Delong's law firm. Mr.

DeLong later confirmed his understanding of his engagement in a January 3, 2000 letter

addressed to Mr. Rudolph Terry at Terry Manufacturing Company. While Mr. DeLong wrote

this letter on his stationary bearing the letterhead of his law firm, DeLong & Caldwell, LLC, his

engagement letter clearly stated that Terry Manufacturing Company had hired only Mr. DeLong

and Mr. Thomas. [D-10] It stated:

> "This letter is intended to memorialize the understanding we have reached. Jerry Thomas
> and I have been engaged to represent the interests of Terry Manufacturing Company,
> Inc., its officers, directors and shareholders in the defense of the above-referenced
> matter."

Both Roy Terry and Rudolph Terry testified that they each understood and believed that

they had hired only Mr. Thomas and Mr. DeLong individually to represent them in the

Commercial Factors litigation, and that they had never understood or agreed to hire Mr.

Caldwell, Mr. Bridgers, or Mr. DeLong's firm, DeLong and Caldwell, LLC or the subsequently-

organized law firm of DeLong, Caldwell, Novotny & Bridgers, LLC to represent them. [T. 407,

ln. 5-11; T. 502, ln. 17-23] Both of the Terry brothers testified that neither of them even had ever

met Mr. Caldwell, Mr. Bridgers, nor any of the other attorneys associated with them in the

Defendant firms before the Adversary proceeding. [T. 405-406; T. 502, ln.1-13] The only

attorneys hired by Terry Manufacturing were Mr. Delong and Mr. Thomas. [T.404, ln. 24 – T.

405, ln. 3; T.501, ln. 20-25] Accordingly, the first requisite element of the Trustee's malpractice

claim, the hiring of attorney, was never proven with respect to any Defendant other than Mr.

DeLong.

## C.    *The Element of Failure to Exercise Ordinary Care, Skill and*

-16-

### *Diligence:*

The  Trustee's Objections failed to specify any particular failure by Mr. DeLong or any

defendant to exercise ordinary care, skill and diligence owed to Terry Manufacturing Company.

As set forth below, the Trustee  has claimed that Mr. DeLong's litigation of Commercial Factors

matter, on behalf of both Terry Manufacturing and Rudolph Terry, constitutes an act of legal

malpractice merely because of a conflict of interest.  Even the Trustee's expert has identified no

action or omission in the actual conduct of the Commercial Factors Litigation matter as legal

malpractice except for a delay in filing Terry Manufacturing's Motion for Summary Judgment.

[T. 353, ln. 14 – T. 354, ln. 4]  (Q: "[B]ut in terms of what he filed, what he didn't file, what

depositions he took? A: No, I am not here to opine on that.][4]

The Trustee's malpractice contentions in its Objections are grounded upon two of the

Bankruptcy Court's conclusions in its Memorandum Decision: (i) That Mr. DeLong asserted

defenses on behalf of Rudolph Terry that were inconsistent with and that "eviscerated" the

Company's defenses to Commercial Factors' claims; and (ii) That Mr. DeLong's efforts in the

Commercial Factors litigation were directed exclusively toward , and the only party who could

have derived any benefit from them, was Rudolph Terry.  Mr. DeLong vigorously disputes the

Memorandum Decision's Findings and Conclusions, and the Trustee's assertions based on such

findings.

### (i) Notwithstanding the Trustee's Attempt to Artificially Separate Them,

---

4  At trial, the Plaintiff presented testimony that the failure to file a motion for summary
judgment before the discovery period ended was a breach of the standard of care. [T. 353, ln. 14
– T. 354, ln. 4]  However, after the Trustees' expert eventually testified that the same decision
could have been made by a reasonable and independent lawyer the Trustee has apparently
dropped this as an objection. [T. 355, ln. 9-21]

**Terry Manufacturing's Interests and Rudolph Terry's Interests In Defense of Commercial Factors' Fraud Claims Were Parallel Because Terry Manufacturing was Likely to Be Found Liable for Rudolph Terry's Actions, Regardless of the Whether Terry Manufacturing Received T-Shirts from Floodgates.**

The uncontested evidence reveals that Terry Manufacturing faced very significant liability in the Commercial Factors litigation. In its initial collection complaint, Commercial Factors sought to recover $3,320,710 plus attorneys' fees. [P -1; T. 279, ln. 6 – 13; T. 351, ln. 16-21] Subsequently, Commercial Factors added tort claims increasing Terry Manufacturing's potential liability from fraud allegations [P-1, T. 351, ln. 12 –T. 352, ln. 5] Later, it added a claim under Georgia's RICO statute, potentially trebling all of these claims. [D-6, T.582, ln. 4-20] The legal and financial risks which Terry Manufacturing faced were substantial; and the avoidance of those risks governed Mr. DeLong's every act and decision during the course of the litigation. [T.584, ln 25 – T.585, ln 2]

It is uncontested that all the material acts of the factoring transactions took place long before Mr. DeLong entered the matter as Terry Manufacturing's co-counsel. [T. 279, ln. 2-7] Rudolph Terry had attempted to resolve the controversy before Mr. DeLong became involved. [T. 58, ln. 9, T-423-424]  During his negotiations with Commercial Factors' attorneys, Mr. Terry admitted that Terry Manufacturing was responsible for at least a large part of the money Commercial Factors was seeking in the collection case. His admission negatively affected the course of the litigation and limited Mr. DeLong's ability to negotiate, because it appeared from these events that Rudolph Terry had the authority to enter the factoring transactions. [T. 558, ln. 3-21] The Answer [D-32] contains a verified statement by Rudolph Terry that the defendant is "indebted to defendant Floodgates for an amount that has been incurred in the ordinary course of

-18-

business dealings between itself and defendant Floodgates." [T. 71, ln. 4-14]  Throughout the

entire litigation Commercial Factors continued to maintain that Rudolph Terry had acted on

behalf of Terry Manufacturing in the factoring transactions. [T. 558, ln. 22-25]  Critically, the

conduct of Commercial Factors contradicts any Pollyannaish speculation by the Plaintiff that

Terry Manufacturing could simply have pointed to Rudolph Terry as the culpable party and

washed its hands of the entire matter.

  Neither the Bankruptcy Court nor even the Trustee has ever suggested that Terry

Manufacturing should not have defended itself vigorously in the face of potentially crushing

liability claims brought by Commercial Factors. [T. 285, ln. 4–21; T. 350, ln. 14-20 Both the

legal and factual claims which Commercial Factors brought against Rudolph Terry and Terry

Manufacturing were identical. [T. 96, ln. 15-16] There was a commonality of claims as to what

Commercial Factors alleged. [T. 96, ln. 15 – T. 97, ln. 3; T-577, ln. 17-22]  The Bankruptcy

Court's Memorandum Decision, and the Trustee's Objections further fail to recognize that, far

from having defenses that were inconsistent with each other's, both Rudolph Terry's and the

Company's factual and legal defenses to the fraud claims were the same: Both Mr. Terry's and

Terry Manufacturing Company's defense to the fraud claims rested upon the theory that neither

the Company nor Mr. Terry could have defrauded Commercial Factors' since Commercial

Factors President, Tracy Eden had always been aware that Floodgates' invoices to Terry

Manufacturing did not represent any goods which Terry Manufacturing actually receive, but that

Rudolph Terry had signed the invoices merely to assist Floodgates' President Jon Pouncy,  one

of Terry Manufacturing Company previous benefactors,  to collateralize credit his company was

receiving from Commercial Factors. Mr. DeLong testified that he regarded this commonality of

claims and commonality of defenses to reduce any likelihood that a conflict of interest would

arise between the Company and Rudolph Terry's respective interests preventing him from

competently representing both co-defendants [T. 95, ln. 22 – T. 96, ln. 2]   As Mr. DeLong

testified:

> [T]hey were making exactly the same claims against Terry Manufacturing as they
> were against Rudolph Terry so that it was all the same. There was no difference or
> distinction at all. There was nothing to separate out and treat any differently." [T.
> 577, ln. 25 – T. 578, ln. 4]

The mere fact that, if proven to the jury's satisfaction, this defense theory would have

inured to the benefit of both the Company's and Rudolph Terry's respective defenses to

Commercial Factors' fraud claims **by disproving** the essential fraud element of Commercial

Factors' reasonable reliance upon Mr. Terry's signatures on the Floodgates invoices cannot

establish that the Company's and Mr. Terry's respective legal interests were inconsistent or in

conflict with one another's.

Nevertheless, as part of his Objections to the Court's rejection of his malpractice claims,

the Trustee reiterates the Bankruptcy Court's conclusions that Mr. DeLong's efforts in defense of

the Commercial Factors litigation were excessive  "in light of the fact that Terry Manufacturing

never received the first tee shirt" which "could have been easily established with a modest

amount of effort" (Memorandum Decision at 14;  See Trustee's Objections ¶¶ 11, 12 13, 14), and

that the defenses which Mr. DeLong raised on Mr. Terry's behalf were "inconsistent with" and

"eviscerated" the defenses he raised on behalf of the Company.  Neither the Trustee's Objections

nor the Bankruptcy Court's Memorandum Decision's findings can define just how Mr. DeLong's

raising of this defense may have "eviscerated" any defense which Terry Manufacturing raised in

the case.  All of these assertions utterly ignore the incontestable facts that because of the nature

of Commercial Factors' fraud allegations against both the Company and Mr. Terry, especially

-20-

the manner in which it claimed Mr. Terry had effectuated the fraud against Commercial Factors

on the Company's behalf (on signed, company invoices), the "easily-established" "no Tee shirt

defense" would most likely have failed to insulate either Terry Manufacturing's or Rudolph

Terry from fraud liability to Commercial Factors. Indeed, when Terry Manufacturing filed a

motion for summary judgment stating that Rudolph Terry's actions were ultravires and of no

benefit to the Company, this effort did fail. [T. 560, ln. 4-16] Without the interruption of a

bankruptcy filing, Terry Manufacturing was to be tried by a jury based on the actions of

Rudolph Terry. Even within the bankruptcy, Commercial Factors has filed a proof of claim

against Terry Manufacturing and is, therefore, still pursuing Terry Manufacturing. In the event

that the Trustee is ever required to defend such an adversary action against Commercial Factors,

he will undoubtedly use the discovery, depositions and evidence gathered by Mr. Delong in the

Company's defense. These facts demonstrate that Mr. Delong's efforts were of value to and

consistent with is loyalty to the Company.

## (ii) Mr. DeLong's Specific Efforts Throughout the Commercial Factors Litigation Were Directed Toward and Valuable to Terry Manufacturing Company's Defenses.

In defending a company in litigation a defense counsel's role requires him to investigate

whether other parties may have had some involvement with the underlying claims, whether all

damages claimed by a Plaintiff are legitimate, to advise the client as to whether a case should be

compromised, and to prepare to present the most sympathetic and compelling presentation of the

evidence to a jury. [T. 379-382] Notwithstanding the Trustee's claims and the Bankruptcy

Court's unsupportable findings in the Memorandum Decision that Mr. DeLong's efforts were

dedicated solely to defending Rudolph Terry's interests, the evidence establishes that Mr.

-21-

Delong's every decision and action relating to Terry Manufacturing's defense in the Commercial Factor's litigation satisfied each of these roles.

Thus it is undisputed that after the close of discovery in the Commercial Factors litigation Mr. DeLong moved for summary judgment on behalf of Terry Manufacturing, based on ultra vires theories and that the trial court denied the motion. [T. 560, ln. 4-16] Based on the evidence presented in the summary judgment proceeding, any liability which might be assigned to Terry Manufacturing in the case would have been based on Rudolph Terry's actions. Moreover, the evidence before the trial court in the Commercial Factors litigation showing the close coordination of information and cooperation between Rudolph Terry and Roy Terry, the company's sole shareholders, directors and officers might even be seen by a jury as lending itself to the conclusion that Terry Manufacturing Company authorized, or at least ratified his actions. Accordingly, contrary to the Bankruptcy Court's apparent assumption and contrary to the Trustee's implication in his Objections, it is far from certain that Terry Manufacturing's success in the Commercial Factors would have been assured if only Mr. DeLong had presented the "no tee shirts" defense (which he did present) and if he had not simultaneously represented Rudolph Terry in the litigation. The Gwinnett County Superior Court's decision denying Mr. DeLong's summary judgment motion filed on the Company's behalf demonstrated that Terry Manufacturing faced a very distinct risk that a jury could find it liable for significant damages to Commercial Factors.

Mr. DeLong's and Mr. Thomas' work preparing the summary judgment motion was dedicated exclusively for the Company's benefit. Neither the Trustee nor the Bankruptcy Court could cite any evidence to rebut Mr. DeLong's testimony that all of the work done for Terry Manufacturing in the Commercial Factors case would not been necessary even if Mr. DeLong

-22-

and Mr. Thomas had only represented Terry Manufacturing, and not Rudolph Terry. [T. 604, ln. 22 – T. 605, ln. 22] Every effort of Mr. DeLong and Mr. Thomas was essential to Terry Manufacturing's defense in the Commercial Factors matter because Terry Manufacturing risked being found liable for the actions of Rudolph Terry. [T. 604, ln. 12-21] Thus Defendants demonstrated numerous specific instances where Mr. DeLong's and Mr. Thomas's prodigious efforts during the litigation were necessary and reasonable for and provided value to the Company and not merely to Rudolph Terry.

During the trial in the Adversary preceding the Court received much evidence regarding Mr. DeLong's efforts on behalf of Terry Manufacturing Company to quash Commercial Factors' attempts to obtain the accounting papers and deposition of Richard Rose, an accountant for Terry Manufacturing. When Commercial Factors attempted to depose him, Mr. Rose invoked the accountant/client privilege and refused to testify.  [T. 146, ln. 16 – T.147, ln. 1; T. 154, ln. 20 – T. 155, ln. 1; T. 175, ln. 18 -20]  The uncontradicted evidence reveals that the Terry brothers instructed Mr. DeLong that Terry Manufacturing was unwilling to waive the privilege and that they specifically directed him as the Company's counsel to implement that instruction without explanation and without revealing anything about the company's financial condition to Mr. DeLong. [Id., T. 178, ln. 18 – 24,  T. 179, ln. 22 – T. 180,  8; T. 534, ln 8-13]. It is undisputed that Mr. DeLong never saw the work papers upon which the Mr. Rose financial statements were based.  [T. 194, ln. 20 - 24] nevertheless, Mr. DeLong suggested that the clients could resolve the discovery dispute by simply agreeing to produce the statements under confidentiality order, but the Terry brothers refused the suggestion.[T. 178, ln. 18-24] Despite repeated attempts by all parties to obtain this accounting information (ultimately including the Trustee), Mr. Rose has never produced any work papers.  [T. 272, ln. 6 – 20]  While the Bankruptcy Court's

-23-

Memorandum Decision in the core proceeding interpreted these efforts "to thwart Commercial Factors' discovery" as being "designed to conceal the criminal activities of Rudolph and Roy Terry" this was pure speculation about the Terry Brothers intent in insisting that their attorney enforce an evidentiary privilege. However, there was no information available to Mr. Delong when he followed the Terry brothers' instructions to oppose the disclosure of its accounting information that Mr. Rose's work papers either were fraudulent or that they did not exist. It hardly is unusual for a company to invoke an evidentiary privilege relating to its accounting information; in fact the Trustee himself testified that **he** has refused to produce documents in a lawsuit based on an evidentiary privilege. [T. 292, ln. 4]  Moreover, it was reasonable for Mr. DeLong to oppose the release of such accounting information to Commercial Factors insofar as he testified that based on Commercial Factors prior improper attempts to injure Terry Manufacturing Company outside the litigation using information it had gathered in the discovery process during its attempts to depose McDonalds and other Terry Manufacturing customers, he reasonably believed that the Terry brothers were concerned that Commercial Factors could wreak additional harm on Terry Manufacturing if the accounting information was released. [See T. 62, ln. 21]

One example of Mr. DeLong's efforts directed to the Company's defense, and of the value which Terry Manufacturing derived from Mr. DeLong's efforts was in the Pouncey matter. [D-11, T. 126-130; T. 130, ln. 6-15; T. 131, ln. 17-24; T. 133, ln. 5 – 9; T. 588, ln 25 – T-589, ln 6; T.587, ln.12-16] Mr. DeLong's efforts with respect to Mr. Pouncey. To summarize, in his 2004 examination John Pouncey testified that Rudolph Terry actively participated in the underlying fraud against Commercial Factors.  [T. 126-130]  The trial court in the Commercial Factors litigation excluded the testimony, because Terry Manufacturing had not been given an

-24-

opportunity to cross-examine Mr. Pouncey in the 2004 proceeding and ordered that Mr. Pouncey to be deposed again. [D-11, T. 130, ln. 6-15] When he was deposed again, Mr. Pouncey testified that the invoices had been generated as the result of a plan that he and Tracy Eden, the President of Commercial Factors, had put into place to allow Floodgates to generate additional revenue. [T. 131, ln. 17-24] Mr. Pouncey later signed an affidavit confirming his deposition testimony. [T. 133, ln. 5 – 9; T. 588, ln 25 – T.589, ln. 6] The efforts directed at Mr. Pouncey left Terry Manufacturing in a much better position to defend itself against the Commercial Factors claims. Thus the Company realized substantial value from the work. [T. 587, ln.12-16]

Evidence of a further example of Mr. DeLong's efforts on behalf of the Company, and the benefits which Mr. DeLong reasonably expected the Company to derive from his efforts can be found in his efforts to enforce an aborted settlement agreement between the Company and Commercial Factors. When Mr. DeLong first entered the case, he was instructed by his client to attempt to resolve the matter with a consent judgment for $2,130,000 and a payment schedule. [T. 78-79; T. 424, ln. 21 –T. 425, ln. 4] This offer was refused. Uncontradicted evidence revealed that on August 17, 2000, the Gwinnett County trial judge in the Commercial Factors case, *sua sponte*, convened a settlement conference between the parties. Based upon the representations and undertakings that had been made before the end of the settlement conference, Terry Manufacturing's counsel, Mr. DeLong and Mr. Thomas, understood that the case had been settled. [T. 135, ln. 14 - 24] Thus when Commercial Factors Counsel subsequently repudiated the settlement, Mr. DeLong and Mr. Thomas filed a motion to enforce the settlement on behalf of Terry Manufacturing Company. [D-12; D-41] As with all other significant motions, Roy Terry was informed both of the putative settlement and the motion to enforce the settlement; and he approved of it. [T. 138, ln. 6 – 15, T. 468, ln 19 – T.469, ln 5; T.526, ln. 18-20] Even though

-25-

Terry Manufacturing continued to deny its liability for the factoring agreements, it was not unreasonable for it to attempt to settle the case where (as in the Commercial Factors litigation) the damages which conceivably could be returned against it were very substantial and where, as in the Commercial Factors case, the trial court had concluded that there was sufficient evidence for the Plaintiff's claims to survive summary judgment. The Trustee's suggestion that Mr. DeLong's settlement efforts were improper or unnecessary on behalf of the Company even was contradicted by his own expert who testified in agreement with his previous deposition testimony: "Well, the first thing is he did try to settle the case and there is nothing wrong with that . . ." [T.347, ln. 14-20]

Additional evidence that Mr. DeLong and Mr. Thomas directed their efforts for Terry Manufacturing's benefit rather than exclusively to protect Rudolph Terry's individual interests is obvious from the fact that Mr. DeLong and Mr. Thomas filed counterclaims and cross claims on behalf of and of potential value to Terry Manufacturing. [D-14, D-16, D-17; T. 170, ln 24 – T. 171, ln. 1; T-589, ln 10-23; T.590, ln. 2-11; D-19, T. 590, ln. 14-23] Still other efforts which were intended to inure to the Company's benefit in its defense included Mr. DeLong's and Mr. Thomas's efforts to obtain documents from GMAC, Commercial Factors' primary financing source. [D-20, D-21, D-22, D-23; T. 591-594] Despite vigorous efforts by Commercial Factors' counsel to prevent disclosure of such documents, Mr. DeLong succeeded in obtaining GMAC documents for Terry Manufacturing. The documents Mr. DeLong obtained revealed that GMAC had refused to accept Floodgates invoices as security for its loans, a potentially very damaging disclosure highly relevant to the Company's fraud defense insofar as it demonstrated the absence of the essential fraud element of Commercial Factors' reasonable reliance upon the Floodgates invoices to Terry Manufacturing. These documents further led to the discovery that Tracy Eden,

-26-

Commercial Factors' President, was personally managing the Floodgates' accounts. [Id.] These facts significantly bolstered Terry Manufacturing's defenses against Commercial Factors fraud claims, including its defense that Tracy Eden always was aware that Floodgates invoices to Terry Manufacturing did not represent goods it actually sold to Terry Manufacturing. Thus, Mr. DeLong's and Mr. Thomas's efforts to obtain this information provided substantial value to Terry Manufacturing.

While the Trustee contends that Mr. DeLong's efforts to resist Commercial Factor's attempts to obtain depositions from several of Terry Manufacturing customers, including McDonalds and Perseco, was only an effort to conceal Rudolph Terry's fraud,  Mr. DeLong credibly explained in his testimony that he opposed these depositions because he believed the testimony of these entities would be beyond the scope of permissible discovery and that these entities possessed no evidence of relevance to the Commercial Factors case against Terry Manufacturing  [T. 62, ln. 21] Mr. DeLong reasonably understood that the Terry Brothers' opposition to this discovery rightly was based on their real concerns that if Terry Manufacturing's largest customers, such as McDonald's, learned that the Company was being sued for millions of dollars, they would look "askance on that" regardless of the outcome of the litigation., thus harming the Company's business  [T. 68, ln. 2-11] Hence, Terry Manufacturing filed motions for protective orders to preclude depositions of its customers. [D-39; T. 116; D-42; T. 139]  The Gwinnett County Superior Court (which hardly can be accused of intervening to assist in covering up a crime with its rulings) granted the Company's Motion for Protective Order, obviously agreeing that the attempted customer depositions would be improper and would exceed the scope of legitimate discovery. [T.569, ln. 9-23]

-27-

Mr. DeLong prepared and filed a Motion for Summary Judgment on May 15, 2003. [D-25] along with a supplemental pleading entitled, "Rudolph Terry Is Not the Agent or Alter Ego of Terry Manufacturing As Pertaining to the Issues Now Before this Court" which he filed on June 17, 2003. [D-27] In these documents he argued, among other theories, that the acts alleged against Rudolph Terry were ultra vires with regard to Terry Manufacturing Company, and that the Company therefore was not liable to Commercial Factors.  [D-25, D-26, D-27] Ultimately, the trial Court denied the Company's Motion for Summary Judgment on the *ultra vires* defense. [T. 560, ln. 4-16]  Neither the Bankruptcy Court's Memorandum Decision, nor the Trustee's Objections show or even contend that the court rejected the defense because of any alleged failure by Mr. DeLong to exercise the requisite level of care, skill or diligence in making these defense arguments. The Court must *presume* that the Gwinnett Superior Court so ruled because it regarded the *facts* alleged by Commercial Factors and Terry Manufacturing pertaining to Rudolph Terry's authority to act on the Company's behalf genuinely were disputed. See, *Ehlers v. Schwall & Heuett*, 177 Ga.App. 548, 340 S.E.2d 207 (1986).

### (iii)  Mr. Delong Otherwise Exercised the Requisite Degree of Care, Skill, Diligence and Loyalty to Terry Manufacturing Company.

Mr. DeLong breached no duty of care, skill, or diligence when he filed the Company's initial Answer and Counterclaim admitting that the Company owed $ 2.1 million to Commercial Factors.  In preparing and filing the Answer, Mr. DeLong rightfully relied upon the information and documents which had then been made available to him by Rudolph and Roy Terry.  Prior to the Company's hiring of Mr. Thomas and Mr. DeLong to represent it, Rudolph Terry had already

-28-

admitted to Commercial Factors' attorneys that Terry Manufacturing owed them that money. When Mr. DeLong first entered the case, he was instructed by his client to attempt to resolve the matter with a consent judgment for $2,130,000 and a payment schedule. [T. 78-79; T. 424, ln. 21 –T. 425, ln. 4] There is no evidence revealing that when he filed the Answer and Counterclaim Mr. DeLong knew, nor suggesting that he could have learned that Terry Manufacturing never had received any T-shirts from Floodgates after the 1996 Olympics. As demonstrated above, even had he raised the "no Tee-shirt factual defense," it would not necessarily have been a successful defense to Commercial Factors claims. Accordingly, the Company's admission that Terry Manufacturing owed $2.1 million dollars to Commercial Factors, was not malpractice.

While the Trustee's Objections (and the Bankruptcy Court's Memorandum Decision) characterize the $2.1 million admission in the Answer as merely an effort to conceal Rudolph Terry's fraud, this again betokens their own *post-factum omniscience*. There is no evidence suggesting that, when he filed the Answer and Counterclaim, Mr. DeLong knew of the fraud, nor that he was aware of or suspected any fact other than those the Terry brothers had told him, *i.e.,* that Terry Manufacturing owed that sum to Commercial Factors. Indeed, the record is replete with examples of the Terrys withholding key information. Both Rudolph and Roy Terry caused their wholly-owned company, Terry Manufacturing, to maintain two (2) sets of tax returns, and other highly misleading or outright fraudulent financial records. They were not honest with their financial reporting to their creditors, their lenders, or their vendors, nor with their Attorneys. [T. 269, ln. 25 – T. 270, ln. 23] Part of their scheme was to "prevent people from finding out that they were truly insolvent when they were telling people that they were not, most notably their creditors." [T. 271, ln. 3-7] The only evidence in the record reveals that, following the same pattern, the Terry brothers concealed the information about the Company's financial condition

-29-

from both Mr. DeLong and Mr. Thomas. The Terry brothers testified that they did this because they had concluded that this information was not necessary for the defense of the Commercial Factors litigation. [T. 419, ln. 16 -T. 420, ln. 15; T. 522, ln. 17 – T. 523, ln. 11; T. 609, ln. 7-14] Neither Mr. DeLong nor Mr. Thomas had any access to the Company's financial records. [T. 522, ln. 21 - T. 523, ln. 3]

Both Terry brothers subsequently were found guilty of fraud against Terry Manufacturing Company's creditors. However, neither brother disclosed their fraud to Mr. DeLong or Mr. Thomas **prior to** filing their bankruptcy petition. Even after filling the bankruptcy petition Rudolph Terry maintained that he had committed no fraud because Floodgates' principle, Jon Pouncy, and Commercial Factors principal, Tracey Eden were both aware that the Floodgates invoices to Terry Manufacturing which he had signed and which Commercial Factors held did not represent actual goods which Floodgates sold to Terry Manufacturing, but were intended to serve as guarantees for Commercial Factor's loan to Pouncey's company, Floodgates. [T. 131, ln. 17-24; 133, ln. 5 – 9; T. 588, ln 25 – T.589, ln. 6] Neither the Trustee nor the Bankruptcy Court can identify a scintilla of evidence that either Terry brother made Mr. DeLong aware of any scheme to defraud Commercial Factors.

Indeed, the Trustee's Objections and the Bankruptcy Court's Memorandum Opinion ignore the significant likelihood that, had Mr. DeLong not taken the defensive positions he took in the Company's behalf, Terry Manufacturing *could have been found liable* to Commercial Factors for an amount far in excess of the $2.1 million he admitted in the litigation. Even if Rudolph Terry's fraudulent acts exceeded the scope of his authority when he committed them, the evidence eventually uncovered in the litigation was likely to be argued to and found by a jury to prove that both Roy Terry and Terry Manufacturing *ratified* Rudolph's otherwise *ultra vires*

-30-

actions. As shown above, Commercial Factors claimed far *more* than $2.1 million against Terry Manufacturing as the litigation progressed.

Thus the potential liability against which Mr. DeLong was defending Terry Manufacturing Company (and not merely Rudolph Terry as the Trustee contends) was far more significant than either the Trustee's Objections or the Bankruptcy Court's Memorandum Decision assume. Therefore, the Trustee's Objections contending that there was great disproportionality between Terry Manufacturing's fees paid to Mr. DeLong and Mr. Thomas over the three and one-half year course of the Commercial Factors litigation and its potential liability to Commercial Factors' does not demonstrate malpractice. The Bankruptcy Court's decision to examine the issues and events from its post-factum vantage point which affords it 20/20 hindsight which Mr. DeLong's could not have possessed when he was making the litigation strategy decisions and choices is clearly inappropriate. Unfortunately, Mr. DeLong did not possess the information now available to the Court, and his every decision had to be based on the admittedly partial information disclosures which the Terry brothers meted out to him.

While an attorney has a duty of diligence to investigate facts and documents which reasonably are available to him before taking positions and making decisions in litigation, the standard of ordinary care, skill and diligence applicable to Georgia attorneys does not presume that an attorney will be *omniscient.* Nor do Georgia's standards of care require an attorney to disregard, cross-examine, or disbelieve the information the client provides to him. See *Kluge v. Renn,* 266 Ga. App. 898, 904 (Ga. App. 1997) (finding that the lawyer had no reason to question the truth of the facts and that the facts were sufficient enough for a reasonable attorney to conclude that a colorable inference existed in support of the [client's] claim). Neither the Trustee's Objections, nor the Bankruptcy Court's Memorandum Decision cited any testimony or

-31-

other evidence suggesting that Mr. DeLong ignored any document, failed to interview any witness, or otherwise failed to diligently investigate or willfully disregarded information revealing the true facts that was available to him *at the time* that he made his decisions and took the actions to defend Terry Manufacturing Company in the Commercial Factors litigation. Terry Manufacturing, whose sole directors, shareholders and officers concealed all information regarding their fraud schemes from Mr. DeLong as much as from their creditors, cannot claim that Mr. DeLong committed malpractice by admitting to the $2.1 million liability in the Company's initial Answer and Counterclaim. The Trustee, who succeeds to the same rights that the Terry Manufacturing would have had if it had not filed for bankruptcy protection, has no greater right to claim malpractice than would the Company. In re: Bay Area Material Handling, Inc., 1995 WL 747954 (N.D.Cal.,1995) (As the representative of the debtor's estate, the trustee has the right to pursue those claims which are estate property. )

While the vantage point from which the Bankruptcy Court and the Trustee have viewed the facts in the case has afforded them the luxury of 20/20 hindsight, Mr. DeLong's compliance with his duties of care in defending Terry Manufacturing Company only can be judged from the facts *as they were made available to Mr. DeLong by the Terry brothers* when he made each decision during the Commercial Factors litigation. It manifestly is both unjust and illogical to presume (as do the Trustee's Objections and the Bankruptcy Court's Memorandum Decision) that Mr. DeLong enjoyed the very same knowledge of the facts that the Trustee and the Bankruptcy Court now have –some seven years after the events transpired) when he made the decisions and took the actions which the Trustee contends were malpractice.

The Trustee's Objections claim that the Bankruptcy Court's finding in its Memorandum Decision that Mr. DeLong's efforts to "thwart Commercial Factors' discovery" were designed

-32-

"to conceal the criminal activities of Rudolph and Roy Terry and not to defend Terry Manufacturing" (Objection ¶10) is evidence of malpractice. The Trustee fails to show how attempting to thwart an opponent's discovery efforts could have prejudiced Terry Manufacturing's defense against Commercial Factors claims. He can cite no relevant case holding that attempting on behalf of a client to resist an opposing party's discovery efforts breaches the standard of care applicable to an attorney's defense of a client. Once again the Trustee ignores the facts (as did the Bankruptcy Court in its Memorandum Decision) that Mr. DeLong knew nothing of the Terry brothers' fraud and that in opposing discovery of Terry Manufacturing's accountant, Mr. DeLong acted in accord with the explicit instructions of the Terry brothers. As far as Mr. DeLong had reason to know when he opposed the discovery, Commercial Factors' subpoena for Mr. Rose's records and deposition was no more than another example of what he the Terry brothers had led him to believe were Commercial Factors' over-reaching efforts to extort sums from Terry Manufacturing Company to which it was not entitled. [T. 62, ln. 21] The Bankruptcy Court's Memorandum Decision speculates that the Terry brothers' gave these instructions solely in an effort to conceal their fraud, the only facts that the brothers made available to Mr. DeLong when he pursued this course led him to believe his effort was part of a legitimate defense of the Company's position and assets. There is neither any contention nor evidence showing that, in light of the facts available to Mr. DeLong at the time, this was an unreasonable belief.

-33-

### D.    No Un-waivable Conflict Existed Between Terry Manufacturing and Rudolph Terry, and Any Conflict that Arose in Mr. DeLong's Representation of Terry Manufacturing and Rudolph Terry was both waivable and waived by his clients.

### (i) The Commercial Factors Litigation Presented No Unwaivable Conflict

Plaintiff has alleged that the situation presented to Mr. DeLong was an unwaivable conflict. A lawyer cannot represent a client, against a former client, in an action involving the same general subject matter which grows out of an event that occurred during the time of representation. *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720, 373 S.E.2d 749 (1988). The only type of litigation legal conflict that cannot be waived is one where an attorney represents both sides in the same litigation. [T-646, ln.16-22] See *Keohane v. Keene*, 2006 WL 1275056 (N.D.Ga May 8, 2006)(Story, J.) which held:

> Under the Georgia Rules of Professional Conduct, the simultaneous
> representation of parties whose interests in litigation may conflict, such as
> codefendants in a civil action, constitutes a "waivable" conflict.

It is also relevant that both Roy Terry and Rudolph Terry are sophisticated businessmen who were able to understand Mr. DeLong's discussions of the risks of simultaneous representation and to render informed consent. The level of client sophistication is a factor that courts have considered in determining whether there has been a conflict of interest under Rule 1.7. See also *Minnesota Tax Court v. County of Anoka*, 2006 WL 771932 (Minn.Tax Regular Div.), at *3 (denying disqualification of attorney whose sophisticated client consented in writing to continued representation after disclosure of potential risks). Ronald E. Mallen and Jeffrey M.

-34-

Smith, Legal Malpractice (ThomsonWest, 2006 edition), sec. 16.1-16.20; sec. 30:11-30:14 (The discussions of this treatise on conflicts of interest issues suggests that it is unlikely that a court would hold an attorney liable for malpractice or breach of fiduciary duty when he complied with the conflicts requirements of the aforesaid Canons of Ethics). [D-34]

   *Forrest v. Baeza*, 58 Cal.App. 65 (1997), and *First Nat'l Bank of Chattooga County v. Rapides Bank & Trust Co.*, 145 Ga.App. 514, 244 S.E.2d 51, 54 (1978), require no different result. In *Forrest*, the purported waiver of conflict was signed by only 2 of the 3 company shareholders. Here, ***one hundred percent*** (100%) of Terry Manufacturing's shareholders consented to the waiver of the conflict. In addition, the Court found it very significant that the underlying matter in *Forrest* was a derivative suit and stated: "This consent rationale seems peculiarly inapplicable to a derivative suit, because the corporation must consent through the directors, who, as in the present case, are the individual defendants." As the Court noted, "In the context of the third disqualification motion-the only one before us for review-the corporations are nominal defendants in a shareholder's derivative suit. In such a suit, the corporation, while nominally a defendant, is actually a plaintiff; if the allegations of Ricetti's cross-complaint are proved, the corporations stand to benefit from recovery for the Forrests' wrongful actions." In *First Nat'l Bank*, also an attorney disqualification matter,[5] the same attorney represented both a Plaintiff and one of the Defendants in the same litigation. Defendants do not deny that there are conflicts which may not be waived; but the potential conflict presented in Mr. DeLong's simultaneous representation of Terry Manufacturing and Rudolph Terry individually was not one

---

[5] Significantly, Commercial Factors never sought to disqualify Mr. Delong during that litigation. Although the Court certainly could have raised that issue, *sua sponte*, it never did.

of them. The Trustee cited no cases (and apparently the Bankruptcy Court could find none) in which a court found such unwaivable conflicts other than cases which involve attorneys who necessarily would be representing parties on both sides of the same litigation: For example, where an attorney represents both sides in a divorce. [6] Here, regardless of any rights that Terry Manufacturing might have asserted against Rudolph Terry individually, the evidence is conclusive and uncontroverted that Roy Terry, the only other (and the majority) shareholder and sole other director was determined *not to pursue* or authorize any legal claim to be pursued against his brother, Rudolph Terry. Consequentially, the conflict risks which the court highlighted in *Forrest* were not present in Mr. DeLong's defense of both Terry Manufacturing and Rudolph Terry against Commercial Factors' claims. [T. 507, ln. 9 – T. 508, ln. 19; T. 519, ln. 13-24]

### (ii) Terry Manufacturing Company Properly Waived Any Actual or Potential Conflict of Interests Between Itself and Rudolph Terry in the Commercial Factors Litigation.

The Trustee raised a number of theories in his claim that Mr. DeLong had a conflict of interest in representing both Terry Manufacturing and Rudolph Terry. To evaluate them it is necessary to note that the Georgia Supreme Court adopted the Georgia Rules of Professional Conduct (hereinafter "Georgia Rules") on January 1, 2001. Prior to January 1, 2001, (when Mr.

------

[6] The Trustee's expert, Mr. Beltran, demonstrated his highly unorthodox, absolutist views on conflicts wherein he opined that a single lawyer cannot simultaneously represent both a corporation and an individual who is its sole shareholder and President. [T. 385-386] Accordingly, in Mr. Beltran's distorted view, where a claim is brought alleging wrongdoing by a one-person corporation and its sole owner, the corporation and its owner would be required to retain two attorneys for the purpose of asserting claims against each other, an absurd result which finds no support in any reputable legal authority. [T.647, ln.3-T.648, ln.7]

-36-

DeLong agreed to represent both Terry Manufacturing and Rudolph Terry in the Commercial

Factors case) the ethical rules required by the State Bar of Georgia were contained in the Canons

of Ethics and Ethical Considerations (which are generally aspirational) and in related Directory

Rules. [T. 306, ln. 13-16]

The law is, at best, an inexact science, and a breach of duty arises only when the relevant,

*(i.e.,* legal) principles or procedures are well settled, their application is clearly demanded, and

the lawyers failure to apply them is apparent. "[U]nless the law is so well settled, clear, and

widely recognized, an attorney acting in good faith and to the best of his knowledge will be

insulated from liability for adverse results." *Jones, Day, Reavis & Pogue v. American*

*Envirecycle, Inc.*, 217 Ga.App. 80, 456 S.E.2d 264 (1995) (citing *Berman v. Rubin*, 138 Ga.App.

849, 853, 227 S.E.2d 802 (1976))  Plaintiff's own expert admitted that the perfect vision and

wisdom of hindsight is an unreliable test for determining the existence of legal malpractice. [T.

377, ln. 22 –T. 378, ln. 17]

When he filed his original Answer, Mr. DeLong thought that the Commercial Factors

claim was merely a "collection case where the plaintiff was trying to get more money than it was

entitled to receive, and my job was to determine what an appropriate amount was." [T. 70, ln. 4-

8] Commercial Factors had asserted no fraud claim either against the Company or against

Rudolph Terry. Thus there was no apparent potential for a conflict of interest at that time. [*Id.*].

In fact, before he filed the Answer [D-32] Rudolph Terry provided him with a verified statement

attesting to the accuracy of the allegations in the Answer including that the defendant was

"indebted to defendant Floodgates for an amount that has been incurred in the ordinary course of

business dealings between itself and defendant Floodgates." [T. 71, ln. 4-14]

-37-

In considering the Trustee's Objections to the Bankruptcy Court's Proposed Findings and Conclusions dismissing the malpractice claims, Defendants respectfully submit that the Court should be mindful that, as the Commercial Factors litigation progressed, Mr. DeLong was presented with increasingly complex factual and legal issues. It was no longer just "a collection case." As noted above, evidence was presented (and denied) that Tracy Eden, Commercial Factors President, knew that Floodgates' invoices to Terry Manufacturing were fraudulent prior to advancing funds to Jon Pouncey. [T. 76, ln. 25 T. 77, ln. 2; T. 466, ln 12-17] Thus, in the initial Answer, Terry Manufacturing admitted that it was liable for some of the guaranteed invoices [T. 76, ln. 17-21] because Mr. DeLong's client had instructed him to make that admission in an attempt to resolve the matter through an agreed-payment schedule to be entered as part of a consent judgment for $2,130,000. [T. 78-79; T. 424, ln. 21 –T. 425, ln. 4] As the litigation began to unfold, Mr. DeLong noted, "I had spent a great deal of time trying to find out exactly what it was that was going on, and [the litigation] was a living, breathing animal." [T. 152, ln. 18 - 22] He also noted that sometimes, "clients tend to tell their lawyers what they think their lawyers need to know in some circumstances." [T. 120, ln. 14-16] Even the Trustee's own expert, Mr. Beltran, agreed "Every lawyer has been in that situation" where a "client dribbled out information to their attorney as opposed to just putting the whole story on the line the first day." [T. 372, ln. 22 –T. 373, ln. 5]

Several months after the litigation began, in approximately May 2000, Commercial Factors counsel first raised the issue of fraud, and suggested that Rudolph Terry had been an active participant in the fraud. Mr. DeLong reported that information to Rudolph Terry and immediately advised him that the fraud claim created a potential conflict between Mr. Terry, personally, and Terry Manufacturing Company. Mr. DeLong also advised Rudolph Terry that it

-38-

might be necessary for him and Terry Manufacturing Company to have separate counsel, because the Company might need to respond differently to Commercial Factors fraud assertions than Mr. Terry individually would respond. [T. 94, ln. 4-17; T. 442, ln. 5-19]  Mr. DeLong informed both Rudolph and Roy Terry that if Rudolph Terry was involved in fraud, there would be "significant issues whether he was acting within the scope of his authority, whether the Company would have acquiesce in the fraud, you know, that sort of thing." [T. 93, ln. 13-21] Finally, Mr. DeLong advised Rudolph Terry to discuss the matter with his brother Roy, and advised that the Terry brothers should obtain the advice of another lawyer on the question of the conflict.  Both Terry brothers continually rejected Mr. DeLong's repeated suggestions that they retain separate counsel to represent Rudolph Terry until after a criminal indictment was filed against Rudolph Terry.  [T. 92-93; T. 575, ln. 1 - T. 576, ln. 9]

As set forth in detail in the Bankruptcy Court's Proposed Findings of Fact, Roy Terry, Rudolph Terry, Mr. Thomas and Mr. DeLong had at least three or four such conversations regarding conflicts over the course of the months. [T. 513, ln. 9 - T. 515, ln. 25; T. 124, ln. 21-22; T. 442, ln. 20 - T. 444, ln. 15]  Each time, Mr. DeLong's emphasis on the potential conflict was "ratcheted up." [T. 413, ln. 7-17; T. 414, ln. 7-13] Roy Terry was involved in all of these conversations.  [T. 442, ln. 20 - T. 444, ln. 15] Assuming the conflict could be waived, Roy Terry would have been the proper person authorized to consent to the waiver. [T. 361, ln. 17-20; T. 509, ln. 2 – T. 510, ln. 7]

As the Trustee's expert conceded, closely held companies, like Terry Manufacturing, often base their decisions on somewhat different criteria than publicly-traded companies. [T. 361, ln. 25 –T. 362, ln. 3 (Beltran testimony)] Terry Manufacturing was not legally-required to file a claim or pursue any rights against Rudolph Terry. [T. 362, ln. 4-24] Mr. DeLong had no

-39-

authority to bring such claims against Rudolph Terry without the authorization of his client. [T. 363, ln. 4-7] Roy Terry testified that he was determined not to let Commercial Factors "split up" the two of them, either as brothers, or as the Company's sole shareholders. [T. 99, ln. 4-5; T. 506, ln. 1 – T. 508, ln. 19] Roy Terry thus waived any conflicts that might have arisen between the Company and Rudolph . [T. 509, ln. 21-24; T. 517, ln. 2-8]

Continued representation by one counsel of two different parties in litigation is permitted when the attorney believes that he or she can provide competent and effective representation to both parties, and where the attorney has discussed the issue with both parties and obtained their informed consent. (T. 638, ln. 21-T. 639, ln. 3)  Mr. DeLong clearly met this standard..

### (iii)    Roy Terry Always Had Sufficient Information to Meaningfully Have Waived Any Conflict on Behalf of Terry Manufacturing Company

A valid waiver of a conflict of interest must "at least acknowledge the disclosure essential to an informed decision and consent." *In re Estate of Peterson* 255 Ga.App. 303, 565 S.E.2d 524 (2002). Roy Terry had sufficient information to make a valid waiver of the potential conflict of interest between Terry Manufacturing and Rudolph Terry.  Roy Terry had authorized his brother to do business with Floodgates and to make personal loans to John Pouncey using the company's money. [T.532, ln. 10-19] Roy Terry knew his brother was trying to settle the Commercial Factors dispute over the Floodgates invoices before the Company engaged Mr. DeLong, and did not object to it. [T. 496, ln 10-23] Roy Terry read the Commercial Factor's Complaint when it was filed. [T. 496, ln. 4-5]  He understood that Commercial Factors was seeking to add a fraud claim against Terry Manufacturing based on Rudolph Terry's actions. [T. 502, ln 24 - T. 503, ln. 21]  He read the Amended Complaint and received other pleadings and significant documents from the Commercial Factors Litigation matter.  [T. 511, ln. 24 – T. 512, ln. 19]  He authorized

-40-

Mr. DeLong to file an Answer that Terry Manufacturing was liable to Commercial Factors for some amount, in order to try and get the case settled. [P-35; T. 528, ln. 4 – T. 529, ln. 17]  Roy Terry was informed of the settlement brokered by the Court in the Commercial Factors case and the motion to enforce the settlement and approved of it. [T. 138, ln. 6 – 15, T. 468, ln 19 – T. 469, ln 5; T. 526, ln. 18-20] When contradictory testimony from John Pouncey became an issue, Roy Terry was informed of this as well. [D-11, T. 130, ln. 6-15]  The Trustee has not identified a single item of relevant information material to Roy Terry's waiver of the potential conflict or to Mr. DeLong's actions in the Commercial Factors litigation that Roy Terry did not possess when he consented to them. .

Roy Terry remained informed about the litigation throughout its entire course. During the pendency of the Commercial Factors case, Roy Terry spoke with Mr. DeLong or Mr. Thomas at least every week or two, and as often as two to three times in the same day during periods of intense activity. [T. 516, ln. 1 -12] Mr. DeLong never refused requests by Roy Terry for information, documents or refused to answer Roy Terry's questions. [T. 510, ln. 8 – 20; T. 513, ln. 6 -8]  Roy Terry was aware of all significant aspects of the Commercial Factors case because he spoke regularly with Rudolph Terry, spoke with the attorneys and reviewed pertinent documents. [T.516, ln. 13-20]  Rudolph Terry never instructed his counsel to withhold any information from his brother. [T. 416, ln. 16-21]  Roy Terry would never have authorized a legal claim against his brother. [T. 519, ln. 13-24]

As far as Mr. DeLong knew, Roy Terry was aware of the loan transactions that Rudolph Terry described; not later than by the time Mr. DeLong entered the case. [T.157, ln. 12 – T. 158, ln. 4; T. 159, ln. 22; T. 160, ln. 9] Mr. DeLong understood that Roy Terry was aware of these loans that Rudolph Terry had made to John Pouncey and the course of dealings between Rudolph

-41-

Terry and John Pouncey. [T. 150, ln. 2 -10; T. 151, ln. 13-17] ([M]y understanding was that Roy and Rudolph were both very familiar with whatever it was that Rudolph was doing with Pouncey and he was doing it with Roy's blessing or at least with Roy's consent and approval.") [T. 152, ln. 1-8 ("I had two people who owned at this company whose lives, as far as I could tell, were devoted to this company. We weren't dealing with General Motors or one of its officers where we had any number of people who could do something. Every decision that was to be made by this company was made by these two people, and it was my impression that, when I spoke to them and I got a response from them, that that was the definitive response on whatever issue it was.")]

While the Terry brothers lived and worked in different locations, they frequently communicated with each other about company business, speaking to each other two to three times each day. [T. 504, ln 1 -25]

The evidence belies the obvious factual mis-assumption underlying much of the Trustee's claims against Mr. DeLong: that Mr. DeLong knew Rudolph and Roy Terry were defrauding their creditors. In fact , Mr. DeLong had no such knowledge at least until the events immediately preceding their filing of the bankruptcy petition. The evidence clearly reveals that Rudolph and Roy Terry, and their wholly owned company, Terry Manufacturing, kept two sets of tax returns, that were highly misleading or outright fraudulent financial records. The Terry brothers were not honest with their financial reporting to their creditors, their lenders, or their vendors. [T. 269, ln. 25 – T. 270, ln. 23] Part of their scheme was to "prevent people from finding out that they were truly insolvent when they were telling people that they were not, most notably their creditors." [T. 271, ln. 3-7] Following the same pattern, the Terry brothers shared no information about the Company's financial condition with either Mr. DeLong or Mr. Thomas, stating that this was not

-42-

necessary for the defense of the Commercial Factors litigation. [T. 419, ln. 16 -T. 420, ln. 15; T. 522, ln. 4-6; T. 609, ln. 7-14 ] Rudolph Terry obviously withheld other information from Mr. DeLong. [T. 436, ln. 10-22; T. 440, ln. 18 – T. 441, ln. 2]

The evidence supports the conclusion that both Roy Terry and Rudolph Terry were completely aware of the underlying transactions and, at the time, chose not to provide this information to Mr. DeLong. At the very least, Roy Terry was completely familiar with the underlying circumstances of the factoring transaction and the course of the Commercial Factors Litigation so to have made an informed waiver of any conflict of interest.

## (iv) The Disclosures to and Waiver Which Mr. DeLong Obtained from Terry Manufacturing Were Effective  Because Standard 30 Was Inapplicable.

In his argument before the Bankruptcy Court the Trustee alleged that Mr. DeLong's failure to make the conflict disclosures in writing and to obtain Terry Manufacturing's waivers in writing rendered both his oral disclosures of the conflict potential and the Terry brothers' oral waivers of those conflicts invalid because Mr. DeLong  alleged financial interest in the litigation. Standard  30 of former Bar Rule 4-102(d) provides:

> Except with the written consent or written notice to his client after full disclosure a lawyer shall not accept or continue employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests.

Georgia courts have interpreted Standard 30  as applicable to such situations as where an attorney's financial interests include loaning a client's money to the attorney's own company (*In re Oellerich*, 278 Ga. 22, 596 S.E.2d 156 (2004));  entering into a lease purchase agreement with a client (*In re Queen*, 277 Ga. 348, 594 S.E.2d 323 (2003), drafting a will naming the drafting attorney as an executor (*In re Estate of Peterson*, 255 Ga.App. 303, 565 S.E.2d 524 (2002);

-43-

entering into kickback schemes with a client (*Matter of Henley*, 267 Ga. 366, 478 S.E.2d 134

(1996); and engaging in sexual relationships with clients (*Matter of Lewis*, 262 Ga. 37, 415

S.E.2d 173 (1992). None of these cases found such a financial interest requiring written

disclosures and waivers in any situation which remotely is analogous to the issues herein. Where

the applicable general required no written disclosure, the Trustee's suggestion that the disclosure

must be in writing if the attorney is being paid for his services offends both logic and law. In

such a case, the exception would completely "swallow the rule. [T.648, ln.24-T.649, ln.9]

## (v) The Disclosures to and Waivers Which Mr. DeLong Obtained from Terry Manufacturing Company Were Effective Because Standard 69 is Inapplicable to This Case

The Trustee further argued to the Bankruptcy Court that Standard 69 of the Georgia

Rules of Professional Conduct invalidated the Terry brothers' oral waivers of the conflict of

interests in the Commercial Factors by requiring that such waivers be to be in writing. Standard

69 provides:

> A lawyer shall not represent a client whose interests are adverse to the interests of a
> former client of the lawyer and any matter substantially related to the matter in which the
> lawyer represented the former client unless he has obtained written consent of the former
> client after full disclosure.

Standard 69 is inapplicable because it was not in effect at the time when Mr. DeLong

entered into the attorney-client relationship with Terry Manufacturing Company, nor later when

the potential conflict became apparent and he advised the Terry brothers his advice concerning

the conflict nor when he received the Terry brothers' waivers of the conflict and instructions to

continue representing both the Company and Rudolph Terry in the Commercial Factors

litigation. As shown above, the Trustee cannot contest that Mr. DeLong ensured that both of the

-44-

sole voting shareholders, directors and officers of the company, Rudolph and Roy Terry always remained fully aware of the litigation and were intimately involved in the decision making responsibilities.

### (vi) Whether the Conflict Waiver Was in Writing Has No Relevance Because both of the Company's Sole Owners Admitted They Would Not Have Done Anything Different Had The Disclosures Been Provided and Their Waivers Been Sought in Writing.

Neither Mr. DeLong's disclosure of the potential conflict of interest presented by his simultaneous representation of the Company and Rudolph Terry nor the Terry brothers' consent at issue herein was in writing when the conflict arose prior to January 1, 2001, the applicable ethical standards in place in Georgia required no written notice nor written waiver. Regardless, the fact that Mr. DeLong did not submit his recommendations concerning a conflict in writing to the Terry brothers however, made no difference in the Terry brothers' decision-making, nor in the outcome of the Commercial Factors litigation. [T. 416, ln. 22 – T. 417, ln. 14; T. 519, ln. 2-12] Roy Terry emphatically testified he would never have authorized a legal claim against his brother. [T. 519, ln. 13-24] Both Roy and Rudolph Terry testified at the trial in the Adversary proceeding that, knowing everything he knew "up until that very moment" (i.e. at the trial of this matter in 2007) each would have made the same decision to continue retaining Mr. DeLong and Mr. Thomas' as co-counsel for both Terry Manufacturing and Rudolph Terry. [T. 417, ln. 19 - T. 418, ln. 2; T. 520, ln. 2 - T. 521, ln. 9]  According to Rudolph Terry:

> "No. The results related to that were the results that we were seeking. Terry Manufacturing Company was never subjected to the three plus million dollars in judgments and award of dollars that were being sought by the other parties. So the results that we were seeking were achieved." [T. 417, ln. 23 – T. 418, ln. 2]

-45-

According to Roy Terry,

"I think they gave adequate good representation, and I don't see that someone else could have done any better." [T. 521, ln. 6-9]

## E.    Even if a Breach of the Standard of Care Had Been Shown, the Bankruptcy Court's Decision Dismissing the Malpractice Claims was Correct because the Trustee Can Not Demonstrate Either Causation or Damages

It is axiomatic that any breach of an attorney's duty must **result** in damages to the client to make out a claim for legal malpractice. *Tante v. Herring*, supra. 264 Ga. 694, 453 S.E.2d 686 (1994).[7] See *De La Maria v. Powell, Goldstein, Frazer & Murphy*, 612 F.Supp. 1507 (D.C.Ga. 1985) Mr. DeLong has testified as to the reasonableness of his representation and he enjoys the legal presumption that it was done within the standard of care. To show causation, Plaintiff must produce evidence that had Rudolph Terry obtained separate counsel, something different would have occurred in Terry Manufacturing Company's case. Plaintiff has not done so.

In *Tante v. Herring*, 264 Ga. 694, 453 S.E.2d 686 (1994), the attorney apparently engaged in a sexual relationship with a client during the representation. However, the Court noted that the attorney procured "precisely the results for which he was retained" (recovery of social security disability benefits). The Supreme Court held, "a satisfactory result under an

---

7 As the Georgia Supreme Court long has recognized, an alleged violation of the Code of Professional Responsibility or the Standards of Conduct, " standing alone, cannot serve as a legal basis" for a legal malpractice action. *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 453 S.E.2d 719 (1995)(*Citing Davis v. Findley*, 262 Ga. 612, 422 S.E.2d 859 (1992) )

agreement for legal services by necessity precludes a claim for legal malpractice.[8]" *Id.*, at 694, 687.

As to the actual case in which the breach is alleged to have occurred, Terry Manufacturing never was found liable to Commercial Factors for any amount of money. [T. 63, ln. 20 – T. 64, ln. 5; T. 291, ln. 16 - 20 ] Indeed, despite initially seeking damages in excess of three million dollars, and, eventually, in excess of ten million dollars, Commercial Factors was only willing to file a proof of claim under oath in the bankruptcy court for $1,793,000.42. [D-1, D-2, D-4, T. 563-564; T. 284, ln. 4 -18] Mr. Beltran, the Trustee's expert, summed up the causation issues:

> Q: And you really have no information, no evidence, that would lead you to believe that Terry Manufacturing would have received a different result with different lawyers; do you?
>
> A: No.
>
> [T. 376, ln. 18-21]

The only "adverse" consequence that the Plaintiff has claimed as having resulted from Mr. DeLong's representation of the Company and Rudolph Terry in the Commercial Factors litigation is that the Company paid legal fees. [T. 376, ln. 1-17] While characterizing the fees as excessive or grossly disproportional to Terry Manufacturing Company's potential liability, neither the Trustee nor the Bankruptcy Court denies that Mr. DeLong and Mr. Thomas actually

---

8 The Court did note that the Plaintiff in *Tante* may have a claim for breach of fiduciary duty but such a claim has not been made by the Trustee. *Traub v. Washington*, 264 Ga.App. 541, 591 S.E.2d 382 (N.D.Ga. 2003), although involving conflicts, is inapplicable because there was evidence that the attorney used confidential information given by one client to that client's detriment. The Attorney also went forward with representing the client (as a co-executor) after the client objected. Not only did the attorney disclose the information, he represented a third party against his former client based on that information.

-47-

performed all of the work for which Commercial Factors was billed.[9] As shown above, the

Trustee clearly mischaracterizes, and the Bankruptcy Court's Memorandum Decision seriously

misunderstood and underestimated the serious likelihood that Terry Manufacturing would be

found liable for Rudolph Terry's fraud, opening the Company to damages to Commercial Factors

as large as $10 million under its RICO claims. Neither the Trustee nor the Bankruptcy Court

identified a single deposition, pleading, motion, response, answer or other action that Mr.

DeLong took in the litigation which was not necessary to avoid such a liability finding against

the Company. Thus the assertion that Mr. DeLong charged "grossly excessive" fees for his work

for Terry Manufacturing Company is entirely conjectural and speculative. Even assuming,

*arguendo,* that such a claim could be proven (and it has not been), it would not amount to

malpractice.

In *Griffin v. Fowler*, 260 Ga.App. 443, 579 S.E.2d 848 (2002), the Georgia Court of

Appeals reviewed a claim for legal malpractice, breach of fiduciary duty and fraud based on the

claims (among others) that an attorney had charged "grossly excessive" fees and purchased

software at the client's expense for his general use. *Id.*, at 445, 850. The Court held, "Our

Supreme Court has held that a plaintiff's allegation that he was charged excessive legal fees

---

[9] In the three and one-half year period Mr. DeLong and Mr. Thomas devoted more than 1800 hours to defending Terry Manufacturing. [T. 562, ln. 25 - T. 563, ln. 1] There is no contention that Mr. DeLong and Mr. Thomas did not perform the work for which they billed. [T-605, ln 23 – T-606, ln 9] There is no contention that the rate charged by Mr. DeLong and Mr. Thomas was unreasonable. [T. 289, ln. 2 – 11; T. 290, ln. 4 – 7; T-605, ln 23 – T-606, ln 9] There is no contention that Mr. DeLong and Mr. Thomas were unqualified to represent Terry Manufacturing. [T. 290 ln. 8 – 12; T-605, ln 23 – T-606, ln 9] The docket in the Commercial Factors case, which does not describe every efforts of Terry Manufacturing's counsel, runs for 19 pages. [D-30] Mr. DeLong's produced at the Adversary hearing his file on the case consisting of fifteen (15) boxes. [T. 599-602] The Trustee even conceded that Mr. DeLong made a "massive effort" in his defense against Commercial Factors claims. (Trustee's Objections ¶13)

-48-

cannot provide the sole basis for a malpractice claim." *Id.*, at 446, 850 (citing *Davis v. Findley*, 262 Ga. 612, 422 S.E.2d 859 (1992))

Similarly, in *Houston v. Surrett*, 222 Ga.App. 207, 474 S.E.2d 39 (1996), the Court rejected a legal malpractice claim. In *Houston*, a venue issue had been neglected which led to a case being tried in a venue the client had wanted to avoid. The Court first noted that it was "pure conjecture" that a different court would have ruled on the matter differently (thus addressing the requirement that the client had suffered damages). The client also attempted to avoid the requirement that he be able to show damages by claiming "'unnecessary' or remedial legal fees." *Id.* at 209, 42. The Court rejected this claim: "To remove the issue of additional fees from the realm of speculation, we must be able to say that raising the defense would have ended any court's consideration of the issues raised in the counterclaim; this we cannot do. And because we cannot say a different court would have resolved this issue differently, we cannot say with any reasonable certainty that attorney fees spent to "remedy" the trial court's ruling were reasonable or necessary." *Id.*

The core concept in these cases is that damages in a malpractice case cannot be based on mere speculation but must be reasonably certain. Similarly, the Court in *Whitehead v. Cuffie*, 185 Ga. App 351, 364, S.E.2d 87 (1987), rejected as "speculative and conjectural" the claim of a former client for damages based on their claim they were pressured into a hasty settlement. *Id.* "[W]here there is no evidence of injury accompanying the tort, an essential element of the tort is lacking, thereby entitling the defendant to judgment in his favor. *Id.* (citing *Meeks v. Coan*, 165 Ga.App. 731, 733-734(2), 302 S.E.2d 418 (1983)). "With respect to proximate cause, a malpractice claimant must show that the attorney's negligence harmed the claimant. More specifically, the claimant must 'demonstrate that but for the attorney's error, the outcome would

-49-

have been different.'" *Graivier v. Dreger & McClelland*, 280 Ga.App. 74, 633 S.E.2d 406 (2006)

In *Graiver*, the Court rejected a claim based on claimed conflict giving rise to a claim for legal malpractice and breach of fiduciary duty. In that matter, the attorney had apparently also advocated against a former client. The Court found that any damages would be "mere speculation." *Id.* (citing *Szurovy v. Olderman*, 243 Ga.App. 449, 530 S.E.2d 783 (2000)(" Because [Client] failed to show that she could have negotiated a better agreement or that she would have obtained better results in a trial, she has failed to establish damages and proximate cause. As a matter of law, her claims of damage are speculative." *Id.*

As in *Houston v. Surrett*, to remove the issue of additional fees from the realm of speculation, the Court has to be able to conclude that Mr. DeLong's defense solely of Terry Manufacturing (without defending Rudolph Terry simultaneously) would have permitted him to raise some defensive claim that would have ended any court's consideration of the claims Commercial Factors had made against the Company. Because of Roy Terry's intimate involvement in all of the events and because of his knowledge and approvals of Rudolph Terry's actions and decisions, the Court cannot make such a conclusion. And, as the Georgia Court of Appeals held in *Houston*, "because we cannot say a different court would have resolved this issue differently, we cannot say with any reasonable certainty that attorney fees spent" in Terry Manufacturing's defense against Commercial Factors claims were not reasonable or necessary."

The Trustee cannot contend that Terry Manufacturing ever suffered a bad result as a consequence of any action, omission or decision which Mr. DeLong and Mr. Thomas took in the Commercial Factors litigation. Claims that Terry Manufacturing Company might have spent less on legal fees if Mr. DeLong and Mr. Thomas had represented only the Company in the litigation

-50-

are conjectural, speculative, and contradicted by the evidence in the record. Therefore, Plaintiff cannot demonstrate that Terry Manufacturing suffered any damages as a proximate result of any malpractice by Mr. DeLong.

## F.    The Claims against Other Entities and Michael Caldwell, Individually

In his Objections, the Trustee claims that Delong & Caldwell, LLC, and Michael A. Caldwell, *who never has been made a party to the Adversary litigation,* should be found jointly and severally liable for the damages along with Mr. DeLong.[10] Since the Terry brothers did not hire him as the Company's attorney, and since he never agreed to represent the Company, Mr. Caldwell cannot be found directly liable for any malpractice claim of Terry Manufacturing.

The Trustee's argument thus appears to assert that Mr. Caldwell should be found *vicariously* liable for Mr. DeLong's and Mr. Thomas's alleged malpractice. The only fact upon which he might premise such a claim is that Mr. Caldwell practiced law in the same office with Mr. DeLong while Mr. DeLong and Mr. Thomas were defending the Company in the Commercial Factors litigation. The Trustee ignores the uncontroverted evidence cited hereinabove that: (i) Neither Terry Manufacturing Company nor either of the Terry brothers ever hired Mr. Caldwell to represent them and neither had ever met him until the Adversary proceeding; (ii) Mr. Caldwell never agreed to represent either Terry Manufacturing or the Terry brothers; (iii) Mr. Caldwell never performed any legal work for nor rendered any legal advice to

---

[10]  The Trustee's Objections also have abandoned and implicitly concede the lack of merit of his previous claims against the named Defendants other than Mr. DeLong and Mr. Caldwell, including Delong Caldwell, Novotny & Bridgers, LLC, or DeLong, Caldwell Logue & Wisebram LLC.

Terry Manufacturing Company or Rudolph Terry; (iv) the Trustee has neither identified nor alleged a single act or omission of Mr. Caldwell's which resulted in any damages to Terry Manufacturing Company; (v) Mr. Caldwell never received a penny of compensation or fees from Terry Manufacturing Company; and (vi) Mr. Caldwell had no knowledge of nor any right or ability to control any of the decisions or actions which any other attorney made in the Commercial Factors or any other Terry Manufacturing Company litigation.

There is absolutely no evidence in the record which would permit a court to assess vicarious "joint and several liability" against Mr. Caldwell for any alleged malpractice committed by Mr. DeLong or Mr. Thomas in defending Terry Manufacturing Company. There is no evidence that Mr. DeLong ever served as Mr. Caldwell's agent with respect to any issue or matter relating to Terry Manufacturing. There is no contention that Mr. DeLong had actual or apparent authority to act in Mr. Caldwell's behalf with respect to any matter pertaining to Terry Manufacturing. It is undisputed that Mr. Caldwell has never been Mr. DeLong's partner, and that Terry Manufacturing's officers, shareholders, and directors never even considered Mr. Caldwell's existence a factor in any of their decisions relating to the hiring of Mr. DeLong or Mr. Thomas.

Ironically, despite the uncontroverted evidence that: (i) Jerry Thomas, Esq. approached Mr. DeLong on behalf of Terry Manufacturing to serve as Mr. Thomas' co-counsel in the litigation; (ii) Jerry Thomas served throughout the Commercial Factors litigation as Mr. DeLong's co-counsel; and (iii) Jerry Thomas received over 38 % of all of the legal fees paid by Terry Manufacturing in the Commercial Factors litigation, the Trustee never even has bothered to assert any claim against nor seek any damages or contribution from Mr. Thomas.

-52-

The uncontroverted evidence in the trial revealed that, since 1993, Mr. DeLong always has practiced law within limited liability corporations, all of which were duly organized and operating under the laws of the State of Georgia. It is undisputed that in 1993, Mr. DeLong, Mr. Caldwell, and other attorneys organized the Georgia Limited Liability Company named "DeLong, Caldwell, Logue & Wisebram, LLC," duly filing their organizational documents with the Georgia Secretary of State's office as required under the Georgia Limited Liability law. [T. 540, ln. 8-11]  After Mr. Logue left the firm in 1995 the LLC continued to operate under the name of "DeLong, Caldwell & Wisebram, LLC." [T. 540, ln. 8-11]  After Steven Wisebram withdrew from the firm in 1998 or 1999 the LLC's name changed to DeLong & Caldwell LLC. [T. 540, ln. 11-12]  Mr. DeLong testified that he believed the name had been previously changed to drop the Wisebram name but this was not done formally until shortly before trial. [D-142; T. 44, ln. 19; T. 160, ln. 21 –T. 161, ln. 22]

It is uncontroverted that Mr. Caldwell, and Mr. DeLong, never formed a partnership to practice law with one another; rather, they have only practiced law within duly-organized and operated LLCs. [T. 542, ln. 8-9] The lawyer-members of the various LLCs which the Trustee originally named as defendants in this case have always practiced law independently of one another. Each lawyer member is responsible for obtaining his own clients, performing the legal services for the client, paying the expenses incurred in performing that work, billing the client for the work and collecting the fees due from the client for the work.  Financially, their system can be described as an "eat what you kill" system. [T. 543, ln. 12-22] Under such a system, the clients retain the individual attorneys to represent them rather than the law firm itself.  The individual attorney alone makes the legal judgments and performs and controls all of the legal work being performed for the client.  The individual attorney is alone responsible for marketing

-53-

his practice and finding his own clients, and for billing and collecting the fees from his clients. [T. 543, ln. 23 - T. 544, ln. 10] Mr. Caldwell, who has been a member of both large and small law firms since his admission to the Bar in 1972, described the differences between large and small firms is the manner in which lawyers interact with each other and with clients. In large firms the focus of a client relationship is upon the firm itself, while in smaller firms the focus of the client relationship is upon the individual attorney.

It was only Mr. DeLong and Mr. Thomas who were hired to represent the Company in the Commercial Factors litigation. [T. 497, ln. 25 – T. 498, ln. 8; T. 401, ln. 4-21] The engagement was confirmed in a letter from Mr. DeLong to Mr. Rudolph Terry dated January 3, 2000. The engagement letter stated that Terry Manufacturing Company had hired Mr. DeLong and Mr. Thomas. [D-10] Both Roy Terry and Rudolph Terry understood and believed that they had hired Mr. Thomas and Mr. DeLong to represent them in the Commercial Factors litigation, not Mr. DeLong's firm, DeLong and Caldwell, LLC or the successor law firm, DeLong, Caldwell, Novotny & Bridgers, LLC. [T. 407, ln. 5-11]

As stated above, it is axiomatic that no malpractice liability can exist unless an attorney-client relationship has been formed with the plaintiff-client. *Rhone v. Bolden,* 270 Ga.App. 712, 716, 608 S.E.2d 22, 29 (Ga. App. 2005). In *Rhone v. Bolden* the Georgia Court of Appeals noted:

> Generally, a plaintiff must demonstrate the existence of an attorney-client relationship before he may recover in a legal malpractice suit. "This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence." (Citation and punctuation omitted.) Guillebeau v. Jenkins, 182 Ga.App. 225, 229(1), 355 S.E.2d 453 (1987); Richard v. David, 212 Ga.App. 661-662(1), 442 S.E.2d 459 (1994).
>
> "The basic question in regard to the formation of the attorney-client relationship is whether the evidence sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession."

-54-

(Citation and punctuation omitted.) Legacy Homes v. Cole, 205 Ga.App. 34, 35, 421 S.E.2d 127 (1992). The record reveals that Bolden never sought legal advice from any of the attorney defendants, and that none of them offered any legal advice to him. In fact, Bolden testified in his deposition that he did not know any of the lawyers personally and had never spoken to them or hired them. "Thus, the evidence demanded a finding that no attorney-client relationship existed, in the classic sense of the term. [Cit.]" (Punctuation omitted.) Horn v. Smith & Meroney, P.C., 194 Ga.App. 298, 299(1), 390 S.E.2d 272 (1990). Accordingly, the trial court erred in denying the attorney defendants' Motion for Summary Judgment on Bolden's legal malpractice claim. Id.

Here, as in Rhone v. Bolden, neither Terry Manufacturing Company nor the Terry brothers sought or received any legal services or advice from Michael A. Caldwell or any of the individual attorneys with whom he has practiced other than Mr. DeLong. In fact, both of the Terry brothers testified that they had never hired nor even met any of the individual attorneys other than Mr. DeLong before the adversary hearing herein. In light of the above facts, there clearly was no undertaking to represent or offer legal services to Terry Manufacturing Company by any attorneys other than Mr. DeLong and Mr. Thomas. Thus they cannot be held liable for malpractice or breach of any fiduciary duty to Terry Manufacturing Company.

Georgia law does not provide for the sort of "infectious liability" theory that the Trustee and his expert witness, Mr. Beltran, suggest the court must apply, merely because they share membership in and ownership of the same Georgia limited liability companies in which Mr. DeLong practices law. O.C.G.A. §14-3-303 provides:

> (a) A person who is a member, manager, agent, or employee of a limited liability company is not liable, solely by reason of being a member, manager, agent, or employee of the limited liability company, under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company, whether arising in contract, tort, or otherwise. . . .

-55-

The evidence shows that while Mr. DeLong and Mr. Caldwell renamed their LLC and changed their business stationary to reflect Mr. Wisebram's departure, they neglected to file the official notification of the name change of their LLC with the Office of the Georgia Secretary of State, each mistakenly believing that the other had filed the official notification. [T. 540, ln. 15-23] After they recognized their mistake shortly before the trial in the Adversary proceeding, they filed the notice of name change [T. 540, ln. 16- T. 541, ln. 6] and paid all delinquent corporate registration fees. However, these delinquencies were not fatal to DeLong & Caldwell LLC's status as a limited liability company, nor to the liability protections afforded by that business form to the individual members of the LLC.  See, *Milk v. Total Pay and HR Solutions*, supra 280 Ga. App. 449, 634 S.E.2d 208 (Ga. App. 2006). As the Court held in *Milk*, ". . . the formation of a LLC as a legal entity separate from its members is predicated on the public filing of the LLC's articles of organization, . . . *See* O.C.G.A. §§ 14-11-203(c), (d); 14-11-206(e). 208 Ga. App. 453, fn. 4, 634 S.E.2d 212.  Hence, the mistakes relating to the transformation of DeLong, Caldwell & Wisebram, LLC into DeLong & Caldwell, LLC (*i.e.,* the failure to file a name change certificate with the Georgia Secretary of State) did not result in the dissolution of the former limited liability company. Indeed, even if Mr. DeLong and Mr. Caldwell had dissolved the limited liability company after Mr. Wisebram's departure, this would not, in itself deprive either of the individual lawyers of the protections against liability for the other's debts, nor for the debts of the dissolved LLC. As the Court noted in *Milk*

> Dissolution, standing alone, does not cause a LLC to cease to exist as a legal entity separate from its members or automatically render members personally liable for LLC debts. See O.C.G.A. §§ 14-11-602 to 14-11-611 (discussing process of dissolution, winding up, and termination of a LLC). Cf. O.C.G.A. § 14-2-1405 cmt. ("[D]issolution proceedings do not have any of the characteristics of common law dissolution, which treated the corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to

-56-

corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent."); Fulton Paper Co. v. Reeves, 212 Ga.App. 314, 315-318(2), 441 S.E.2d 881 (1994) (physical precedent only) (corporate officer could not be held personally liable for debt when corporation continued to exist as a corporate entity after administrative dissolution).

The evidence in this case fails to establish that there was a formation of a partnership by estoppel between Mr. DeLong and any of the other attorneys who were members of the LLCs in which he practiced law. Georgia law does not provide for the formation of *de facto* partnerships by accident. O.C. G. A. § 14-8-7 establishes the Georgia rules for determining existence of partnership. It provides:

In determining whether a partnership exists, the following rules shall apply:

(1) Except as provided by Code Section 14-8-16 persons who are not partners as to each other are not partners as to third persons;

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business; provided, however, that no such inference shall be drawn if profits were received in payment of the following, even though the amount of payment varies with the profits of the business:

(A) A debt, whether by installments or otherwise;
(B) Wages, salary, or other compensation to an employee or independent contractor;
(C) Rent to a landlord;
(D) An annuity or other payment to a surviving spouse or representative of a deceased partner;
(E) Interest or other payment or charge on a loan;
(F) Consideration for the sale of good will of a business or other property, whether by installments or otherwise.

-57-

The "eat what you kill" economic system employed in all of the LLCs in which Mr. DeLong, Mr. Caldwell, and the other individual attorneys who were members of the LLCs in which Mr. DeLong practiced reveals that they did not share profits. They received no share of the payments or profits that he made from representing Terry Manufacturing Company. These facts belie any implication that a partnership ever evolved between them.

In determining the existence of a partnership under Georgia law, it is the parties' intent that is the test. *See, e.g. Cypress Ins. Co. V. Duncan,* 281 Ga. App. 469, 470, 636 S.E. 2d 159, 160 (Ga. App. 2006); *Allgood v. M. Fekoury,* 36 Ga. App. 42, 135 S.E.2d 314 (1926) "the intent of the parties is the true test of a partnership, which, therefore, may be created by a contract giving rights or imposing obligations differing from those from which the law ordinarily infers a partnership." *See also, Huggins v. Huggins,* 117 Ga. 151, 43 S. E. 759. There is no evidence that Mr. DeLong, Mr. Caldwell, nor any of the other individual lawyers who were members of the LLCs ever agreed or intended to become partners with one another. Nor does any evidence in the record reveal that they ever held themselves out to others as partners of each other. The Trustee presented no evidence contradicting the testimony of Mr. Caldwell that he never entered into a partnership with Mr. DeLong or with any of the other current or former members of the LLCs in which they practiced law. [T. 542, ln. 8-9]

The Trustee has failed to show any evidence meeting requirements set forth in O.C.G.A. §§ 14-8-16(a) for establishing a partnership by estoppel. That section provides.

> When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the

-58-

representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made

The Trustee failed to identify any occasion when Mr. DeLong, Mr. Caldwell, or any of the individual attorneys who are or were members of their LLCs represented themselves to *anybody* as partners. Moreover, the Terry brothers themselves testified that they were barely aware of and never even took into account the business entities in which Mr. DeLong practiced law when they hired Mr. DeLong and Mr. Thomas to represent them in the Commercial Factors litigation. Accordingly, the Terry brothers' testimony destroys any implication that they believed they were being represented by a partnership in which the individual attorneys were members, there can be no partnership by estoppel. *See, Antonic Rigging and Erecting of Missouri, Inc. v. Foundry East Ltd. Partnership,* 773 F.Supp. 420, 431-2 ( S.D. Ga.,1991) (Under Georgia law, general partnership by estoppel was not created by limited partner's participation in partnership's business, absent evidence of reliance by creditor; although creditor allegedly relied on general partner's representations that limited partner would invest additional money in partnership, creditor was informed that general partner and limited partner merely had option to arrange financing, and public representations concerning limited partner's activities as general partner occurred after creditor entered into contract with partnership).

## VII.   CONCLUSION

The evidence reveals that Terry Manufacturing hired only Mr. DeLong and Mr. Thomas to defend both the Company and Rudolph Terry in the Commercial Factors litigation. It reveals that in defending the Company Mr. DeLong and Mr. Thomas exercised the degree of ordinary care, skill, diligence and loyalty required of Georgia attorneys. It reveals that Mr. DeLong and

-59-

Mr. Thomas devoted their efforts in the litigation to defending Terry Manufacturing and that Terry Manufacturing received the full benefit of their efforts in the litigation. It establishes that there was no actual unwaivable conflict of interest between the Company and Rudolph Terry in the face of Commercial Factors. It reveals that Mr. DeLong properly advised all of the shareholders and directors of Terry Manufacturing of the potential conflict of interest that arose after Commercial Factors amended its complaint top add fraud claims against both the Company and Rudolph Terry individually. It shows that he counseled them to obtain separate counsel to represent Rudolph Terry, and separate counsel to advice them of the conflict of interest. It reveals that despite Mr. DeLong's repeated and emphatic advice, all of the shareholders and directors of Terry Manufacturing knowingly and willingly waived the conflict of interest and directed Mr. DeLong and Mr. Thomas to continue representing both the Company and Rudolph Terry individually in the Commercial Factors claims.

While the amounts paid to Mr. DeLong and Mr. Thomas were substantial, the evidence reveals that they were not excessive in light of the litigation hurdles he faced from Commercial Factors tactics, nor were they disproportionate to Terry Manufacturing's potential liability for damages to Commercial Factors if he did not prevail in the action. The evidence reveals that, notwithstanding the perfect hindsight with which the Trustee attempts to view the facts, Mr. DeLong's decisions and actions in the case were reasonable and necessary at the time he made those decisions and took those actions for the successful defense of the Company. Because of both Commercial Factors obdurate efforts to utilize guerilla litigation tactics of by making aware and dragging Terry Manufacturing's suppliers, customers, and financial support into its dispute, and because of the Terry brothers' explicit instructions that he oppose and vigorously resist those efforts as well as efforts to obtain discovery of the Company's confidential financial information

-60-

from its accountant, Mr. DeLong and Mr. Thomas had to perform what the Trustee concedes and

what the Bankruptcy Court found was a massive amount of work in the Terry Manufacturing

case. The mere fact that in directing Mr. DeLong and Mr. Thomas to mount such massive efforts

to resist Commercial Factors' litigation and discovery tactics, the Terry brothers may have also

been motivated by a desire to continue the concealment of the massive fraud in which they were

both involved, did not dis-entitle Mr. DeLong and Mr. Thomas to the hourly fees that they

charged the Company for that massive effort. There is nothing in the record to suggest that Mr.

DeLong or Mr. Thomas were parties to that fraud, nor that they were or should have been aware

of it. There was *no work* which either attorney performed in the case which was not intended to

benefit and be of value both the Terry Manufacturing and to Rudolph Terry.

 Notwithstanding the conjectures and speculations contained in the Bankruptcy Court's

Memorandum Decision, Terry Manufacturing's success in the Commercial Factors litigation

would be far from assured just by its assertion of the "no tee-shirt defense." In fact Mr. DeLong

did raise that very defense when he became aware of it and when it was likely in his best

professional judgment to be most beneficial to Terry Manufacturing's defense, and the trial court

found that the Company was not entitled to summary judgment because there were the facts

material to deciding the merits of that claim were genuinely disputed. Mr. Thomas and Mr.

DeLong earned their fees. Terry Manufacturing suffered no adverse consequence as a result of

any litigation decision, action, or advice that Mr. DeLong and Mr. Thomas provided.

 Respectfully, we submit that the Bankruptcy Court's Recommended Findings of Fact and

Conclusions of Law dismissing the Trustee's malpractice claims against Mr. DeLong, and Mr.

Caldwell should be affirmed and the Trustee's Objections should be overruled.

 Respectfully Submitted,

-61-

<u>s/Charles Bridgers</u>

Earnest H. DeLong, Jr.
Georgia Bar No. 217300
Michael A. Caldwell
Georgia Bar No. 102775
Charles R. Bridgers
Georgia Bar No. 080791
Attorneys for Defendants

DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303

-62-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO 03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM COMPANY, LLC | ) | CASE NO. 03-32213-WRS |
| | ) | |
| Debtor | ) | CHAPTER 7 |
| | | |
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING COMPANY, INC. | ) | ADVERSARY PROCEEDING |
| AND TERRY UNIFORM COMPANY | ) | |
| LLC | ) | NO. 04-03135 |
| | ) | |
| V. | ) | |
| | ) | |
| DeLONG, CALDWELL, NOVOTNY | ) | |
| & BRIDGERS, LLC AND EARNEST H. | ) | |
| DELONG, JR., et al, | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document,

DEFENDANTS' RESPONSE TO TRUSTEE'S OBJECTIONS TO BANKRUPTCY

COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

PURSUANT TO 28 U.S.C. § 157(C)(1) AND BANKRUPTCY RULE 9033 by service in

compliance with the Court's ECF procedures this 18th day of June, 2007:

-79-

Brent B. Barrier, T.A.
Phelps Dunbar, LLP
One Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534

Jerry A. Buchanan
Buchanan & Land, LLP
Post Office Box 2848
Columbus, Georgia 31902

Simeon F. Penton II
Kaufman & Rothfeder, PC
PO Drawer 4540
Montgomery, Alabama 36103-1969

<u>s/ Charles Bridgers.</u>
Earnest H. DeLong, Jr.
Georgia Bar No. 217300
Michael A. Caldwell
Georgia Bar No. 102775
Charles R. Bridgers
Georgia Bar No. 080791

Attorneys for Defendants

DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
404/979-3150

-80-

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

TERRY MANUFACTURING
COMPANY, INC.,

       Debtor.

2:07cv585 -F

Case No. 03-32063-WRS
Chapter 7

J. LESTER ALEXANDER, III,
TRUSTEE,

       Plaintiff,

    v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC;  DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

       Defendants.

Adv. Pro. No. 04-3135-WRS

## ORDER

It is ORDERED that the parties are DIRECTED to file any objections to the Report and

Recommendation on or before the close of business on June 8, 2007.  Any objections filed must

be specific.  Frivolous, conclusive or general objections will not be considered by the District

Court.  The parties are advised that the Report and Recommendation is not a final order of the

Court and, therefore, it is not appealable.

Failure to file written objections to the proposed finding and recommendations in the Report and Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.

Done this the 29th day of May, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

-2-

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 03-32063-WRS
                                                         Chapter 7
TERRY MANUFACTURING
COMPANY, INC.,

        Debtor.


J. LESTER ALEXANDER, III,
TRUSTEE,
                                                         Adv. Pro. No. 04-3135-WRS
        Plaintiff,

   v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC;  DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

        Defendants.


**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
SUBMITTED BY BANKRUPTCY JUDGE WILLIAM R. SAWYER
TO THE DISTRICT COURT**

Pursuant to 28 U.S.C. § 157(c), the undersigned submits these proposed findings of fact

and conclusions of law.

## I.  INTRODUCTION

This Adversary Proceeding was tried in Bankruptcy Court over a four day period

beginning on January 30, 2007.  The issues were set out in the Second Amended and Restated

Complaint of J. Lester Alexander, III,  (Doc. 161), in a four count complaint.  Count I of the

1

complaint is for attorney malpractice.  As this is not a core proceeding, and as the Defendants

have not consented to entry of a final judgment by the undersigned, proposed findings of fact and

conclusions of law are submitted to the District Court.  Count II of the complaint was to set aside

fraudulent transfers pursuant to 11 U.S.C. § 544(b), and State law.  For the reasons set forth in

the Bankruptcy Court's Memorandum Decision, judgment is entered in favor of the Trustee.  As

that is a core proceeding, the Bankruptcy Court may enter final judgment.  Counts III and IV are

for fraudulent conveyances under 11 U.S.C. § 548 and voidable preferences under 11 U.S.C. §

547 respectively, and for the reason set forth in the Memorandum Decision, those claims are

dismissed with prejudice.

## II.  FINDINGS OF FACT

The undersigned incorporates by reference the Memorandum Decision entered this date

in this Adversary Proceeding.

As was clearly established in the Memorandum Decision, DeLong is a Georgia lawyer

who represented Terry Manufacturing in the Commercial Factors litigation in Gwinnett County,

Georgia.  DeLong was retained initially to represent Terry Manufacturing in the Commercial

Factors case.  When Commercial Factors amended its complaint to add Rudolph Terry as an

additional named Defendant, DeLong represented him as well.  The Trustee contends that the

interests of Rudolph Terry and Terry Manufacturing conflict and that by representing both

Defendants, DeLong committed malpractice.

The interests of Terry Manufacturing and Rudolph Terry do in fact conflict.  DeLong

contends that Terry Manufacturing waived any conflict, offering his own testimony as well as

the testimony of both Rudolph and Roy Terry.  The testimony of all three was consistent in that

2

the conflict of interest was discussed and expressly waived.  The Terry brothers together owned

100% of the common stock of Terry Manufacturing, and they were President and Vice President

of the corporation.  It is undisputed that there was not a written waiver of the conflict of interest.

The testimony here was not without difficulty.  DeLong is a Defendant and for that reason, he is

biased.  In addition, both of the Terry brothers are convicted felons whose testimony is not to be

accepted at face value.  Acknowledging all of the problems with the proof here, the undesigned

nevertheless finds that the conflict of interest was waived.

### III.  CONCLUSIONS OF LAW

As set forth in the Memorandum Decision of this date, Georgia law applies.  "In a legal

malpractice action, the plaintiff must established three elements: '(1) employment of the

defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and

(3) that such negligence was the proximate cause of damage to the plaintiff.'"  Allen v. Lefkoff,

Duncan, Grimes & Dermer, P.C., 453 S.E.2d 719, 720 (Ga. 1995).  The Georgia Code of

Professional Responsibility "do[es] not play a role in shaping the 'care and skill' ordinarily

exercised by attorneys practicing law in Georgia."  Id. at 721.

As set forth in Part II above, the undersigned found that the conflict of interest was

waived.  Thus, there was no violation of the pertinent ethical rules by DeLong here.  As the

Trustee's malpractice claim is predicated solely on the theory that DeLong breached an ethical

duty, his failure to establish such a breach is fatal to the malpractice claim.  For this reason, the

undersigned concludes that DeLong did not commit malpractice.  The Court has read the

decisions cited by the parties and undertaken its own research independently.  The Court is

unable to find any reported decisions where a malpractice action was predicated on an

3

unwaivable conflict of interest where a lawyer represented a corporation and its principals.

Therefore, Count I of the complaint should be dismissed with prejudice.


Done this the 29th day of May, 2007.


/s/ William R. Sawyer
United States Bankruptcy Judge

4